IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AFG MEDIA LTD, | | |
| Plaintiff, | | Civil Action No. 2:23-cv-1840 |
| v. | | |
| POPTREND-OFFICIAL, *et al*., | | |
| Defendants. | | **FILED UNDER SEAL** |

**MEMORANDUM OF LAW IN SUPPORT OF
*EX PARTE* APPLICATION FOR: 1) TEMPORARY RESTRAINING ORDER;
2) AN ORDER RESTRAINING ASSETS AND MERCHANT STOREFRONTS;
3) AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD
<u>NOT ISSUE; AND 4) AN ORDER AUTHORIZING EXPEDITED DISCOVERY</u>**

Stanley D. Ference III
Pa. ID No. 59899
courts@ferencelaw.com

Brian Samuel Malkin
Pa. ID No. 70448
bmalkin@ferencelaw.com

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 – Telephone
(412) 741-9292 – Facsimile

Attorneys for Plaintiff

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................... iii

I.  INTRODUCTION ......................................................................................... 1

II.  STATEMENT OF FACTS ............................................................................ 7

    A.  PLAINTIFF'S MORPH® BRAND ALIEN COSTUME ....................... 7

    B.  PLAINTIFF'S RIGHTS ............................................................................ 8

    C.  PLAINTIFF'S EFFORTS TO POLICE THE DEFENDANTS'
        CONDUCT ............................................................................................ 10

    D.  THE DEFENDANTS' WRONGFUL CONDUCT ............................... 12

III.  ARGUMENT ............................................................................................ 17

    A.  THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ...... 17

        1.  Defendants are Subject to Personal Jurisdiction
             Under 42 P.A. C.S.A. § 5322 ................................................. 18

        2.  Exercising Personal Jurisdiction Over Defendants
             Comports With Due Process ................................................. 22

    B.  PLAINTIFF IS ENTITLED TO AN *EX PARTE* TEMPORARY
        RESTRAINING ORDER AND A PRELIMINARY INJUNCTION ................... 29

        1.  Plaintiff Will Suffer Irreparable Harm in The Absence of an Injunction
             Leaving It With No Adequate Remedy at Law ......................... 33

        2.  Plaintiff is Likely to Prevail on The Merits of Its Copyright
             Infringement Claims ................................................................ 34

        3.  The Balance of Hardships Favors Plaintiff ................................. 35

        4.  The Relief Sought Serves the Public Interest ............................ 36

    C.  PLAINTIFF IS ENTITLED TO AN ORDER PREVENTING
        1) THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING OF
        DEFENDANTS' MERCHANT STOREFRONTS ............................... 36

        1.  Defendants' Assets Must be Frozen ......................................... 36

2.    Defendants' User Accounts and Merchant Storefronts
Must be Frozen ....................................................................................39

D.    PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING
EXPEDITED DISCOVERY.......................................................................42

E.    PLAINTIFF'S REQUEST FOR A SECURITY BOND
IN THE AMOUNT OF $5,000 IS ADEQUATE...................................46

IV.    CONCLUSION...............................................................................................48

# **Table of Authorities**

**Cases**

*CJ Prods. LLC v. Concord Toys Int'l*, No. 10-CV-5712 (ENV)(JO), 2011 U.S. Dist. LEXIS 4983, at *15 (E.D.N.Y. Jan. 19, 2011) (citing *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc*., 312 F.3d 94, 96-97 (2d Cir. 2002)).............................................................- 33 -

17 U.S.C. § 106........................................................................................- 15 -, - 34 -

*A1 Mortg. Corp. v. A1 Mortg. and Financial Services, LLC,* 2006 WL 1437744 (W.D. Pa. 2006)- 19 -

*A-1 Mortg. Corp. v. Day One Mortg., LLC,* 2007 WL 30317 (W.D. Pa. 2007).......................- 19 -

*Abercrombie & Fitch Trading Co. v. Abercrombieclassic.com,* No. 15-62579-CIV-CMA, 2015 U.S. Dist. LEXIS 179041, at *5 (S.D. Fla. Dec. 11, 2015) ..................................................- 21 -

*Adidas AG v. 007adidasuk.com,* No. 15-61275-CIV-GAYLES, 2015 U.S. Dist. LEXIS 179020, at *8 (S.D. Fla. 2015)...............................................................................................- 21 -

*Admarketplace, Inc. v. Tee Support, Inc.,* No. 13-cv-5635- LGS, 2013 U.S. Dist. LEXIS 129749, at *5 (S.D.N.Y. Sep. 11, 2013) .................................................................. - 44 -, - 45 -

*Advanced Portfolio Technologies, Inc. v. Advanced Portfolio Technologies Ltd.*,1994 U.S. Dist. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994) ......................................................... - 43 -, - 44 -

*Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 803 (7th Cir. 2010) ...............................................................................................................- 21 -

*Allstar Marketing Group, LLC v. 158, et al.,* No. 18-cv-4101-GHW, Dkt. 22 (S.D.N.Y. May 17, 2018) ......................................................................................................................- 16 -

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, (5th Cir. 2007) ......................- 38 -

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) ..............................................................................................- 24 -

*AT&T Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) ........- 32 -

*AW Licensing, LLC v. Bao,* No. 15-cv-1373, 2015 U.S. Dist. LEXIS 177101, at *3 (S.D.N.Y. Apr. 1, 2015).................................................................................................... - 16 -, - 41 -

*Ayyash v. Bank Al-Madina,* 233 F.R.D. 325, 326 (S.D.N.Y. 2005) .........................................- 44 -

*Balenciaga Am., Inc. v. Dollinger,* No. 10-cv-2912-LTS, 2010 U.S. Dist. LEXIS 107733, at *22 (S.D.N.Y. Oct. 8, 2010) ......................................................................................- 37 -

iii

*Belstaff Grp. SA v. Doe, No. 15-cv-2242-PKC/MHD*, 2015 U.S. Dist. LEXIS 178124, at *2 (S.D.N.Y. June 18, 2015)................................................................................- 16 -

*Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 243 (2d. Cir. 2007) ..............................- 21 -, - 23 -

*Boschetto v. Hansing,* 539 F.3d 1011, 1019 (9th Cir. 2008) ...................................................- 20 -

*Broad. Music, Inc. v. Prana Hosp.,* Inc., 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) .............- 35 -

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (U.S. 1985).....................- 22 -, - 25 -, - 28 -

*Calder v. Jones,* 465 U.S. 783, 788 (1984)............................................................................- 22 -

*Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141 (3d Cir. 1992)........................................- 22 -

*Cartier International A.G. v. Replicapaneraiwatches.cn,* No. 17-cv-62401 (S.D. Fla. Jan. 2, 2018) ..........................................................................................................................- 7 -

*Chambers v. Nasco, Inc.*, 501 U.S. 32, 44 (1991) ..................................................................- 30 -

*Chanel Inc. v. Yang,* No. C-12-04428-PJH (DMR), 2013 U.S. Dist. LEXIS 151104, at *5-6 (N.D. Cal. Aug. 13, 2013)................................................................................- 15 -

*Chanel, Inc. v. 2012leboyhandbag.com,* No. 15-61986-CIV-WJZ, 2015 U.S. Dist. LEXIS 177989, at *3 (S.D. Fla. Oct. 13, 2015) ............................................................- 21 -

*Chanel, Inc. v. Chanelsstore.com,* No. 15-61156-CIV- CMA, 2015 U.S. Dist. LEXIS 179101, at *5 (S.D. Fla. August 31, 2015) ......................................................................- 21 -

*Chanel, Inc. v. Conklin Fashions, Inc.*, No. 3:15-cv-893-MAD/DEP, 2015 U.S. Dist. LEXIS 109886, at *10-13 (N.D.N.Y. Aug. 14, 2015) .................................................- 16 -

*Chanel, Inc. v. Powell,* No. C/A 2:08-0404-PMD-BM, 2009 U.S. Dist. LEXIS 127709, at *7 (D.S.C. 2009) ...............................................................................................- 15 -

*Chloe v. Designersimports.com USA, Inc.*, No. 07-cv-1791 -CS/GAY, 2009 U.S. Dist. LEXIS 42351, at *2 (S.D.N.Y. Apr. 29, 2009)..................................................................- 17 -

*CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 145 (E.D.N.Y. 2011) (citation omitted))...................................................................................................................- 33 -

*Coalition for Parity, Inc. v. Sebelius*, 709 F.Supp.2d 6 (D.D.C. 2010) .................................- 33 -

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075 (N.D. Ill. 1996) .........................- 31 -

*CSC Holdings, Inc. v. Greenleaf Elec., Inc.*, 2000 WL 715601 (N.D. Ill. 2000) .....................- 40 -

*D'Jamoos v. Pilatus Aircraft, 566 F.3d 94, 102 (3d Cir. 2009)* .....................................- 17 -, - 27 -

*Dam Things From Denmark v. Russ Berrie & Co.*, 290 F.3d 548 (3d Cir. 2002)....................- 34 -

*Dama S.P.A.* v. *Doe,* 2015 U.S. Dist. LEXIS 178076, at *4-6 (S.D.N.Y. June 12, 2015).......- 40 -

iv

*DatatechEnters. LLC v. FFMagnatLtd.,* No. 12-cv-04500-CRB, 2012 U.S. Dist. LEXIS 131711, at *12 (N.D. Cal. Sept. 14, 2012)..................................................................- 39 -

*Dell Inc. v. BelgiumDomains, LLC*, Case No. 07-22674 2007 WL 6862341 (S.D Fla. Nov. 21, 2007) ..........................................................................................................- 30 -

*Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)............................- 47 -

*Doggie Dental Inc. v. Anywill,* No. 19-cv-682 (W.D. Pa. June 13, 2019) (Hornak, J.) (sellers on amazon.com) ...................................................................................- 7 -

*Doggie Dental Inc. v. Go Well,* No. 19-cv-1282 (W.D. Pa. Oct. 11, 2019) (Hornak, J.) (sellers on amazon.com) .............................................................................- 6 -

*Doggie Dental Inc. v. Max_Buy*, No. 19-cv-746 (W.D. Pa. June 27, 2019) (Hornak, J.) (sellers on ebay.com)..............................................................................- 6 -

*Doggie Dental Inc. v. Worthbuyer,* No. 19-cv-1283 (W.D. Pa. Oct. 11, 2019) (sellers on ebay.com)............................................................................................- 6 -

*El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986)..............- 32 -

*EnviroCare Techs, LLC v. Simanovsky, No. 11-CV-3458, 2012 U.S. Dist. LEXIS 78088, at *10 (E.D.N.Y. June 4, 2012)* ..............................................................- 20 -

*F.T. Int'l Ltd. v. Mason*, 2000 WL 1514881 (E.D. Pa. 2000)...................................- 40 -

*Federal Express Corp. v. Federal Espresso, Inc.,* 201 F.3d 168, 173 (2d Cir. 2000)..............- 32 -

*Gentex Corp. v. Abbott,* 978 F. Supp. 2d 391, 398 (M. D. Pa. 2013) ........................- 26 -

*George Basch Co., Inc. v. Blue Coral, Inc.,* 968 F.2d 1532, 1537 (2d Cir. 1992) ..................- 37 -

*Gourmet Video, Inc. v. Alpha Blue Archives, Inc.,* 2008 WL 4755350, *3 (D.N.J. Oct. 29, 2008) ........................................................................................................- 26 -

*Grand Entm't Group, Ltd., v. Star Media Sales, Inc.,* 988 F.2d 476, 483 (3rd Cir.1993)........- 28 -

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Funds, Inc.*, 527 U.S. 308 (1999) ......- 38 -

*Gucci Am., Inc. v. Gucc- Outlet.com,* No. 15-62165-CIV-DPG, 2015 U.S. Dist. LEXIS 181483, at *3-4 (S.D. Fla. Nov. 9, 2015)...........................................................- 21 -

*Gucci Am., Inc. v. Tyrrell-Miller,* 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) ........................- 15 -

*Gucci Am., Inc. v. Weixing Li,* 768 F.3d 122, 126 (2d Cir. 2014) ...........................- 41 -

*Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al,* No. 1:15-cv-03784-PKC (S.D.N.Y. June 23, 2015)..............................................................................- 16 -

*Hall v. Johnson*, 599 F.Supp.2d 1, 6 n. 2 (D.D.C. 2009).......................................- 33 -

v

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. at 414 (1984) ..........................- 22 -

*HICKIES, Inc. v. Shop1668638 Store, et al.,* No. 17-cv-9101-ER, Dkt. 14 (S.D.N.Y. Dec. 6, 2017) ......................................................................................................................- 16 -

*Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (3d Cir. 1990)....................- 6 -, - 39 -

*Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 210 n. 31 (3d Cir.1990).... - 38 -, - 46 -

*Ideavillage Products Corp. v. Aarhus, et al.,* No. 18-cv-2739- JGK, Dkt. 22 (S.D.N.Y. March 28, 2018) ......................................................................................................................- 16 -

*Ideavillage Products Corp. v. abc789456, et al*., No. 18- cv-2962-NRB, Dkt. 11 (S.D.N.Y. April 11, 2018) ..................................................................................................................- 16 -

*Ideavillage Products Corp. v. Bling Boutique Store, et al*., No. 16-cv-09039-KMW, Dkt. 9 (S.D.N.Y. Nov. 21, 2016) ...............................................................................................- 16 -

*Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.,* No. 17-cv-9099-JMF, Dkt. 19 (S.D.N.Y. Nov. 27, 2017) ..........................................................- 16 -

*Ideavillage Products Corp. v. Dongguan Shipai Loofah Sponge Commodity Factory, et al.,* No. 18-cv-901-PGG, Dkt. 20 (S.D.N.Y. Feb. 1, 2018) ...............................................................- 16 -

*Ideavillage Products Corp. v. Shenzhen City Poly Hui Foreign Trade Co., Ltd., et al.,* No. 17-cv-8704-JGK. .(S.D.N.Y. May 24, 2017) .........................................................................- 16 -

*Illinois v. Hemi Group LLC,* 622 F.3d 754, 756 (7th Cir. 2010) .............................................- 21 -

*IMO Industries, Inc. v. Kiekert AG,* 155 F.3d 254 (3rd Cir.1998)...........................................- 17 -

*Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 804 (3d Cir.1989)................- 46 -

*Int'l Shoe v. Washington,* 326 U.S. 310 (1945) ....................................................................- 28 -

*Intenze Products, Inc. v. 1586, et al.,* No. 18-cv-4611-RWS (S.D.N.Y. May 24, 2018) .........- 16 -

*Interlink Int'l Fin. Servs,, Inc.* v. *Block*, 145 F. Supp. 2d 312, 314 (S.D.N.Y. 2001) ..............- 48 -

*International Kennel Club v. Mighty Star, Inc.,* 846 F.2d at 1092 n. 8 ....................................- 36 -

*International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) - 23 -

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 71-72 (2d Cir. 1998) ......................................................................................................................- 37 -

*JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565-JMF, Dkt. 18 (S.D.N.Y. Feb. 21, 2018) ...................................................................................................................................- 16 -

*Johnson v. Couturier,* 572 F.3d 1067, 1085 (9th Cir. 2009)...................................................- 39 -

*Juul Labs, Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 18-cv-1382 (E.D. Va. Nov. 16, 2018) ................................................. - 7 -

*Klipsch Grp., Inc. v. Big Box Store Ltd.,* No. 1:12-cv-06283-VSB, 2012 U.S. Dist. LEXIS 153137, at *3-4 (S.D.N.Y. Oct. 24, 2012) ................................................. - 16 -

*L'At hen e, Inc. v. EarthSpring LLC,* 570 F.Supp. 588, 593–94 (D. Del. 2008) ........... - 26 -, - 27 -

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) .............. - 38 -

*Link v. Wabush R. R.*, 370 U.S. 626, 630 – 31 (1962) ............................................ - 30 -

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.,* 965 F.2d 1224, 1228 (2d Cir. 1992) ................................................. - 33 -

*Lorillard Tobacco Co. v. Applewood Party Store, Inc.,* 2006 WL 2925288 ........................... - 19 -

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.,* 426 F.3d 532, 537 (2d Cir. 2005) ................................................. - 32 -

*Louis Vuitton Malletier, S.A. v. 2015shoplvhandbag.com,* No. 15-62531-CIV-BLOOM, 2015 U.S. Dist. LEXIS 181477, at *11 (S.D. Fla. Dec. 18, 2015) ................................................. - 21 -

*Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1356-58 (11th Cir. 2013) .............. - 21 -

*Malcom v. Esposito,* 63 Va. Cir. 440, 446 (Cir. Ct. 2003) ................................................. - 20 -

*Malibu Media, LLC v. Doe,* 2015 U.S. Dist. LEXIS 87751, at *2-3 (S.D.N.Y. July 6, 2015). - 44 -

*Malibu Media, LLC v. Doe*, 2016 U.S. Dist. LEXIS 64656, at *4 (S.D.N.Y. May 16, 2016) . - 44 -

*Malletier v. 2015louisvuittons.com,* No. 15-61973-CIV-BB, 2015 U.S. Dist. LEXIS 181452, at *11 (S.D. Fla. Sep. 29, 2015) ................................................. - 21 -

*Malletier v. 2016bagsilouisvuitton.com,* No. 16-61554-CIV- DPG, 2016 U.S. Dist. LEXIS 93072, at *3 (S.D. Fla. July 18, 2016) ................................................. - 15 -

*Mason Tenders Dist. Council Pension Fund v. Messera*, 1997 WL 223077 (S.D.N.Y. May 7, 1997) ................................................. - 38 -

*McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L. Ed. 2d 223 (1957) ........... - 27 -

*Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 556 (3d Cir. 1993) - 25 -

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor,* 194 F.R.D. 618, 624 (N.D. 1ll. 2000) ................................................. - 44 -

*Milk Studios, LLC v. Samsung Elecs. Co.,* 2015 U.S. Dist. LEXIS 38710, at *4-5 (S.D.N.Y. Mar. 25, 2015) ................................................. - 44 -

*Millennium IP, Inc. v. The Partnerships and Unincorporated Associa*tions *Identified on Schedule "A"*, No. 18-cv-3778 (N.D. Ill. June 6, 2018) .................................................- 7 -

*Milliken v. Meyer,* 311 U.S. 457 (1940) ...................................................................- 22 -

*Monster Energy Co. v. Chen Wensheng,* 136 F. Supp. 3d 897, 906 (N.D. Ill. 2015)...............- 21 -

*Moose Toys Pty LTD et al. v. Guangzhou Junwei Trading Company d/b/a Backgroundshop et al.,* No. 17-cv-2561-LAK, Dkt. 12 (S.D.N.Y. May 11, 2017)....................................................- 16 -

*Moose Toys Pty Ltd. et al., v. 963, et al.*, No. 18-cv-2187-VEC, Dkt. 16 (S.D.N.Y. April 2, 2018) ...................................................................................................................- 16 -

*Moose Toys Pty, Ltd. v. Thriftway Hylan Blvd. Drug Corp.,* No. 15- cv-4483-DLI/MDG, 2015 U.S. Dist. LEXIS 105912, at *8 (E.D.N.Y. Aug. 6, 2015) .................................- 31 -

*Mycoskie v.2016tomsshoessaleoutlet.us,* No. 16-61523- CIV -GAYLES, 2016 U.S. Dist. LEXIS 95963, at *4 (S.D. Fla. July 22, 2016) ..................................................................- 21 -

*N. Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd. Co*., No. 1:10- cv-1630-AKH, 2011 U.S. Dist. LEXIS 158807 (S.D.N.Y. June 24, 2011)..........................................- 17 -

*National Football League v. Chen Cheng, et al*., No. 11-Civ-00344 (S.D.N.Y. January 19, 2011) ...................................................................................................................- 38 -

*North Face Apparel Corp. v. TC Fashions, Inc.,* No. 05-cv-9083-RMB, 2006 U.S. Dist LEXIS 14226, at *10 (S.D.N.Y. Mar. 30, 2006) ......................................................- 39 -

*Nu Image, Inc. v. The Partnerships and Unincorporated Associa*tions *Identified on Schedule "A"*, No. 17-cv-2918 (N.D. Ill. May 12, 2017) .................................................- 7 -

*O'Connor v Sandy Lane Hotel Co., Ltd,* 496 F.3d 312 (3rd Cir. 2007)........................ - 28 -, - 29 -

*Off-White, LLC v. A445995685, et al.,* No. 18-cv-2009-LGS, Dkt. 5 (S.D.N.Y. March 27, 2018) ...................................................................................................................- 16 -

*Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1219-1224 (11th Cir. 2011) ............- 21 -

*Ontel Products Corp. v. Airbrushpainting Makeup Store a/k/a Airbrushespainting, et al.,* No. 17-cv-871-KBF, Dkt. 20 (S.D.N.Y. Feb. 6, 2017)........................................ - 16 -, - 47 -

*Pennzoil Prods. Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 207 (3rd Cir.1998) .................- 28 -

*Philip Morris USA Inc. v. 5 Bros. Grocery Corp.,* No. 13-cv-2451- DLI/SMG, 2014 U.S. Dist. LEXIS 112274 (E.D.N.Y. Aug. 5, 2014)................................................... - 35 -

*Poole v. Sasson,* 122 F. Supp. 2d 556 (E. D. Pa. 2000)........................................................- 23 -

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F. 2d 434, 436 (3rd Cir. 1987) ....- 17 -

*Rapid Slicer, LLC v. Buyspry, 19-cv-249 (W.D. Pa. March 11, 2019) (Horan, J.)*..................- 47 -

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.,* 970 F.2d 552, 559 (9th Cir. 1992) ...................- 38 -

*Remick v. Manfredy,* 238 F.3d 248, 255 (3rd Cir.2001) ...........................................- 23 -

*Renner v. Lanard Toys Limited,* 33 F.3d 277, 279 (3d Cir.1994)...........................- 23 -

*Rolex Watch, U.S.A., Inc. v. Pharel*, 09 CV 4810 (RRM) (ALC), 2011 U.S. Dist. LEXIS 32249,
    at 6 (E.D.N.Y. Mar. 11, 2011) .........................................................- 20 -

*Rovio Entertainment Ltd. and Rovio Animation OY v. Angel Baby Factory d/b/a
    Angelbaby_factory et al.,* No. 17-cv-1840-KPF, Dkt. 11 (S.D.N.Y. March 27, 2017)- 16 -, - 47 -

*Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.,* No. 17-cv-
    4884-KPF, Dkt. 6 (S.D.N.Y. June 28, 2017) .......................................- 47 -

*SEC v. Caledonian Bank Ltd.,* 317 F.R.D. 358 (S.D.N.Y. 2016) ............................- 40 -

Seventh Circuit, in *Illinois v. Hemi Group LLC* ....................................................- 21 -

*Showtech Merchndising, Inc. v. Various John Doe, et al,* 2:12-cv-1270 (W.D. PA September 6,
    2012) .................................................................................- 47 -

*Sin, Inc. v. Does 1-176,* 279 F.R.D. 239, 241 (S.D.N.Y. 2012)............................- 44 -

*SK & F, Co. v. Premo Pharmaceutical Laboratories,* 625 F.2d 1055, 1057 (3d Cir.1980).....- 36 -

*Skrodzki v. Marcello,* 810 F. Supp. 2d 501, 512-13 (E.D.N.Y. 2011)....................- 21 -

*Spin Master Ltd. and Spin Master, Inc. v. 158, et al.,* No. 18-cv-1774-PAE, Dkt. 18 (Feb. 27,
    2018) .................................................................................- 16 -

*Spin Master Ltd. and Spin Master, Inc. v. Alisy, et al.,* No. 18-cv-543-PGG, Dkt. 16 (S.D.N.Y.
    Jan. 22, 2018) .......................................................................- 16 -

Square D Co. v. Scott Elec. Co., No. 06-459, 2008 WL 4462298, at *3 (W.D. PA September 30,
    2008) .............................................................- 25 -, - 27 -, - 28 -, - 29 -

*Sterling Commercial Credit-Michigan, LLC v. Phoenix Industries I, LLC*, 762 F.Supp.2d 8
    (D.D.C. 2011) .......................................................................- 33 -

*Stern v. Cosby,* 246 F.R.D. 453, 457 (S.D.N.Y. 2007)......................................- 44 -

*The North Face Apparel Corp. and PRL USA Holdings, Inc. v. Fujian Sharing, et al.*, Civil
    Action No. 10-Civ-1630 (AKH) (S.D.N.Y. March 2, 2010) .......................- 38 -

*Tiffany (NJ) LLC v. Forbse,* No. 11-cv-4976-NRB, 2012 U.S. Dist. LEXIS 72148, at *34
    (S.D.N.Y. May 23, 2012)............................................................- 37 -

*Time Warner Entertainment Co., L.P. v. Does*, 876 F. Supp. 407, 410-11 (E.D.N.Y. 1994) ..- 31 -

*Tory Burch LLC v. Yong Sheng Intl Trade Co., Ltd.*, No. 10-Civ-9336 (S.D.N.Y. December 17, 2010) ................................................................................................ - 17 -, - 38 -

*Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446 (3rd Cir.2003) ............................. - 24 -, - 27 -

*TRE Services, Inc. v. U .S. Bellows, Inc.,* 2012 WL 2872830, *4–5 (W.D.Pa. July 12, 2012) - 26 -

*True Religion Apparel, Inc. et al. v. Xiaokang Lee et al*., No. 1:11-cv-08242-HB (S.D.N.Y. Nov. 15, 2011) .............................................................................................................. - 17 -

*Walter v. Stacey*, 837 A.2d 1205 (Pa. Super. 2003)................................................................- 6 -

*Warner Bros. Entm't Inc. v. Doe,* No. 14-cv-3492- KPF, 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014).................................................................................... - 37 -

*William Mark Corporation v. 1&cc, et al.,* No. 18-cv-3889-RA, Dkt. 18 (S.D.N.Y. May 2, 2018) ........................................................................................................................ - 16 -

*Willyoung v. Colorado Custom Hardware, Inc.,* 2009 WL 3183061 (W. D. Pa. Sept.30, 2009) ........................................................................................................... - 26 -, - 28 -

*Windsurfing Intern, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986)................... - 35 -

*Wishnatzki &Nathel, Inc. v. H.P. Island-Wide, Inc.,* No. 00-cv-8051-JSM, 2000 U.S. Dist. LEXIS 15664, at *4 (S.D.N.Y. 2000)...................................................... - 37 -

*WOW Virtual Reality, Inc. v. Bienbest, et al.,* No. 18-cv-3305-VEC, Dkt. 9 (S.D.N.Y. April 16, 2018) .......................................................................................................... - 16 -

*Wow-Virtual Reality, Inc. v. 740452063 et al.*, No. 18-cv-3618, Dkt. 18 (S.D.N.Y. April 25, 2018) ....................................................................................................... - 47 -

*WowWee Group Limited, et al. v. A249345157, et al,* No. 17-cv-9358-VEC, Dkt. 18 (S.D.N.Y. Dec. 11, 2017)......................................................................................... - 16 -

*WowWee Group Limited, et al. v. Meirly, et al.,* No. 18-cv-706-AJN, Dkt. 11 (S.D.N.Y. Jan. 26, 2018) ...................................................................................................... - 16 -

*Zippo Mfg. Co. v. Zippo DOT Com, 952 F.Supp. 1119 (W.D.Pa.1997)*............................... passim

## Statutes

17 U.S.C. § 501 ............................................................................................................ - 34 -

17 U.S.C. § 501(a) ....................................................................................................... - 34 -

17 U.S.C. § 501(a), .........................................................................................................- 2 -

17 U.S.C. § 502 (a) ...................................................................................................... - 30 -

17 U.S.C. § 504(b ............................................................................................. - 36 -, - 39 -

17 U.S.C. § 504(b) ....................................................................................................- 6 -

42 Pa. C. S. A. § 5322(b) (1981) ..............................................................................- 23 -

Fed. R. Civ. P. 26(d)(1) .............................................................................................- 44 -

Fed. R. Civ. P. 4 (e) (1) ..............................................................................................- 17 -

Fed. R. Civ. P. 65(b) ..................................................................................................- 30 -

## Other Authorities

2 *McCarthy,* § 30:21 ................................................................................................- 36 -

## Rules

Fed. R. Civ. P.  65(c) .................................................................................................- 46 -

Fed. R. Civ. P. 26(d)(1) .............................................................................................- 44 -

Fed. R. Civ. P. 30(b), 34(b) .......................................................................................- 43 -

Fed. R. Civ. P. 4 (e) (1). .............................................................................................- 17 -

Fed. R. Civ. P. 64 .......................................................................................................- 6 -

Fed. R. Civ. P. 65(a) ..................................................................................................- 48 -

Fed. R. Civ. P. 65(b). .................................................................................................- 30 -

Fed. R. Civ. P. 65(d)(2)(C) ........................................................................................- 45 -

Fed.R.Civ.P. 4(f)(3), ..................................................................................................- 42 -

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AFG MEDIA LTD, | | |
| Plaintiff, | | Civil Action No. |
| v. | | |
| POPTREND-OFFICIAL, *et al.*, | | Jury Trial Requested |
| Defendants. | | **FILED UNDER SEAL** |

## I.  INTRODUCTION

Plaintiff AFG MEDIA LTD ("AFG" or "Plaintiff") submits this memorandum of law in support of its *ex parte* application for: 1) a temporary restraining order; 2) an order restraining assets and Merchant Storefronts (as defined *infra);* 3) an order to show cause why a preliminary injunction should not issue; and 4) an order authorizing expedited discovery against above-referenced Defendants (hereinafter collectively referred to as "Defendants" or individually as "Defendant") and the third party entities identified below  ("Application").[1]

Specifically, Plaintiff has obtained evidence clearly demonstrating that Defendants are without authorization or license using Plaintiff's copyrighted Alien Costume sculpture ("Plaintiff's Work") while promoting, selling, offering for sale and distributing knock-offs of Plaintiff's Product, thus infringing Plaintiff's Work.  Defendants accomplish their illegal sales through the use of, at least, the Internet based e-commerce stores operated via at least one of Amazon.com, eBay.com, Joybuy, Temu.com, Walmart.com, Wish.com and AliExpress.com

---

[1]    Plaintiff acknowledges it is seeking multiple forms of relief.  Plaintiff will promptly provide supplemental briefing or oral argument on any issue should the Court request it.

Internet marketplace platforms.  Based on this evidence, Plaintiff's Complaint alleges claims federal copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 501(a), *et seq*.

Defendants' sale, distribution, and advertising of the Knock-off Products are highly likely to cause consumers to believe that Defendants are offering Plaintiff's genuine product when in fact they are not.  To illustrate, below are several examples which vividly show that the Knock-off Products itself and the manner in which it is marketed is designed to confuse and mislead consumers into believing that they are purchasing Plaintiff's genuine product or that the Knock-off Products is otherwise approved by or sourced from Plaintiff:

Plaintiff's Copyrighted Sculpture



Listing of Defendant Decalare
Showing Infringing Sculpture



Plaintiff's Copyrighted Sculpture



Listing of Defendant Poptrend-Official
Showing Infringing Sculpture



Additional photographic comparisons of Plaintiff's Product and the Infringing Products are attached as **Exhibit 1** of the Complaint. *See Declaration of Fraser Smeaton* (the "*Smeaton Dec.*") at ¶ 18.

Defendants' actions have resulted in actual confusion in the marketplace between Defendants' Infringing Product and Plaintiff's genuine products. *Id.* at ¶ 18. Numerous purchasers of Defendants' Infringing Product have written on-line reviews to complain about the quality of the Infringing Product believing same to be a genuine version of Plaintiff's Product *Id.* As poorly designed and manufactured products, there is a risk of injury and disappointment from the confused customers. *Id.* at ¶ 20.

According to the Fiscal Year 2021 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report, e-commerce sales have resulted in a sharp increase in the shipment of unauthorized products into the United States. *Declaration of Stanley D. Ference III* (the "Ference Dec.") at ¶ 3. Over 89% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over half (51%) of CBP seizures originated from mainland China and Hong Kong. *Id.* An analysis by Daniel C.K. Chow, in "Alibaba, Amazon, and Counterfeiting in the Age of the Internet," 40 NW. J. INT'L L. & BUS. 157, 186 (2020), finds that third-party service providers do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." *Id.* at ¶ 4. A report prepared by the U. S. Department of Homeland Security's Office of Strategy, Policy, and Plans (January 2020) finds that counterfeiters hedge again the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts. Since platforms

generally do not require marketplace sellers to identify the underlying business entity, counterfeiters have many difference profiles even though they are commonly owned and operated. *Id.* at ¶ 5.

Defendants' unlawful activities have deprived and continue to deprive Plaintiff of its exclusive rights to reproduce, distribute and/or sell its Works in violation of the Copyright Act. By their activities, Defendants are defrauding Plaintiff and the consuming public for Defendants' benefit. Defendants are unjustly profiting at the Plaintiff's expense. Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiff ongoing irreparable harm. Accordingly, Plaintiff is seeking entry of a temporary restraining order prohibiting Defendants' from further harming the Plaintiff through their willful and bad faith infringement of the Plaintiff's Work.

Plaintiff also seeks to restrain the illegal profits generated by Defendants. Plaintiff has obtained evidence that Defendants operating their Seller IDs via Amazon.com ("Amazon") necessarily use money transfer and/or retention/processing services with Amazon as a method to receive monies generated through the sale of counterfeit products. Amazon operates as a money transmitter for sales made on Amazon and as such Amazon has the ability to identify, and restrain, the payment accounts associated with the Defendants who use their respective Seller IDs via Amazon to conduct their commercial transactions. See Declaration of Brian Samuel Malkin ("*Malkin Dec.*"), ¶ 1 - 14. Additionally, Plaintiff also obtained evidence that the Defendants operating their Seller IDs via eBay.com use money transfer and retention services with PayPal, Inc. ("PayPal") or eBay.com as a method for accepting payment for the sale of their counterfeit products. *Id.* and *Odell Dec*. Furthermore, Plaintiff obtained evidence that Defendants operating their Seller IDs via Wish.com have their payments processed on their

behalf using an aggregate escrow account in the name of ContextLogic, Inc. ("ContextLogic"). *Id.* Plaintiff also obtained evidence that Defendants operating their Seller IDs via Walmart.com use Walmart Pay to have their payments processed using an account in the name of Walmart Inc. and Wal-Mart.com USA, LLC. *Malkin Dec.*, ¶ 1 – 14. Plaintiff has also obtained evidence that Joybuy Marketplace operated by Jingdong E-Commerce (Trade) Hong Kong Co., Ltd., is an e-commerce marketplace that allows Defendants to conduct their commercial transactions privately via Joybuy's payment processing and retention services provided by Jingdong E-commerce (Trade) Hong Kong Corporation Limited (registered in Hong Kong) and JD E-Commerce America (registered in California, USA). *Id.* Plaintiff has also obtained evidence that Temu Marketplace is an online platform operated by Whaleco Inc. and permits Defendants to conduct commercial transactions and sell their products. *Id.* Lastly, Plaintiff has obtained evidence that Defendants operating their Seller IDs via AliExpress.com ("AliExpress") have their payments processed on their behalf using aggregate escrow accounts in the name of Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform (i.e., "AliExpress"), and its related companies, Zhejiang Ant Small and Micro Financial Services Group Co., Ltd. AliPay (China) Internet Technology Co. Ltd., and Alipay.com Co., Ltd. (collectively referred to as "AliPay").[2] *Id.*

In light of the inherently deceptive nature of the knock-off and infringing business, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless they are restrained. The Copyright Act allows Plaintiff to recover the illegal profits gained through Defendants' distribution and sale of their copyright

[2]    WorldPay US, Inc. ("WorldPay") processes transactions on behalf of Alibaba and Alipay, which may appear as "AliExpress" on a cardholder's credit card statement. (*See* Brian Samuel Malkin ("*Malkin Dec.*"), ¶ 8, filed herewith.)

infringing goods.  *See* 17 U.S.C. § 504(b).  Furthermore, in Pennsylvania, a pre-judgment restraint of existing assets is appropriate where a plaintiff is asserts a claim for money damages.[3] *Walter v. Stacey*, 837 A.2d 1205 (Pa. Super. 2003) (injunction entered restraining assets in action seeking damages for a wrongful death); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (3d Cir. 1990) (affirming injunction entered restraining assets in class action lawsuit).  To preserve the disgorgement remedy and the ability to at least partially satisfy a judgment, Plaintiff seeks an *ex parte* order restraining Defendants assets, including specifically, funds transmitted through Amazon, eBay.com, Joybuy, PayPal, ContextLogic, AliPay, Temu, and Walmart Pay, Worldpay (collectively, the "Financial Institutions"). The Court has jurisdiction over all of the Third-Party Service Providers and Financial Institutions, or alternatively, they have voluntarily cooperated and submitted to the Court's jurisdiction in prior counterfeiting lawsuits like this one. *See Malkin Dec*.

       Courts in our district have previously granted the relief sought herein in actions involving similar claims under Section 43(a) of the Lanham Act for passing off knock-offs using plaintiff marks, copyrighted works, and/or trade dress. *Doggie Dental, Inc. v. Ahui*, No. 19-cv-1627 (W.D. Pa. Dec. 12, 2019) (Hornak, J.) (sellers on amazon.com), *Gorge Designs v Accessmall, et al.,* No 19-1454 (W.D. Pa.) (Stickman, J) (sellers on Aliexpress.com and eBay.com); *Doggie Dental Inc. v. Go Well,* No. 19-cv-1282 (W.D. Pa. Oct. 11, 2019) (Hornak, J.) (sellers on amazon.com); *Doggie Dental Inc. v. Worthbuyer,* No. 19-cv-1283 (W.D. Pa. Oct. 11, 2019) (Hornak, J.) (sellers on ebay.com); *Doggie Dental Inc. v. Max_Buy*, No. 19-cv-746 (W.D. Pa. June 27, 2019) (Hornak, J.) (sellers on ebay.com); *Doggie Dental Inc. v. Anywill,* No. 19-cv-682

---

[3]    Fed. R. Civ. P. 64 provides "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."

(W.D. Pa. June 13, 2019) (Hornak, J.) (sellers on amazon.com). Other courts have granted the relief sought herein in actions involving claims under Section 43(a) of the Lanham Act and copyright infringement. *Millennium IP, Inc. v. The Partnerships and Unincorporated Associat*ions *Identified on Schedule "A"*, No. 18-cv-3778 (N.D. Ill. June 6, 2018) (nearly 400 defendants, including sellers on amazon.com and ebay.com); *Nu Image, Inc. v. The Partnerships and Unincorporated Associat*ions *Identified on Schedule "A"*, No. 17-cv-2918 (N.D. Ill. May 12, 2017) (over 200 defendants, including sellers on amazon.com and ebay.com).  Furthermore, other courts have granted the relief sought herein whether the defendants are located outside of the United States or based in the United States.  *Cartier International A.G. v. Replicapaneraiwatches.cn,* No. 17-cv-62401 (S.D. Fla. Jan. 2, 2018) (mix of U.S. and foreign defendants) and *Juul Labs, Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 18-cv-1382 (E.D. Va. Nov. 16, 2018) (all U.S. defendants).

## II.  <u>STATEMENT OF FACTS</u>

### A.  PLAINTIFF'S MORPH® Brand Alien Costume

Plaintiff, AFG MEDIA LIMITED, is a private limited company, existing under the laws of the United Kingdom. Plaintiff owns and operates Morph-Costumes brand and using its MORPH® trademark distributes products under its brand, including the Alien Costume, on its Amazon.com and www.morphsuits.com storefonts, described more fully below. Declaration of *Smeaton Dec*., ¶¶2 - 3.

Plaintiff has created and innovated all of its own products, packaging, and advertising.  This is a costly effort involving graphic design, industrial design, and tooling.  It takes time to create, design, test, redesign, and retest prototypes.  Products are introduced to retailers via tradeshows across the world. This introduction process costs a lot of money but it is

a chance to show customers the quality and use of the product.  Today, Plaintiff's Morph-

Costumes brand encompasses many whimsical and original costumes, including the Alien

Costume described below. Id. at ¶ 5.

Plaintiff began its costume design and sales business in 2009 with a very small offering

of costumes but has grown today and now offers over 1000 different designs. To date, Plaintiff

has sold over two million costumes worldwide under its famous MORPH® brand, and has well

over 1.1 million Facebook followers. Id at ¶ 6.

Genuine goods using Plaintiff's Work (as defined below) are widely legitimately

advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via

the Internet.  Id. at ¶ 7. Over the past several years, visibility on the Internet, particularly via

Internet search engines such as Google, Yahoo!, and Bing, has become increasing important to

Plaintiff's overall marketing. *Id*. at ¶ 7.

Thus, Plaintiff and its authorized distributors expend significant monetary resources on

Internet marketing, including search engine optimization ("SEO") strategies. *Id.* at ¶ 8. Other

costs include print catalog ads, tradeshows, and handing out free samples. *Id.* Those strategies

allow Plaintiff and its authorized retailers to fairly and legitimately educate consumers about the

value associated with Plaintiff's brand and the goods sold thereunder. *Id.* Similarly, Defendants'

individual seller's stores are indexed on search engines and compete directly with Plaintiff for

space in the search results. *Id.*

**B.  PLAINTIFF'S RIGHTS**

Plaintiff developed and sells its Alien Costume ("Plaintiff's Product") under the

registered MORPH® trademark ("Plaintiff's Mark"). No. 5398463 for MORPH® for, *inter alia*,

"costumes" in class 25, and "retail stores" selling costumes in class 35. A copy of the trademark

registration certificate is attached to the Complaint as **Exhibit 3A.** Plaintiff also owns U.S.

Copyright Registration No.  VA-2-261-150, the subject of which is the 2-D, sculpture of

Plaintiff's Product. ("Plaintiff's Work"). Copies of the Copyright registration and deposit copies

are attached to the Complaint as **Exhibit 3B**. *Id.* at ¶ 9.

The Plaintiff's Product is a whimsical inflatable alien costume that gives the viewer the

impression that a person is being carried around by an alien. Below are images of Plaintiff's

Products, (ASIN[4] B06XKMP9KX) and (ASIN B09HQTDYLM) which retail for $40.00 to

$50.00:

 

*Id.* at ¶ 10.

MORPH® brand Alien Costumes have unique ornamental features, including: a

whimsical alien body, face, and profile with dayglow green coloring, and jet black eyes, nose

and mouth, hosting a human with black top, royal blue pants, and white sneakers with black

laces -- inherently distinct features that function as a source identifier for the Plaintiff's Product.

The combined distinct features of the Plaintiff's Work, packaging, instructions, and the

---

[4]      Refers to Amazon Standard Identification Number. Each product is assigned a unique ASIN when listed on
        Amazon.

Plaintiff's Mark all function as a trade dress so that consumers are certain that Plaintiff is the source of the Alien Costume. Plaintiff is also the owner of various published photographs, videos, artwork, creative text and product instructions appearing on its web site morphsuits.com. Screen shots of the Plaintiff's Amazon Store and Website showing Plaintiff's Work are shown in **Complaint Exhibit 2.[5]**  *Id.* at ¶ 11.

The unique features of Plaintiff's Product, Plaintiff's Mark and Plaintiff's Work, including the distinct photographs, the design, the instructions, the packaging, and the unique presentation of the product, all comprise Plaintiff's valuable intellectual property ("IP") and all have become distinct in consumer's minds such that consumers associate all of this IP with Plaintiff's Product.  *Id.* at ¶ 12.

Plaintiff's Work, Mark and Trade Dress have been used in interstate commerce to identify and distinguish Plaintiff's goods. *Id.* at 13. Plaintiff's Work, Mark and Trade Dress has been used by Plaintiff prior in time to Defendants' use of this mark. *Id.* Plaintiff's' Work, Mark and Trade Dress has never been assigned or licensed to any of the Defendants in this matter. *Id.* The Plaintiff's Work, Mark and Trade Dress are symbols of Plaintiff's quality, reputation, and goodwill and has never been abandoned. *Id.*

### C.  PLAINTIFF'S EFFORTS TO POLICE THE DEFENDANTS' CONDUCT

The Defendants use the interactive commercial Internet websites and Internet based e-commerce stores using the Seller IDs set forth on "**Schedule A**" to the Complaint.  *See Odell Dec.*[6], ¶ 3. These interactive commercial Internet websites provide on-line Merchant Storefronts

---

[5]    As set forth in the Complaint, and proven in **Composite Exhibit 1**, all of the Defendants are infringing on the federal copyright registration of the Plaintiff's Alien Sculpture ("Infringing Products").

[6]    Refers to the Declaration of Dee Odell in Support of Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction, filed herewith.

(as defined *infra*) that allow the Defendants to maintain their anonymity while advertising, offering for sale, and selling Infringing Products into the United States and into Pennsylvania. The Internet marketplaces used by these Defendants include AliExpress.com, Amazon.com, eBay.com, Joybuy, Temu.com, Walmart.com, and wish.com.  *See Odell Dec.,* ¶ 3 and Composite Exhibit 1 attached thereto.

Plaintiff has been forced to police the various Internet marketplaces to identify and seek takedowns of unlawful listings for the Infringing Products since allowing the unlawful listings to continue is causing damage to Plaintiff's reputation and bottom line.  Some Defendants sell their fake Alien Costume at a bargain basement price that specifically undercuts the controlled retail price of the Alien Costume. Because of the software provided by the various Internet Marketplaces, the lowest priced items are sorted to the top and/or promoted by the software and then purchased by the consumers.  Plaintiff's Product is thus ignored.  Plaintiff has had varied success in identifying and requesting takedowns of the various unlawful listings and as soon as one is taken down another unlawful listing replaces it. *Smeaton Dec*. at ¶ 15.

Another major problem with the Internet Marketplaces is that there is a direct and convenient connection between various Chinese and other unidentified manufactures to the Infringing Products.  In essence, a counterfeiter in Vietnam or Russia, for example, may order a crate of Infringing Products from a Chinese manufacturer, have them drop shipped to a fulfillment center in the United States, and then sell the Infringing Products to a US consumer through a Third-Party Service Provider.  The ease of this system encourages knock-offs to flourish. *Smeaton Dec*. at ¶ 16.

For these reasons, Plaintiff retained the legal counsel of Ference & Associates LLC ("the Ference firm") to perform the policing of various Internet marketplaces.  *Id*. at ¶ 17.  During the

- 11 -

process, the Ference firm identified many Chinese manufacturers operating on Marketplace Storefronts hosted by the Internet marketplaces. *See id.* These manufacturers were supplying many of the other identified Defendants with infringing products flooding the Internet marketplaces and damaging Plaintiff's business. This damage to Plaintiff's business will continue unless Plaintiff receives the sought after restraining order and injunctive relief. *Id.*

**D. THE DEFENDANTS' WRONGFUL CONDUCT**

Defendants' sale, distribution, and advertising of the Infringing Product are highly likely to cause consumers to believe that Defendants are offering genuine versions of Plaintiff's Products when in fact they are not. To illustrate, below are several examples which vividly show that the Infringing Product itself and the manner in which it is marketed is designed to confuse and mislead consumers into believing that they are purchasing Plaintiff's Product or that the Infringing Product is otherwise approved by or sourced from Plaintiff:

Plaintiff's Copyrighted Sculpture

Listing of Defendant Decalare
Showing Infringing Sculpture




Plaintiff's Copyrighted Sculpture      Listing of Defendant Poptrend-Official
Showing Infringing Sculpture




Additional photograph comparisons of Plaintiff's Product and the Infringing Products appear in **Exhibit 1** attached to the Complaint. *Id*. at ¶ 18

Defendants' actions have resulted in actual confusion in the marketplace between Defendants' Infringing Product and the genuine version of Plaintiff's Products. Numerous purchasers of Defendants' Infringing Products have written on-line reviews to complain about the quality of the Infringing Product believing same to be a genuine version of Plaintiff's Product.  As poorly designed and manufactured products, there is a risk of injury and disappointment from the confused customers. The Infringing Products threaten to destroy the reputation of high quality that Plaintiff's Products have earned *Id*. at ¶¶19 – 21.

Defendants do not have, nor have they ever had, the right or authority to use Plaintiff's Work for any purpose. *Id.* at ¶ 22. Defendants' unlawful activities have deprived and continue to deprive Plaintiff of its rights to fair competition. *Id.* By their activities, Defendants are defrauding Plaintiff and the consuming public for Defendants' benefit. *Id.* Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiff ongoing irreparable harm. *Id.* Accordingly, Plaintiff is seeking entry of a temporary restraining order prohibiting Defendants' further wrongful infringement of Plaintiff's Work. *Id.*

Given Defendants' copying and therefore infringing on Plaintiff's Work in violation of 17 U.S.C. § 501 (a), the Infringing Products are indistinguishable to consumers, both at the point of sale and post-sale.  By using Plaintiff's intellectual property, Defendants have created a false association between their Infringing Products, their Internet e-commerce stores, and Plaintiff. Such false association is in violation of 15 U.S.C. § 1125(a), constitutes unfair competition, infringes on Plaintiff's Mark, and is causing and will continue to cause Plaintiff's irreparable harm and damage. *Id.* at ¶ 23.

The infringements of Plaintiff's Work deprive Plaintiff of the ability to control the creative content protected by the Copyright Act, it devalues the Plaintiff's Morph® brand by associating it with inferior quality goods, and it undermines the value of the Plaintiff's IP by creating the impression that infringement may be undertaken with impunity which threatens Plaintiff's ability to attract investors and markets for the Plaintiff's Products. *Id.* at ¶ 24.

As part of Plaintiff's counsel's ongoing investigation regarding the sale of Infringing Products, Plaintiff's counsel investigated the promotion and sale of Infringing Products by Defendants and obtained available payment account data for receipt of funds by Defendants for the sale of knock-off versions of Plaintiff's genuine products through the Seller IDs. *Odell Dec.*, ¶ 3. Through visual inspection of Defendants' listings for Infringing Products, it was confirmed that each Defendant is using the Plaintiff's Work without authorization and that the product that each Defendant is offering for sale, using product features virtually identical to Plaintiff's Work, are in fact, not genuine products. *Id.* The checkout pages or order forms for the Infringing Products confirm that each Defendant was and/or is still currently offering for sale and/or selling Infringing Products through their respective Merchant Storefronts and User Accounts and that each Defendant provides shipping and/or has actually shipped Infringing products to the United

States, including to customers located in Pennsylvania.  At checkout, a shipping address located

in the Pittsburgh area ("the Pennsylvania Address") in the Western District of Pennsylvania

verified that each Defendant provides shipping to the Pennsylvania Address. *Id. Smeaton Dec*. 25

– 27. Mr. Smeaton inspected the detailed web listings describing the Infringing Products

Defendants are offering for sale through the Internet based e-commerce stores operating under

each of their respective Seller IDs, and determined the products were not genuine versions of

Plaintiff's products. *Id.* and Composite Exhibit 1, and *Smeaton Dec*. ¶¶ 25 – 27.[7]

17 U.S.C. § 106 grants the owner of a copyright of a sculpture the exclusive rights to

reproduce and display the work. Through the copying of Plaintiff's Work, Defendants have

violated the Plaintiff's exclusive rights in it its sculpture. A comparison of Plaintiff's Work to the

advertising and offering for sale of Defendants' products reveals the obvious knock-off and

infringing nature of Defendants' activities.  Id. Defendants' goods are being promoted,

advertised, offered for sale, and sold by Defendants to consumers within this district and

throughout the United States.  Defendants are making substantial sums of money by preying

upon members of the general public, many of whom have no knowledge Defendants are

defrauding them.  Defendants are also falsely representing to consumers that their goods are

genuine, authentic, endorsed, and authorized by Plaintiff.  Defendants' use of Plaintiff's Work in

---

[7]  See *e.g., Gucci Am., Inc. v. Tyrrell-Miller,* 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (Plaintiff's Intellectual Property Manager found that the products offered for sale on the Defendant's websites were non-genuine counterfeit products, based on a visual inspection of Defendant's websites); *Malletier v. 2016bagsilouisvuitton.com,* No. 16-61554-CIV- DPG, 2016 U.S. Dist. LEXIS 93072, at *3 (S.D. Fla. July 18, 2016) (Plaintiff's representative reviewed the items bearing the Louis Vuitton Marks offered for sale through Defendant's Internet websites and determined the products to be non-genuine, unauthorized versions of the Plaintiff's products.); *Chanel Inc. v. Yang,* No. C-12-04428-PJH (DMR), 2013 U.S. Dist. LEXIS 151104, at *5-6 (N.D. Cal. Aug. 13, 2013) (Plaintiff's Director of Legal Administration reviewed the various Chanel-branded products offered for sale by Defendants on each of the websites operating under the subject domain names, and determined that the products were non-genuine Chanel products); *Chanel, Inc. v. Powell,* No. C/A 2:08-0404-PMD-BM, 2009 U.S. Dist. LEXIS 127709, at *7 (D.S.C. 2009) (Plaintiff's representative personally reviewed the printouts reflecting the various Chanel brand products offered for sale by the Defendant through its website, and concluded that those products were non-genuine Chanel products).

Defendants' advertising and copying and distributing their knock offs constitutes copyright infringement. Ultimately, Defendants' Internet activities infringe upon Plaintiff's intellectual property rights.  The Seller IDs, and associated payment accounts, are a substantial part of the means by which Defendants further their scheme to fraudulently trade off of the fame and reputation of the Plaintiff's authentic goods and unjustly deprive of the Plaintiff of profits and cause harm to Plaintiff. *Id.* at ¶¶ 28 – 30.

In light of the covert nature of Defendants' offshore and infringing activities and the importance of creating economic disincentives for such infringing activities, courts have recognized these concerns and routinely grant *ex parte* applications for relief in cases asserting, *inter alia*,  copyright infringements on the Internet.[8]  Accordingly, Plaintiff respectfully requests

---

[8]     *See, e.g., Intenze Products, Inc. v. 1586, et al.,* No. 18-cv-4611-RWS (S.D.N.Y. May 24, 2018)*; Allstar Marketing Group, LLC v. 158, et al.,* No. 18-cv-4101-GHW, Dkt. 22 (S.D.N.Y. May 17, 2018)*; William Mark Corporation v. 1&cc, et al.,* No. 18-cv-3889-RA, Dkt. 18 (S.D.N.Y. May 2, 2018)*; WOW Virtual Reality, Inc. v. Bienbest, et al.,* No. 18-cv-3305-VEC, Dkt. 9 (S.D.N.Y. April 16, 2018)*; Ideavillage Products Corp. v. abc789456, et al.,* No. 18- cv-2962-NRB, Dkt. 11 (S.D.N.Y. April 11, 2018)*; Ideavillage Products Corp. v. Aarhus, et al.,* No. 18-cv-2739- JGK, Dkt. 22 (S.D.N.Y. March 28, 2018)*; Moose Toys Pty Ltd. et al., v. 963, et al.,* No. 18-cv-2187-VEC, Dkt. 16 (S.D.N.Y. April 2, 2018)*; Off-White, LLC v. A445995685, et al.,* No. 18-cv-2009-LGS, Dkt. 5 (S.D.N.Y. March 27, 2018)*; Spin Master Ltd. and Spin Master, Inc. v. 158, et al.,* No. 18-cv-1774-PAE, Dkt. 18 (Feb. 27, 2018)*; JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565-JMF, Dkt. 18 (S.D.N.Y. Feb. 21, 2018)*; Spin Master Ltd. and Spin Master, Inc. v. Alisy, et al.,* No. 18-cv-543-PGG, Dkt. 16 (S.D.N.Y. Jan. 22, 2018)*; WowWee Group Limited, et al. v. Meirly, et al.,* No. 18-cv-706-AJN, Dkt. 11 (S.D.N.Y. Jan. 26, 2018)*; Ideavillage Products Corp. v. Dongguan Shipai Loofah Sponge Commodity Factory, et al.,* No. 18-cv-901-PGG, Dkt. 20 (S.D.N.Y. Feb. 1, 2018)*; WowWee Group Limited, et al. v. A249345157, et al,* No. 17-cv-9358-VEC, Dkt. 18 (S.D.N.Y. Dec. 11, 2017)*; HICKIES, Inc. v. Shop1668638 Store, et al.,* No. 17-cv-9101-ER, Dkt. 14 (S.D.N.Y. Dec. 6, 2017)*; Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.,* No. 17-cv-9099-JMF, Dkt. 19 (S.D.N.Y. Nov. 27, 2017)*; Ideavillage Products Corp. v. Shenzhen City Poly Hui Foreign Trade Co., Ltd., et al.,* No. 17-cv-8704-JGK. .(S.D.N.Y. May 24, 2017)*; Moose Toys Pty LTD et al. v. Guangzhou Junwei Trading Company d/b/a Backgroundshop et al.,* No. 17-cv-2561-LAK, Dkt. 12 (S.D.N.Y. May 11, 2017)*; Rovio Entertainment Ltd. and Rovio Animation OY v. Angel Baby Factory d/b/a Angelbabyfactory et al.,* No. 17- cv-1840-KPF, Dkt. 11 (S.D.N.Y. March 27, 2017)*; Ontel Products Corporation v. Airbrushpainting Makeup Store a/k/a Airbrushespainting et al.,* No. 17-cv-871-KBF, Dkt. 20 (S.D.N.Y. Feb. 6, 2017)*; Ideavillage Products Corp. v. Bling Boutique Store, et al.,* No. 16-cv-09039-KMW, Dkt. 9 (S.D.N.Y. Nov. 21, 2016)*; Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al,* No. 1:15-cv-03784-PKC (S.D.N.Y. June 23, 2015) (unpublished); *Chanel, Inc. v. Conklin Fashions, Inc.,* No. 3:15-cv-893-MAD/DEP, 2015 U.S. Dist. LEXIS 109886, at *10-13 (N.D.N.Y. Aug. 14, 2015)*; Belstaff Grp. SA v. Doe, No. 15-cv-2242-PKC/MHD,* 2015 U.S. Dist. LEXIS 178124, at *2 (S.D.N.Y. June 18, 2015)*; AW Licensing, LLC v. Bao,* No. 15-cv-1373, 2015 U.S. Dist. LEXIS 177101, at *2-3 (S.D.N.Y. Apr. 1, 2015)*; Klipsch Grp., Inc. v. Big Box Store Ltd.,* No. 1:12-cv-06283-VSB, 2012 U.S. Dist. LEXIS 153137, at *3-4 (S.D.N.Y. Oct. 24, 2012); *True Religion Apparel, Inc. et al. v. Xiaokang Lee et al.,* No. 1:11-cv-08242-HB

that this Court grant its *ex parte* Application for the following: 1) a temporary restraining order;

2) an order restraining assets and Merchant Storefronts; 3) an order to show cause why a

preliminary injunction should not issue; and 4) an order authorizing expedited discovery against

Defendants, the Third Party Service Provider and Financial Institutions.

## III.  ARGUMENT

### A.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

Federal courts "may assert personal jurisdiction over a nonresident of the state in which

the court sits to the extent authorized by the law of that state." *D'Jamoos v. Pilatus Aircraft, 566*

*F.3d 94, 102 (3d Cir. 2009)* (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819

F. 2d 434, 436 (3rd Cir. 1987)). This determination entails a two-step inquiry. First, the court

must determine whether the long-arm statute of the forum allows courts of that state to exercise

jurisdiction over the defendant. Fed. R. Civ. P. 4 (e) (1). Second, if the forum state allows

jurisdiction, the court must determine whether exercising personal jurisdiction over the defendant

in a given case is consistent with the Due Process Clause of the U.S. Constitution. *See IMO*

*Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3rd Cir.1998). As alleged herein, Defendants'

unlawful, counterfeiting and/or infringing activities subject them to long-arm jurisdiction in

Pennsylvania under 42 P. A. Cons. Stat. § 5322. Furthermore, Pennsylvania's exercise of

jurisdiction over Defendants thereunder comports with due process.

---

(S.D.N.Y. Nov. 15, 2011) (unpublished)*; N. Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd. Co*., No.
1:10- cv-1630-AKH, 2011 U.S. Dist. LEXIS 158807 (S.D.N.Y. June 24, 2011); *Tory Burch, LLC v. Yong Sheng
Int'l Trade Co., Ltd*., No. 1:10-cv-09336-DAB, (S.D.N.Y. Jan. 4, 2011) (unpublished); *Chloe v.
Designersimports.com USA, Inc*., No. 07-cv-1791 -CS/GAY, 2009 U.S. Dist. LEXIS 42351, at *2 (S.D.N.Y.
Apr. 29, 2009); *see also In re Vuitton et Fils, S.A*., 606 F.2d 1 (2d Cir. 1979) (holding that ex parte temporary
restraining orders are indispensable to the commencement of an action when they are the sole method of
preserving a state of affairs in which the court can provide effective final relief).

1.  **Defendants are Subject to Personal Jurisdiction Under 42 P.A. C.S.A. § 5322**

Pennsylvania authorizes personal jurisdiction over the Defendant pursuant to 42 Pa.

Cons. Stat § 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may

exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from

such person: (1) Transacting any business in this Commonwealth.  Without excluding other acts

which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a

single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit… (3)

Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm

or tortious injury by an act or omission outside this Commonwealth. . . (10) Committing any

violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local

ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or

of any order of court or other government unit."

Courts have regularly conferred personal jurisdiction on a given defendant based on that

defendant's operation of a fully interactive website through which consumers can access the site

from anywhere and purchase products, as is the case with Defendants' User Accounts and

Merchant Storefronts, and allow for customers all over the world (including within Allegheny

County, Pennsylvania) to view and purchase products, including Infringing Products, as

demonstrated by the websites themselves and Plaintiff's purchase of Infringing Products. *See*

*Odell Dec.,* ¶ 3 and Composite Exhibit 1, and *Smeaton Dec.,* ¶ 27 - 29.  *See n. 6, infra.*

(collecting cases in which operating interactive web sites was deemed sufficient to confer

personal jurisdiction upon the Court).

Here, by advertising, offering for sale, selling, distributing and shipping retail products

directly to consumers across the world, including consumers located throughout the U.S. and

specifically in Pennsylvania, Defendants have committed tortious acts, as alleged herein, outside of Pennsylvania, thus directly giving rise to the claims asserted in the instant action. *See Odell Dec.,* ¶ 2 and Composite Exhibit 1; *see also Lorillard Tobacco Co. v. Applewood Party Store, Inc.,* 2006 WL 2925288 (E.D. Mich. 2006) (defendant's local sale of counterfeit "Newport" cigarettes had an economic effect on interstate commerce); *A1 Mortg. Corp. v. A1 Mortg. and Financial Services, LLC,* 2006 WL 1437744 (W.D. Pa. 2006) (while plaintiff's provision of services was "predominantly intrastate" in character, its mark was eligible for protection since, even absent an interstate sale, its advertising crossed state lines and, therefore, had entered interstate commerce), see later opinion, *A-1 Mortg. Corp. v. Day One Mortg., LLC,* 2007 WL 30317 (W.D. Pa. 2007) (court awarded permanent injunctive relief in its award of summary judgment to plaintiff).

Here, the injury clearly occurred within Pennsylvania, as Defendants' Infringing Listings, resulted in consumers throughout the U.S., and specifically in Pennsylvania, purchasing Infringing Products. *See Odell Dec.,* ¶ 2 and Composite Exhibit 1. As a direct result of Defendants' infringing actions, Plaintiff has suffered harm in Pennsylvania through lost sales in Pennsylvania and lost Pennsylvania consumers. *See Smeaton Dec.,* ¶¶ 27 - 30.

Accordingly, this Court has personal jurisdiction over Defendants who have intentionally availed themselves of the opportunity to do business in Pennsylvania, and specifically in Allegheny County, Pennsylvania, through their fully interactive web sites, as well as yet undiscovered online marketplaces, to offer for sale and/or sell Infringing Products. The identified Defendants merely use fanciful and made-up store names or seller ids without complete addresses, contact information, phones numbers and the like. *See Ference Dec.,* ¶¶ 6 - 7; Defendants used and continue to advertise, market, promote, offer for sale, sell, distribute and/or

import Infringing Products to Pennsylvania and/or potential customers, including in Allegheny County, Pennsylvania. *See Smeaton Dec.* ¶¶ 28 - 30.

Here, the fact that Defendants have chosen to open their respective User Accounts for the purpose of selling Infringing Products through their Merchant Storefronts, as well as any and all as yet undiscovered online marketplace platforms, alone supports a finding that Defendants have intentionally used these marketplace platforms, "as a means for establishing regular business with a remote forum." *EnviroCare Techs, LLC v. Simanovsky, No. 11-CV-3458, 2012* U.S. Dist. *LEXIS 78088, at \*10 (E.D.N.Y. June 4, 2012)* (quoting *Boschetto v. Hansing,* 539 F.3d 1011, 1019 (9th Cir. 2008); *see also Lifeguard Licensing Corp.,* 2016 U.S. Dist.. LEXIS 89149, at \*8 and *EnviroCare Techs., LLC,* 2012 U.S. Dist. LEXIS 78088, at \*10. Courts have indeed found that "commercial sellers" on "well-known, national . . . website[s]" are in fact subject to personal jurisdiction, as these Defendants "must have been able to foresee the possibility of being hauled into court [in the present jurisdiction]." *Malcom v. Esposito,* 63 Va. Cir. 440, 446 (Cir. Ct. 2003); *see also EnviroCare Techs., LLC,* 2012 U.S. Dist.. LEXIS 78088, at \*12.

Whether a Defendant physically shipped Infringing Products into Pennsylvania is not determinative of whether personal jurisdiction exists, as courts in this Circuit examine a given defendant's online interactions with consumers in considering whether a particular defendant has transacted business in the forum state. *See Odell Dec.* ¶ 2. *See Zippo Mfg. Co.,* 952 F. Supp. at 1119; *Rolex Watch, U.S.A., Inc. v. Pharel*, 09 CV 4810 (RRM) (ALC), 2011 U.S. Dist. LEXIS 32249, at 6 (E.D.N.Y. Mar. 11, 2011) (finding personal jurisdiction over defendant, a resident of South Carolina, because he transacted business in New York by monitoring and responding to inquiries for counterfeit watches through websites accessible in New York). Plaintiff and Plaintiff's counsel have viewed Defendant's Infringing Products via their online User Accounts

- 20 -

and Merchant Storefronts, physically received and examined them, and Defendant's paid

Pennsylvania sales tax for the privilege of intentionally shipping the products into this district.

*See Odell Dec.*, ¶ 2 and *Smeaton Dec.* ¶¶ 27 - 30.[9]  Thus, Defendants' sophisticated commercial

---

[9]    *See Skrodzki v. Marcello,* 810 F. Supp. 2d 501, 512-13 (E.D.N.Y. 2011), and that, "[t]he offering for sale of even one copy of an allegedly infringing item, even if no sale results, is sufficient to give personal jurisdiction over the alleged infringer under N.Y. CPLR § 302.  *Cartier v. Seah LLC,* 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009).  Moreover, under Second Circuit case law, when analyzing personal jurisdiction in the Internet context, "traditional statutory and constitutional principles remain the touchstone of the inquiry," and while a website's framework, "may be useful" for analyzing personal jurisdiction 'insofar as it helps to decide whether the defendant 'transacts any business' in New York,'" ... "it does not amount to a separate framework for analyzing internet-based jurisdiction." *Best Van Lines, Inc.,* 490 F.3d at 252 (quoting *Best Van Lines, Inc. v. Walker,* No. 03- Civ. 6585 (GEL), 2004 U.S. Dist. LEXIS 7830, at *9 (S.D.N.Y. May 4, 2004)) (citing *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119 (W.D. Pa. 1997)). Sister circuits similarly rely on the traditional principles guiding the personal jurisdiction analysis when analyzing the same in the Internet context, namely the Eleventh Circuit (see, *e.g., Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1219-1224 (11th Cir. 2011) (criticizing the over-reliance on the sliding scale of interactivity analysis and instead applying a traditional personal jurisdiction analysis in an Internet case where the website was fully interactive); *see also Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1356-58 (11th Cir. 2013) (applying the traditional purposeful availment test in a case where defendant's fully interactive website was accessible in Florida, and was selling and distributing infringing goods through his website to Florida consumers), and the Seventh Circuit (see, e.g., *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 803 (7th Cir. 2010) (addressing the impact of a defendant's online activities upon the personal jurisdiction analysis and reiterating that, as with offline activities, the Court must focus upon the deliberate actions of the defendant within the State)), are instructive in considering whether the exercise of jurisdiction over Defendants in the instant action is appropriate under similar, if not identical facts. For example, courts in the Eleventh Circuit have routinely granted temporary restraining orders, preliminary injunctions and default judgments in online counterfeiting cases where no purchases of the counterfeit/infringing products were made, but the plaintiffs alleged and confirmed that each of the foreign defendants operated fully interactive commercial websites through which they advertised, promoted, offered for sale, and sold products bearing what the plaintiff determined to be counterfeit and infringing trademarks into the U.S., and in interstate commerce, in violation of the plaintiff's rights. *See, e.g., Malletier,* 2016 U.S. Dist. LEXIS 93072, at *3; *Mycoskie v. 2016tomsshoessaleoutlet.us,* No. 16-61523- CIV-GAYLES, 2016 U.S. Dist. LEXIS 95963, at *4 (S.D. Fla. July 22, 2016); *Adidas AG v. 007adidasuk.com,* No. 15-61275-CIV-GAYLES, 2015 U.S. Dist. LEXIS 179020, at *8 (S.D. Fla. 2015); *Louis Vuitton Malletier, S.A. v. 2015shoplvhandbag.com,* No. 15-62531-CIV-BLOOM, 2015 U.S. Dist. LEXIS 181477, at *11 (S.D. Fla. Dec. 18, 2015); *Abercrombie & Fitch Trading Co. v. Abercrombieclassic.com,* No. 15-62579-CIV-CMA, 2015 U.S. Dist. LEXIS 179041, at *5 (S.D. Fla. Dec. 11, 2015); *Gucci Am., Inc. v. Gucc-Outlet.com,* No. 15-62165-CIV-DPG, 2015 U.S. Dist. LEXIS 181483, at *3-4 (S.D. Fla. Nov. 9, 2015); *Chanel, Inc. v. 2012leboyhandbag.com,* No. 15-61986-CIV-WJZ, 2015 U.S. Dist. LEXIS 177989, at *3 (S.D. Fla. Oct. 13, 2015); *Abercrombie & Fitch Trading Co. v. Abercrombieandfitchdk.com,* No. 15-62068-CIV-BB, 2015 U.S. Dist. LEXIS 179117, at *5 (S.D. Fla. Oct. 7, 2015); *Malletier v. 2015louisvuittons.com,* No. 15-61973-CIV-BB, 2015 U.S. Dist. LEXIS 181452, at *11 (S.D. Fla. Sep. 29, 2015); *Chanel, Inc. v. Chanelsstore.com,* No. 15-61156-CIV- CMA, 2015 U.S. Dist. LEXIS 179101, at *5 (S.D. Fla. August 31, 2015). Similarly, the Seventh Circuit, in *Illinois v. Hemi Group LLC,* held that it had personal jurisdiction over the foreign defendants because they operated a nationwide business model where they intentionally created and operated several commercial, interactive websites to offer products for sale and allow online orders from Illinois residents, specifically noting that the "[defendants] maintained commercial websites through which customers could purchase cigarettes, calculate their shipping charges using their zip codes, and create accounts," and as a result, the "[defendants] stood ready and willing to do business with Illinois residents." *Illinois v. Hemi Group LLC,* 622 F.3d 754, 756 (7th Cir. 2010); *see also Monster Energy Co. v. Chen Wensheng,* 136 F. Supp. 3d 897, 906 (N.D. Ill. 2015)

operations, specifically including their offering for sale and/or selling of Infringing Products

through their highly interactive User Accounts and Merchant Storefronts, along with Defendants'

own representations on their Merchant Storefronts that they ship Infringing Products to the U.S.,

including to Pennsylvania addresses, unequivocally establishes that Defendants conduct business

within this District and the claims in this suit arise from Defendants' business dealings and

transactions with consumers in Pennsylvania. *See Zippo Mfg. Co. v. Zippo DOT Com*, 952 F.

Supp. 1119 (W.D. Pa. 1997).

## 2.  Exercising Personal Jurisdiction Over Defendants Comports With Due Process

The assertion of personal jurisdiction over Defendants also comports with the Due

Process Clause of the U.S. Constitution, as Defendants have "certain minimum contacts ... such

that maintenance of th[is] suit does not offend 'traditional notions of fair play and substantial

justice.'" *Calder v. Jones,* 465 U.S. 783, 788 (1984) (quoting *Milliken v. Meyer,* 311 U.S. 457

(1940)).

This Court may exercise personal jurisdiction when the plaintiff can establish that the cause

of action at issue arose from the defendant's activities within the forum state. *Helicopteros*

*Nacionales de Colombia, S.A. v. Hall,* 466 U.S. at 414 (1984). The plaintiff initially bears the burden

of proving a *prima facie* case, by a preponderance of the evidence, that the defendant's contacts with

the forum state meet the "minimum contacts" test. *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d

141, 146 (3d Cir. 1992). *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (U.S. 1985); *see*

---

(holding that defendants had "expressly aimed" their actions at the state, making specific personal jurisdiction proper even without a sale made to an Illinois resident, because in addition to intentionally creating and operating commercial, fully interactive AliExpress.com Internet stores through which consumers can purchase counterfeit Monster Energy Products, the defendants had affirmatively selected a shipping option to ship counterfeit products to the U.S., including to Illinois residents, and the plaintiffs' exhibits showed that the named defendants had specifically offered to sell particular counterfeit products to individuals with Illinois shipping addresses and provided PayPal account number for the buyer to make the payment for the item, and as a result, the defendants expressly elected to do business with the residents of all fifty states, including Illinois).

*Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 243 (2d. Cir. 2007) ("In the language of minimum contacts, when the defendants committed 'their intentional, and allegedly tortious, actions expressly aimed at California, they must have reasonably anticipated being hailed into court there.'") (internal quotations omitted); Here, the Defendants intentionally directed their activity towards the Pennsylvania market, thereby purposefully availing themselves of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *See Smeaton Dec*. ¶ 29. *See Odell Dec*. ¶ 2 and Composite Exhibit 1. Thus, the Plaintiff has made out a *prima facie* case, by a preponderance of the evidence that Defendants' contacts with the Pennsylvania meet the "minimum contacts" test.

Pennsylvania's long-arm statute provides that jurisdiction may be exercised "to the fullest extent allowed under the Constitution of the U.S. and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the U.S." 42 Pa. C. S. A. § 5322(b) (1981). Thus, because Pennsylvania's long-arm statute is coextensive with the dictates of the U.S. Constitution, the traditional two-step analysis is collapsed into a single inquiry: "whether the exercise of personal jurisdiction would conform with the Due Process Clause." *Poole v. Sasson,* 122 F. Supp. 2d 556, 558 (E. D. Pa. 2000); *see also Renner v. Lanard Toys Limited,* 33 F.3d 277, 279 (3d Cir. 1994) ("[T]his court's inquiry is solely whether the exercise of personal jurisdiction over the defendant would be constitutional."). Due process requires that the defendant have "minimum contacts" with the forum state. *Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir. 2001) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Remick,* 238 F.3d at 255 (quoting

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

Here, each of the Defendants has used an interactive web site for offering for sale and selling infringing products.  This Court has personal jurisdiction over each Defendant based upon internet-based sales activity into the US and this judicial district. The seminal opinion in this regard is *Zippo Mfg. Co*, 952 F. Supp. at 1119.  In *Zippo,* this court established a "sliding scale" analytical framework for internet-based personal jurisdiction cases based upon the "level of interactivity and commercial nature of the exchange of information that occurs on the Web site." 952 F. Supp. at 1124. The court explained:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well-developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id*.

The Third Circuit endorsed this general framework in *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446 (3rd Cir. 2003), but clarified that the plaintiff must also provide evidence of "the intentional nature of the defendant's conduct vis-a-vis the forum state." *Id.* at 452. In other words, "there must be some evidence that the defendant 'purposefully availed' itself of

conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts." *Id.* at 454. *See also Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 556 (3d Cir. 1993) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985))

In the wake of *Zippo* and *Toys "R" Us,* most courts have concluded that a defendant that intentionally conducts business transactions over an interactive website with customers in the forum state has purposefully directed itself of the laws of that forum.  In *Square D,* for example, the defendant's website contained links providing "a [telephone] number and e-mail address for the purpose of placing an order," information concerning product warranties, and a link that permitted a potential purchaser to "submit a form specifying the manufacturer, catalog number, and quantity of the product to be purchased, as well as the purchaser's company name, phone, fax and e-mail." *Square D Co. v. Scott Elec. Co.,* No. 06-459, 2008 WL 4462298, at *3 (W.D. Pa. Sept. 30, 2008). There was also a space on the form for additional "comments" concerning a proposed transaction.  *Id.* Although a customer could not directly order products using only the website, customers could "commence the ordering process" by "provid[ing] much of the same type of information that would be required for an order (e.g., manufacturer, quantity, catalog number, contact information)." *Id.* at *8, Indeed, the court noted that the website had produced "twenty-four (24) Pennsylvania customers and a total of $10,238.25 in sales" for the defendant. *Id.* at *9.  Although this amount represented "less than 1%" of the defendant's total sales, the Court concluded that it was sufficient to establish personal jurisdiction in the state of Pennsylvania.  *Id.* As explained by the court:

> The website was more than a mere advertisement; rather, it was an interactive site that allowed customers to take the first step in an ordering process that could be completed with one phone call or e-mail. By knowingly selling and shipping a product that is at issue in this litigation

- 25 -

to a customer [in] Pennsylvania, the Moving Defendants purposefully availed themselves of the laws and privileges of this forum. *Id.* at *11.

*Willyoung v. Colorado Custom Hardware, Inc.* is similarly instructive. *Willyoung v. Colorado Custom Hardware, Inc.,* 2009 WL 3183061 (W. D. Pa. Sept. 30, 2009). In *Willyoung,* the website at issue allowed visitors to "request a catalog by supplying certain information according to the website prompts, contact the company directly by e-mail, subscribe to [defendant's] on-line newsletter, and search, view, and select products for on-line purchase via a 'shopping cart.'" *Id.* at *12. Over a two-year period, Pennsylvania customers had utilized the website to place 211 orders amounting to $41,566.05 in sales. *Id.* Based on the foregoing, the court concluded that the defendant had purposefully availed itself of the privilege of conducting business in the state of Pennsylvania by "intentionally and repeatedly engag[ing] in internet-based sales of its products to Pennsylvania residents via its website." *Id.* at *13. Other courts have frequently reached the same conclusion. *See also Gentex Corp. v. Abbott,* 978 F. Supp. 2d 391, 398 (M.D. Pa. 2013) (finding personal jurisdiction where non-resident defendant's interactive website was used by Pennsylvania residents to place at least 17 orders over a three-year period); *TRE Services, Inc. v. U .S. Bellows, Inc.,* 2012 WL 2872830, *4–5 (W.D. Pa. July 12, 2012) (finding personal jurisdiction based on defendant's commercially interactive website that accepted orders from Pennsylvania); *Gourmet Video, Inc. v. Alpha Blue Archives, Inc.,* 2008 WL 4755350, *3 (D.N.J. Oct. 29, 2008) ("Personal jurisdiction is properly exercised over a defendant using the Internet to conduct business in the forum state."); *L'Athene, Inc. v. EarthSpring LLC,* 570 F. Supp. 588, 593–94 (D. Del. 2008) (defendants purposely availed themselves of doing business in state of Delaware where they operated a website accessible in Delaware, received orders and payments from customers in Delaware, and shipped their products to Delaware). Thus, the Defendants in this case have all offered interactive web sites for viewing,

ordering, and paying for the Counterfeit Goods and have purposefully availed themselves of the opportunity to conduct business with Pennsylvania citizens with their respective Merchant Storefronts.

Further there is sufficient evidence to establish the type of "intentional interaction with the forum state" required by the Third Circuit for the exercise of personal jurisdiction. *See Toys "R" Us,* 318 F.3d at 451–52 (requiring evidence that the defendant has "intentionally interact[ed] with the forum state). *See, e.g., Square D.,* 2008 WL 4462298 at *9 n. 10 (concluding that an amount equal to less than 1% of overall sales was sufficient to establish minimum contacts); *Zippo,* 952 F.Supp. at 1127 (exercising personal jurisdiction despite that only 2% of the defendant's customers were Pennsylvania residents); *L'Athene,* 570 F. Supp. 2d at 593–94 (exercising personal jurisdiction despite that sales to the forum state constituted less than 1% of defendants' total annual sales based on units sold). As noted in *Zippo,* "[t]he Supreme Court has made clear that even a single contact can be sufficient." *Zippo,* 952 F. Supp. at 1127 (citing *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L. Ed. 2d 223 (1957)); *see also Square D.,* 2008 WL 4462298 at *9 n. 10 (noting that, while an argument based on a minute number of overall sales might be "valid in the context of general jurisdiction, in the context of specific jurisdiction it is evidence that supports Plaintiff's argument that the Moving Defendants purposefully availed themselves of the laws and privileges of Pennsylvania by selling and shipping products to residents of the Commonwealth.").

Since the Defendants have purposefully availed themselves of the opportunity to conduct business with Pennsylvania citizens through their interactive websites, including collecting and paying Pennsylvania sales tax, the Court must next consider whether this litigation "arise[s] out of and relate[s] to" those sales. *D'Jamoos,* 566 F.3d at 102. Here, the lawsuit directly arises out

of the Defendants' respective sales of Infringing Products to Pennsylvania residents through their interactive websites. *See, e.g., Willyoung,* 2009 WL 3183061 at *13 ("The second part of our jurisdictional inquiry is also easily satisfied because this litigation arises out of and relates to BGM's use of its web site to conduct internet-based sales of its merchandise to Pennsylvania residents.") (internal quotation marks omitted); *Square D.,* 2008 WL 4462298 at *11 (finding the relatedness requirement satisfied where "at least one" of the products sold to a Pennsylvania resident by the defendant was from the allegedly infringing line of products at issue in the litigation). All of the Infringing Products which are the subject of this lawsuit were sold into Pennsylvania. Therefore, the "arise[s] out of and relate[s] to" test is easily met here.

Finally, the Court must consider whether the exercise of jurisdiction would otherwise comport with "traditional notions of fair play and substantial justice." *O'Connor v Sandy Lane Hotel Co., Ltd,* 496 F.3d 312, 316 (3rd Cir. 2007)(quoting *Int'l Shoe,* 326 U.S. at 316). Because the existence of minimum contacts makes jurisdiction presumptively constitutional, the defendant at step three of the specific-jurisdiction-inquiry process "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quoting *Burger King,* 471 U.S. at 477). The burden upon the defendant at this stage of the inquiry is considerable. *See Pennzoil Prods. Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 207 (3rd Cir. 1998) (noting that if minimum contacts are present, then jurisdiction will be unreasonable only in "rare cases"); *Grand Entm't Group, Ltd., v. Star Media Sales, Inc.,* 988 F.2d 476, 483 (3rd Cir.1993) ("The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy."). As the Third Circuit has observed:

> The Supreme Court has identified several factors that courts should
> consider when balancing jurisdictional reasonableness. Among them are
> the burden on the defendant, the forum State's interest in adjudicating the
> dispute, the plaintiff's interest in obtaining convenient and effective relief,

the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies, and [t]he procedural and substantive interests of other nations.

*O'Connor,* 496 F.3d at 324 (internal quotations omitted).

Here, the Plaintiff's interest in obtaining convenient and effective relief in the forum of its choice and Pennsylvania's interest in protecting its citizens from the sale of infringing goods within its borders are factors that weigh heavily in finding personal jurisdiction of the Defendants. *See Square D*, 2008 WL 4462298 at *12 (concluding that jurisdiction should be exercised in Pennsylvania "because the counterfeit goods in question potentially pose a danger to the public and were sold to residents of this Commonwealth."); *Zippo,* 952 F.Supp. at 1127 (noting Pennsylvania's strong interest in resolving trademark infringement claims implicating its citizens and giving "due regard to the Plaintiff's choice to seek relief in Pennsylvania"). As the court noted in *Zippo,* "[i]f [the defendant] had not wanted to be amenable to jurisdiction in Pennsylvania, the solution would have been simple—it could have chosen not to sell its [products] to Pennsylvania residents." *Id.* at 1126–27.

Accordingly, Plaintiff respectfully submits that this Court has personal jurisdiction over Defendants in this action.

### B.   PLAINTIFF IS ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

An *ex parte* order is essential in this case to prevent immediate and irreparable injury to Plaintiff. Rule 65(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit . . . that immediate and irreparable injury, loss or damage will result to the applicant before the

adverse party or that party's attorney can be heard in opposition." Fed. R. Civ. P. 65(b).  Further, this court has inherent power to grant an *ex parte* restraining order. *See Link v. Wabush R. R.*, 370 U.S. 626, 630 – 31 (1962) ("Inherent powers are governed by the 'control necessarily vested in courts to manage their own affairs as to achieve the orderly and expeditious disposition of cases.'(citation omitted)"). Indeed, the Supreme Court has indicated that federal courts have broad inherent powers to accomplish justice. *See Chambers v. Nasco, Inc*., 501 U.S. 32, 44 (1991). Moreover, under the Copyright Act, 17 U.S.C. § 502 (a), any court with jurisdiction may grant a temporary and final injunction to prevent or restrain infringement of a copyright.

Defendants herein fraudulently promote, advertise, sell, and offer for sale goods infringing Plaintiff's Work, via their fully interactive, commercial Internet e-commerce stores using the Seller IDs.  Specifically, Defendants wrongfully use infringements of Plaintiff's Work to increase traffic to their illegal operations.  By their actions, Defendants are passing off Defendants' Infringing Products as Plaintiff's genuine products and creating a false association in the minds of consumers between Defendants and Plaintiff.  The entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from their wrongful use of Plaintiff's intellectual property at issue and preserve the status quo until such time as a hearing can be held.  *See Dell Inc. v. BelgiumDomains, LLC*, Case No. 07-22674 2007 WL 6862341, at *2 (S.D Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants.")

Absent a temporary restraining order without notice, Defendants can and, based upon Plaintiff's counsel's past experience, will significantly alter the status quo before the Court can determine the parties' respective rights.  In particular, the Seller IDs at issue are under the

- 30 -

Defendants' complete control.  Thus, Defendants have the ability to modify e-commerce store data and content, redirect consumer traffic to other seller identification names, change payment accounts, and transfer assets. *Ference Dec.*, ¶ 6.  Such modifications can happen in a short period of time after Defendants are provided with notice of this action. *Id.* Defendants can also easily electronically transfer and secret the funds sought to be restrained if they obtain advance notice of Plaintiff's Application for a Temporary Restraining Order and thereby thwart the Court's ability to grant meaningful relief and can completely erase the status quo. *Id*. As Defendants engage in illegal infringing activities, Plaintiff has no reason to believe Defendants will make their assets available for recovery pursuant to an account of profits or will adhere to the authority of this Court any more than they have adhered to the Copyright Act.

"Courts in other circuits dealing with foreign on-line counterfeiters and infringers have not hesitated to exercise [their] authority [to grant an *ex parte* order] in infringement cases in which there is a danger the defendants will destroy, conceal, or transfer counterfeit goods." *Moose Toys Pty, Ltd. v. Thriftway Hylan Blvd. Drug Corp.,* No. 15- cv-4483-DLI/MDG, 2015 U.S. Dist. LEXIS 105912, at *8 (E.D.N.Y. Aug. 6, 2015).  Moreover, federal courts have long recognized that civil actions against counterfeiters - whose very business is built around the deliberate misappropriation of rights and property belonging to others - present special challenges that justify proceeding on an *ex parte* basis.  *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"); *Time Warner Entertainment Co., L.P.* v. *Does*, 876 F. Supp. 407, 410-11 (E.D.N.Y. 1994).

- 31 -

This Court should prevent an injustice from occurring by issuing an *ex parte* temporary restraining order which precludes Defendants from continuing to display their infringing products via the Internet e-commerce stores or modifying or deleting any related content or data. Only such an order will prevent ongoing irreparable harm and maintain the status quo.   The immediate and irreparable harm to Plaintiff's business and reputation -- as well as to the goodwill associated with Plaintiff's Work -- in denying its Application for an *ex parte* temporary restraining order, greatly outweighs the harm to Defendants' interests in continuing to offer for sale and sell Infringing Products.  Many courts have granted an *ex parte* temporary restraining order in situations where the harm to plaintiffs far outweighed the harm to defendants.**10**

The Third Circuit holds that a district court must evaluate the following four factors in deciding whether preliminary injunctive relief is appropriately entered: (1) the extent to which the moving party will suffer irreparable harm without injunctive relief; (2) the likelihood that the moving party will succeed on the merits; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest. *AT&T Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994).  Courts routinely grant preliminary injunctive relief when a party's intellectual property rights are threatened by the sale of counterfeit versions of its products based on a copyright holder's inability "to control the quality of the goods manufactured and sold under the holder's trademark." *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986). As shown below, Plaintiff readily meets the criteria for obtaining a temporary restraining order and preliminary injunction. *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.,* 426 F.3d 532, 537 (2d Cir. 2005) (quoting *Federal Express Corp. v. Federal Espresso, Inc.,* 201 F.3d 168, 173 (2d Cir. 2000)). The "standards which govern

---

10    *See, supra* fn. 5, 6, and 7 (collecting cases granted *ex parte* temporary restraining order in situations where harm to plaintiffs far outweighed harm to defendants.).

consideration of an application for a temporary restraining order are the same standards as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.,* 965 F.2d 1224, 1228 (2d Cir. 1992). *See also Hall v. Johnson*, 599 F.Supp.2d 1, 6 n. 2 (D.D.C. 2009); *accord Sterling Commercial Credit-Michigan, LLC v. Phoenix Industries I, LLC*, 762 F.Supp.2d 8 (D.D.C. 2011); *Coalition for Parity, Inc. v. Sebelius*, 709 F.Supp.2d 6 (D.D.C. 2010). As detailed below, Plaintiff has met the standard for a preliminary injunction, and accordingly, a temporary restraining order should also issue against Defendants.

1.    **Plaintiff Will Suffer Irreparable Harm in The Absence of an Injunction Leaving It With No Adequate Remedy at Law**

Defendants' infringing activities must be stopped immediately in order to prevent any further harm to Plaintiff. Not only does Plaintiff stand to suffer lost profits as a result of Defendants' competing substandard Infringing Products, but it deprives Plaintiff of its exclusive rights under the Copyright Act, it destroys the inherent value of Plaintiff's Work, it impairs Plaintiff's reputation for providing quality products, it dilutes Plaintiff's brand and goodwill and it negatively affects Plaintiff's relationships with its current customers and its ability to attract new customers. *See Smeaton Dec.,* ¶¶ 29 - 31.

"In the context of copyright infringement cases, the harm to the plaintiff's property interest has often been characterized as irreparable in light of possible market confusion." *CJ Prods. LLC v. Concord Toys Int'l*, No. 10-CV-5712 (ENV)(JO), 2011 U.S. Dist. LEXIS 4983, at *15 (E.D.N.Y. Jan. 19, 2011) (citing *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96-97 (2d Cir. 2002)). Courts generally issue injunctions in this context because "proving 'the loss of sales due to infringement is . . . notoriously difficult.'" *CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 145 (E.D.N.Y. 2011) (citation omitted)).

- 33 -

Also, because Defendants' substandard Infringing Products are virtually indistinguishable from Plaintiff's genuine products, not only could any injury that results from use of Defendants' substandard Infringing Products be attributed to Plaintiff *(See Smeaton Dec.*, ¶ 20), thereby causing irreparable harm to Plaintiff in the form of unquantifiable lost sales, loss of goodwill and loss of control of its reputation with authorized licensees, retailers and consumers, but also Plaintiff potentially could be exposed to legal liability for any such injury, which is of particular importance given the nature of the genuine products.  *Id*.  Thus, this factor weighs heavily in Plaintiff's favor.

2.     **Plaintiff is Likely to Prevail on The Merits of Its Copyright Infringement Claims**

Plaintiff asserts one cause of action under 17 U.S.C. § 501(a). Plaintiff has established a likelihood of success on its cause of action for copyright infringement. To prove copyright infringement pursuant to 17 U.S.C. § 501, the plaintiff must demonstrate two elements: (1) ownership of a copyright and (2) copying by the defendant.  *Dam Things From Denmark v. Russ Berrie & Co*., 290 F.3d 548, 561 (3d Cir. 2002).  Plaintiff is the exclusive owner of U.S. Copyright Reg. No. VA-2-261-150 directed to Plaintiff's Alien Costume Sculpture.  A true and correct copy of which is attached as Complaint **Exhibit 3B.**  Defendants had actual notice of Plaintiff's exclusive rights in and to the copyrighted work in the Plaintiff's Work.

Without permission, Defendants knowingly and intentionally reproduced, copied, and displayed the Plaintiff's Work by manufacturing, distributing, displaying, offering for sale and/or selling Infringing Products which copy or are substantially similar to the Plaintiff's Work. *See Odell Dec*. **Composite Exhibit 1**.  Therefore, Defendants' display, distribution, and sale of the unauthorized copies infringe Plaintiff's exclusive rights to reproduce, prepare derivative works, distribute and display its copyrighted material under 17 U.S.C. § 106.

- 34 -

3.      **The Balance of Hardships Favors Plaintiff**

The balance of hardships unquestionably and overwhelmingly favors Plaintiff in this case. Here, as described above, Plaintiff has suffered, and will continue to suffer, irreparable harm to its business, the value, goodwill and reputation built up in and associated with the Plaintiff's Work and to its reputation as a result of Defendants' willful and knowing sales of substandard imitations of the Plaintiff's genuine product.  *See Smeaton Dec.,* ¶¶ 19 - 29.  In contrast, any harm to Defendants would only be the loss of Defendants' ability to continue to offer their Infringing Products for sale, or, in other words, the loss of the benefit of being allowed to continue to unfairly profit from their illegal and infringing activities. "Indeed, to the extent defendants 'elect[] to build a business on products found to infringe[,] [they] cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Windsurfing Intern, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986); *Broad. Music, Inc. v. Prana Hosp.,* Inc., 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) (quoting *Mint, Inc. v. Amad,* 2011 U.S. Dist.. LEXIS 49813, at *3 (S.D.N.Y. 2011) (internal quotation marks and citation omitted)); *see also Mitchell Group USA LLC*, No. 14-cv-5745-DLI/JO, 2014 U.S. Dist.. LEXIS 143001, at *6-7 (E.D.N.Y Feb. 17, 2014) (citing *Philip Morris USA Inc. v. 5 Bros. Grocery Corp.,* No. 13-cv-2451- DLI/SMG, 2014 U.S. Dist. LEXIS 112274 (E.D.N.Y. Aug. 5, 2014) ("Absent an injunction, there will be further erosion of plaintiff's goodwill and reputation. Defendants, on the other hand, will be called upon to do no more than refrain from what they have no right to do in the first place.")). Further, the Defendant's continuing infringing activities are causing irreparable harm to the Plaintiff's reputation and depriving Plaintiff of its exclusive rights to duplicate, reproduce and distribute its Work.

4.      **The Relief Sought Serves the Public Interest**

Defendants are directly defrauding the consuming public by palming off the Infringing

Products as Plaintiff's genuine goods.  The "public has an interest in not being deceived—in

being assured that the mark it associates with a product is not attached to goods of unknown

origin and quality."  Public interest can be defined a number of ways, but in a trademark case, it

is most often a synonym for the right of the public not to be deceived or confused.  2 *McCarthy,*

§ 30:21.  *See Bill Blass, Ltd. v. Saz Corp.,* 751 F.2d at 156 (there is a public interest in the

protection of the trademark and to avoid confusion in the public); *SK & F, Co. v. Premo*

*Pharmaceutical Laboratories,* 625 F.2d 1055, 1057 (3d Cir.1980) ("preventing deception of the

public is itself in the public interest").  *See also International Kennel Club v. Mighty Star, Inc.,*

846 F.2d at 1092 n. 8 ("[T]he relevant consideration is the consumer's interest in not being

deceived.")  Here, the public has an interest in being able to rely on the high quality of the

Plaintiff's genuine products using the Plaintiff's Work.  Since Defendants have willfully and

knowingly inserted substandard Infringing Products into the marketplace, the public would

benefit from a temporary restraining order and preliminary injunction halting any further sale

and distribution of Defendants' Infringing Products. *See Smeaton Dec.,* ¶¶ 23 - 31.

C.      **PLAINTIFF IS ENTITLED TO AN ORDER PREVENTING 1) THE**
        **FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING OF**
        **DEFENDANTS' MERCHANT STOREFRONTS**

1.  **Defendants' Assets Must be Frozen**

In addition, the Court should enter an order limiting the transfer of Defendants'

unlawfully gained assets.  Plaintiff has demonstrated above that they will likely succeed on the

merits of their claims.  As such, under 17 U.S.C. § 504(b), Plaintiff will be entitled to an

accounting and payment of the profits earned by Defendants throughout the course of their

unlawful scheme.  Furthermore, it is unlikely that Defendants possess the funds to satisfy any

potential judgment and Pennsylvania law also permits the prejudgment restraint sought by

Plaintiff.[11]  Due to the deceptive nature of Defendants' business, and Defendants' deliberate

violations of the Copyright Act, Plaintiff respectfully requests this Court grant additional *ex

parte* relief restraining the transfer of all monies held or received by Context Logic, PayPal,

Amazon, and AliPay or other financial institutions for the benefit of any one or more of the

Defendants.  *See, e.g., Balenciaga Am., Inc. v. Dollinger,* No. 10-cv-2912-LTS, 2010 U. S. Dist.

LEXIS 107733, at *22 (S.D.N.Y. Oct. 8, 2010) (citing *Wishnatzki &N athel, Inc. v. H.P. Island-

Wide, Inc.,* No. 00-cv-8051-JSM, 2000 U.S. Dist. LEXIS 15664, at *4 (S.D.N.Y. 2000)

("[W]here plaintiffs seek both equitable and legal relief in relation to specific funds, a court

retains it equitable power to freeze assets."); *Int'l Star Class Yacht Racing Ass'n v. Tommy

Hilfiger USA., Inc.,* 146 F.3d 66, 71-72 (2d Cir. 1998) ("A district court faced with a Lanham

Act violation possesses some degree of discretion in shaping [the] relief according to the

principles of equity and the individual circumstances of each case" within the parameters of

allowing an accounting for profits); *George Basch Co., Inc. v. Blue Coral, Inc.,* 968 F.2d 1532,

1537 (2d Cir. 1992); *Tiffany (NJ) LLC* v. *Forbse,* No. 11-cv-4976-NRB, 2012 U.S. Dist. LEXIS

72148, at *34 (S.D.N.Y. May 23, 2012); *Warner Bros. Entm't Inc. v. Doe,* No. 14-cv-3492-

KPF, 2014 U.S. Dist.. LEXIS 190098 (S.D.N.Y. May 29, 2014); and *Hoxworth v. Blinder,

Robinson & Co., Inc.*, 903 F.2d 186 (3d Cir. 1990) (district court has power to issue an

injunction in order to protect a future damages remedy; the satisfiability of a money judgment

can constitute irreparable injury).

---

[11]    To the extent, discover may later reveal that some of the Defendants be US-based as they have self-reported
and/or published on their various online storefronts, or otherwise, Pennsylvania provides for pre-judgment
restraint of assets to satisfy potential damages awarded through a final judgment.  *See* discussion and cases cited
on page 7, *supra*.

This Court has broad authority to grant such an order.  The Supreme Court has provided that district courts have the power to grant preliminary injunctions to prevent a defendant from transferring assets in cases where an equitable interest is claimed.  *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Funds, Inc.*, 527 U.S. 308 (1999).  The Third Circuit has additionally ruled that district courts have the power to grant preliminary injunctions to prevent a defendant from transferring assets in order to protect a future damages remedy.  *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (1990).  Moreover, almost every Circuit has interpreted Rule 65 of the Federal Rules of Civil Procedure to grant authority to restrain assets *pendent elite*.  *See Mason Tenders Dist. Council Pension Fund v. Messera*, 1997 WL 223077 (S.D.N.Y. May 7, 1997) (acknowledging that "[a]lmost all of the Circuit Courts have held that Rule 65 is available to freeze assets *pendent lite* under some set of circumstances").

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity.  *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).  In the years since *Marnatech*, many federal courts have granted the temporary restraint of an infringer's assets in cases similar to this one, including recently in actions against operators of 'rogue' websites selling infringing products to ensure the availability of an equitable accounting. *See, e.g., The North Face Apparel Corp. and PRL USA Holdings, Inc. v. Fujian Sharing, et al.*, Civil Action No. 10-Civ-1630 (AKH) (S.D.N.Y. March 2, 2010); *National Football League v. Chen Cheng, et al.*, No. 11-Civ-00344 (S.D.N.Y. January 19, 2011); *Tory Burch LLC v. Yong Sheng Intl Trade Co., Ltd.*, No. 10-Civ-9336 (S.D.N.Y. December 17, 2010).

Plaintiffs may obtain an order restraining Defendants' Assets by demonstrating a "likelihood of dissipation of the claimed assets, or other inability to recover money damages, if relief is not granted." *DatatechEnters. LLC v. FFMagnatLtd.,* No. 12-cv-04500-CRB, 2012 U.S. Dist. LEXIS 131711, at *12 (N.D. Cal. Sept. 14, 2012) (citing *Johnson v. Couturier,* 572 F.3d 1067, 1085 (9th Cir. 2009)). District courts have the "authority to freeze those assets which could [be] used to satisfy an equitable award of profits." *North Face Apparel Corp. v. TC Fashions, Inc.,* No. 05-cv-9083-RMB, 2006 U.S. Dist. LEXIS 14226, at *10 (S.D.N.Y. Mar. 30, 2006) (internal citation omitted). In doing so, a court "may exempt any particular assets from the freeze on the ground that they [are] not linked to the profits of allegedly illegal activity." *Id.* at *11. Yet, the onus is on "the party seeking relief [from any such asset freeze] to 'present documentary proof'" that its profits do not stem from such illegal activity. *Id.*

Under 17 U.S.C. § 504(b), a plaintiff in an action arising under the Copyright Act is entitled to recover a defendant's profits derived from the infringement and also the plaintiff's damages. Furthermore, in the Third Circuit, the inability of a defendant to satisfy a judgment for legal damages justifies a pre-judgment restraint of existing assets. *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (3d Cir. 1990) (concluding the unsatisfiability of a money judgment can constitute irreparable injury).

An asset freeze in the instant matter is unquestionably warranted because Defendants, who appear to be unknown individuals, that are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products to U.S. consumers solely via the Internet, and accepting payment for such Infringing Products in U.S. Dollars through Financial Institutions, thereby causing irreparable harm to Plaintiff in the form of lost sales, loss of goodwill and loss of control of its reputation

with licensees, retailers and consumers, and can, and most certainly have the incentive to, transfer and hide their ill-gotten funds if their assets are not frozen. *See Ference Dec.,* ¶ 6.

Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants.  Specifically, federal courts have held that where advance notice of an asset restraint is likely to cause a party to alienate the assets sought to be restrained, a temporary restraining order may be issued *ex parte.  See F.T. Int'l Ltd. v. Mason*, 2000 WL 1514881 *3 (E.D. Pa. 2000) (granting *ex parte* TRO restraining defendants' bank accounts upon finding that advance notice would likely have caused the defendants to secret or alienate funds); *CSC Holdings, Inc. v. Greenleaf Elec., Inc.*, 2000 WL 715601 (N.D. Ill. 2000) (granting *ex parte* TRO enjoining cable television pirates and restraining pirates' assets); *Dama S.P.A.* v. *Doe,* 2015 U.S. Dist. LEXIS 178076, at *4-6 (S.D.N.Y. June 12, 2015) (agreeing that, "Plaintiff's concerns regarding the likelihood of dissipating assets merit the extraordinary remedy of *ex parte* relief and that there is a strong likelihood that advance notice of the motion would cause Defendants to drain Financial Institution accounts, thereby depriving Plaintiff of the remedy it seeks") and *SEC v. Caledonian Bank Ltd.,* 317 F.R.D. 358 (S.D.N.Y. 2016) (granting plaintiff's request for an *ex parte* asset freeze based on plaintiff's assertion that Defendants were foreign entities, and therefore could easily move assets out of bank or brokerage accounts at a moment's notice).**[12]**

In this case, Defendants' blatant violations of the Copyright Act warrant an *ex parte* order restraining the transfer of their ill-gotten assets.  Moreover, as Defendants' business are conducted anonymously over the Internet, Plaintiff has additional cause for *ex parte*  relief, as Defendants may easily secret or transfer their assets with the Court's or Plaintiff's knowledge.

---

[12]    See also *supra fn. 5*

### 2. Defendants' User Accounts and Merchant Storefronts Must be Frozen

A temporary restraining order which, in part, restrains and enjoins the Third Party Service Provider(s), as well as any and all as yet undiscovered online marketplace platforms, from providing services to Defendants' User Accounts and Merchant Storefronts is warranted and necessary because the continued offering for sale and/or sale of the Infringing Products by Defendants on their Merchant Storefronts through their User Accounts will result in immediate and irreparable injury to Plaintiff, as described above. *See Gucci Am., Inc. v. Weixing Li,* 768 F.3d 122, 126 (2d Cir. 2014) (Hon. Richard J. Sullivan entered a temporary restraining order, which, in part, enjoined the sale of counterfeit goods on the Internet) and *AW Licensing, LLC v. Bao,* No. 15-cv-1373, 2015 U.S. Dist.. LEXIS 177101, at *3 (S.D.N.Y. Apr. 1, 2015) (Hon. Katherine B. Forrest entered a temporary restraining order which was subsequently converted into a preliminary injunction, which, in part, disabled the defendants' websites, which were their means of distributing, offering for sale and selling counterfeit products.).[13]

One reason why courts have ordered this relief is the ease with which a Merchant Storefront may be set up. For example, a defendant who knowingly sells Infringing Products will likely try and set up another Merchant Storefront to keep selling when the current Merchant Storefront stops working. *See Ference Dec.*, ¶ 6. This brings into play a balancing of the hardship to Defendants against the hardship to Plaintiff if the relief is not granted. In the present case, the hardship to Plaintiff outweighs any hardship to Defendants. The proposed Order does not block any of the enjoined Defendants from setting up another Merchant Storefront to sell non-Infringing Products. The proposed Order merely blocks any goodwill associated with the

---

[13]   See *id.*

Merchant Storefront which sold Infringing Products; the Defendants are free to set up a new Merchant Storefront that does not sell Infringing Products.

Blocking the good will associated with the Merchant Storefront helps prevent the situation with the defendants where the Infringing Product listing has been taken down but if someone (e.g., a repeat buyer) contacts a Defendant at the Merchant Storefront using the messaging system provided by the online marketplace asking for the Infringing Product it will be made available by a Defendant. *Id*. The only way to preclude this type of harm to Plaintiff is to freeze the Defendants' Merchant Storefronts.

A freezing of Defendants' Merchant Storefronts also acts to provide immediate notice of the present action to Defendants. Indeed, a number of cases have required that the domain names on which a defendant's storefront operates be turned over to the plaintiff and pointed to a webpage providing notice of the lawsuit against the defendant. *Iron Maiden Holdings Ltd. v. The P'ships & Unicorporated Assns. Identified on Schedule "A"*, No. 18-CV-522 (N.D. Ill. Feb. 1, 2018) ("Plaintiff may provide notice of these proceedings to Defendants, including notice of the preliminary injunction hearing and service of process pursuant to Fed.R.Civ.P. 4(f)(3), by electronically publishing a link to the Complaint, this Order and other relevant document on a website to which the Defendant Domain Names which are transferred to Plaintiff's control will redirect"). Thus, the freezing of Defendants' Merchant Storefronts is also a manner of ensuring that Defendants receive notice of the present action.

### D. PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY

Additionally, Plaintiff respectfully requests that the Court order expedited discovery from Defendants, Financial Institutions and the Third Party Service Provider regarding the scope and

extent of Defendants' infringing activities, as well as Defendants' account details and other information relating to Defendants' Financial Accounts, Assets and/or any and all User Accounts and or Financial Accounts with the Third Party Service Provider, including, without limitation any and all websites, any and all accounts with online marketplace platforms, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all other persons in active concert with any of them ("User Accounts"), and any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in products, including Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("Merchant Storefront(s)") including, without limitation, those owned and operated, directly or indirectly, by the Third Party Service Provider and the Financial Institutions.

District courts have broad power to require early document production and to permit expedited discovery. *See* Fed. R. Civ. P. 30(b), 34(b). Expedited discovery may be granted when the party seeking it demonstrates: (1) irreparable injury; (2) some likelihood of success on the merits; (3) some connection between expedited discovery and the avoidance of irreparable injury; and (4) some evidence that the injury which will result without expedited discovery looms greater than the injury that defendant will suffer if expedited discovery is granted. *See, e.g., Advanced Portfolio Technologies, Inc. v. Advanced Portfolio Technologies Ltd.*, 1994 U.S. Dist. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994).

- 43 -

Generally, a party may not seek discovery prior to a Rule 26(f) conference unless authorized by a court order. *See* Fed. R. Civ. P. 26(d)(1). While in the past, Courts have often applied a four-factor test to determine when expedited discovery may be granted,[14] they now apply a more flexible "good cause" test to examine "the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash v. Bank Al-Madina,* 233 F.R.D. 325, 326 (S.D.N.Y. 2005) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor,* 194 F.R.D. 618, 624 (N.D. 1ll. 2000)).[15]  Regardless of which test is applied, Plaintiff has established that it is entitled to the expedited discovery requested. Plaintiff has demonstrated both irreparable injury and its probability of success on the merits above, and taking into account the covert nature of Defendants, their business operations and the fact that they appear to be foreign individuals or companies who have both the incentive and the capability to hide or destroy relevant business records and other discoverable information and documentation upon hearing of this action, Plaintiff respectfully submits that there is good cause for this Court to grant Plaintiff the expedited discovery requested herein because it will prevent further injury to Plaintiff and assist Plaintiff in pursuing its claims against Defendants and in recovering the damages to which it is entitled.  *See Ayyash,* 233 F.R.D., at 327.

---

[14]   ". . . the plaintiff must demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.,* 1994 U.S. Dist. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994).

[15]   See, *e.g., Malibu Media, LLC v. Doe*, 2016 U.S. Dist. LEXIS 64656, at *4 (S.D.N.Y. May 16, 2016); *Malibu Media, LLC v. Doe,* 2015 U.S. Dist. LEXIS 87751, at *2-3 (S.D.N.Y. July 6, 2015); *Milk Studios, LLC v. Samsung Elecs. Co.,* 2015 U.S. Dist. LEXIS 38710, at *4-5 (S.D.N.Y. Mar. 25, 2015); *Admarketplace, Inc. v. Tee Support, Inc.,* No., 2013 U.S. Dist. LEXIS 129749, at *3-4 (S.D.N.Y. Sept. 11, 2013); *Dig. Sin, Inc. v. Does 1-176,* 279 F.R.D. 239, 241 (S.D.N.Y. 2012); and *Stern v. Cosby,* 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (agreeing with the *Ayyash* Court that the more flexible approach is the better approach).

Despite the likelihood of success of Plaintiff's claims and the injury it has and continues to endure, if this Court were to deny expedited discovery, Plaintiff may lose the opportunity to effectively pursue its claims against Defendants because there are several aspects of Defendants' infringing activities that Plaintiff is not yet able to confirm, including: 1) the true identities of Defendants, 2) the full scope of Defendants' infringing activities, 3) the source or location of Defendants' inventory of Infringing Products and/or 4) where the proceeds from Defendants' infringing activities have gone.  *See Admarketplace, Inc. v. Tee Support, Inc.,* No. 13-cv-5635-LGS, 2013 U.S. Dist. LEXIS 129749, at *5 (S.D.N.Y. Sep. 11, 2013) (finding that a plaintiff "who has a potentially meritorious claim and no ability to enforce it absent expedited discovery, has demonstrated good cause for expedited discovery"). Therefore, only through an order from the Court allowing expedited discovery will Plaintiff be able to fully ascertain the extent of Defendants' infringing activities.

Plaintiff respectfully requests an *ex parte* Order allowing expedited discovery in order to permit it to discover certain identifying information, including information concerning all of Defendants' Financial Accounts, Assets and User Accounts and their sales of Infringing Products.  The discovery requested on an expedited basis in Plaintiff's [Proposed] Order has been limited to include only that which is essential to prevent further irreparable harm. Under Fed. R. Civ. P. 65(d)(2)(C), this Court has the power to bind any third parties who are in active concert with Defendants that are given notice of the Order to provide expedited discovery. Moreover, Financial Institutions and the Third-Party Service Provider have complied with similar requests for expedited discovery in like actions before this Court.  *See supra* note 5. Plaintiff respectfully submits that its request should be granted.

E.    PLAINTIFF'S REQUEST FOR A SECURITY BOND
      IN THE AMOUNT OF $5,000 IS ADEQUATE

Generally, a bond is a condition of preliminary injunctive relief.  Fed. R. Civ. P.  65(c)

requires a successful applicant for a preliminary injunction to post a bond, "in such sum as the

[district] court deems proper, for the payment of such costs and damages as may be incurred or

suffered by any party who is found to have been wrongfully enjoined."  Thus, the injunction

bond "provides a fund to use to compensate incorrectly enjoined defendants." *Instant Air Freight

Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 804 (3d Cir. 1989) (quotations omitted).

The injunction bond also serves other functions. "It is generally settled that, with rare

exceptions, a [party] wrongfully enjoined has recourse only against the bond." *Id.; see also

Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 210 n. 31 (3d Cir.1990) (Applicants

"derive some protection from the bond requirement, for [enjoined parties] injured by wrongfully

issued preliminary injunctions can recover only against the bond itself."). Thus, the bond

generally limits the liability of the applicant and informs the applicant of "the price [it] can

expect to pay if the injunction was wrongfully issued." *Instant Air Freight,* 882 F.2d at 805; *see

also id.* at 805 n. 9 ("The bond can thus be seen as a contract in which the court and [the

applicant] 'agree' to the bond amount as the 'price' of a wrongful injunction.") (quotations

omitted).

Plaintiff respectfully submits that in connection with the Court's order pursuant to its

inherent equitable power requiring that the Defendants' Assets and Defendants Financial

Accounts be frozen by the Financial Institutions, Plaintiff's' provision of security in the amount

of $5,000 ("Security Bond") is more than sufficient.  This Security Bond is equal to an amount

that similar plaintiffs have posted in related cases before Courts. *See generally* Request for

Judicial Notice and cases cited therein; *See also Doggie Dental Inc. v. Go Well,* No. 19-cv-1282

(W.D. Pa. Oct. 11, 2019) (Hornak, J.) (Temporary Restraining Order required $5,000 bond);

*Doggie Dental Inc. v. Worthbuyer,* No. 19-cv-1283 (W.D. Pa. Oct. 11, 2019) (Hornak, J.)

(Temporary Restraining Order required $5,000 bond); *Doggie Dental Inc. v. Max_Buy*, No. 19-

cv-746 (W.D. Pa. June 27, 2019) (Hornak, J.) (Temporary Restraining Order required $5,000

bond); *Doggie Dental Inc. v. Anywill,* No. 19-cv-682 (W.D. Pa. June 13, 2019) (Hornak, J.)

(Temporary Restraining Order required $5,000 bond); *Airigan Solutions, LLC v.*

*Artifacts_Selling, Civil Action No. 18-cv-1462-NBF (*Temporary Restraining Order entered on

November 2, 2018, $5,000.00 bond required)*, and Airigan Solutions, LLC v. Babymove, Civil*

*Action No. 19-cv-166-NBF (*Temporary Restraining Order entered on February 14, 2019,

$5,000.00 bond required)*, Rapid Slicer, LLC v. Buyspry, Civil Action No. 19-cv-249-MJH*

*(*Temporary Restraining Order entered on March 11, 2019, $5,000 bond required)*, Showtech*

*Merchandising, Inc. v. Various John Doe, et al,* 2:12-cv-1270 (W.D. Pa. Sept. 6, 2012); *See*

*Wow-Virtual Reality, Inc. v. 740452063 et al.*, No. 18-cv-3618, Dkt. 18 (S.D.N.Y. April 25,

2018); *Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.,* No.

17-cv- 4884-KPF, Dkt. 6 (S.D.N.Y. June 28, 2017); *Rovio Entertainment Ltd. and Rovio*

*Animation OY v. Angel Baby Factory d/b/a Angelbaby_factory et al.,* No. 17-cv-1840-KPF, Dkt.

11 (S.D.N.Y. March 27, 2017). Moreover, one New York Court has gone as far as to hold that no

security bond is necessary in similar circumstances. *See, e.g., Ontel Products Corp. v.*

*Airbrushpainting Makeup Store a/k/a Airbrushespainting, et al.,* No. 17-cv-871-KBF, Dkt. 20

(S.D.N.Y. Feb. 6, 2017).[16]

---

[16]    The Second Circuit has held that "[d]istrict courts ... are vested with wide discretion in determining the amount of the bond that the moving party must post." *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996). Typically, "the amount of the bond posted is the limit that a wrongfully restrained party may recover," but the

Plaintiff believes that Defendants would be unable to show a strong likelihood of harm, and even if Defendants were to experience a likelihood of harm, such harm is outweighed by the harm to Plaintiff, as detailed above.  For these reasons, Plaintiff respectfully requests that the Court, in accordance with Fed. R. Civ. P. 65(a), enter the Security Bond in the amount of $5,000.

## IV. **<u>CONCLUSION</u>**

For the reasons set forth above, Plaintiff respectfully requests that its Application be granted *ex parte* and that the Court enter: 1) a temporary restraining order; 2) an order restraining assets and Merchant Storefronts; 3) an order to show cause why a preliminary injunction should not issue; and 4) an order authorizing expedited discovery against Defendants, the Third Party Service Providers and the Financial Institutions, in the form of the [Proposed] Order accompanying this Application, and such other relief to which Plaintiff may show it is legally entitled.

Respectfully submitted,

Dated:  October 23, 2023

/s/ Stanley D. Ference III
Stanley D. Ference III
Pa. ID No. 59899
courts@ferencelaw.com

Brian Samuel Malkin
Pa. ID No. 70448
bmalkin@ferencelaw.com

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 – Telephone
(412) 741-9292 – Facsimile

Attorneys for Plaintiff

---

Court must also balance this against a likelihood of harm the non-movant would be able to show. *Interlink Int'l Fin. Servs,, Inc.* v. *Block*, 145 F. Supp. 2d 312, 314 (S.D.N.Y. 2001); *see also Doctor's Assocs.*, 85 F.3d at 985.