# EXHIBIT 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60982-CIV-DIMITROULEAS/SNOW

APPLE CORPS LIMITED and SUBAFILMS
LIMITED,

               Plaintiffs,

vs.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

               Defendants.

_____/

## SEALED ORDER GRANTING *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER

THIS CAUSE came before the Court upon Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (the "Application") [DE 6], filed herein on May 20, 2020. The Court has carefully reviewed the Application and the record and is otherwise fully advised in the premises.

By the instant Application, Plaintiffs, Apple Corps Limited and Subafilms Limited (collectively "Plaintiffs") move *ex parte*, for entry of a temporary restraining order against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto (collectively "Defendants"), and an entry of an order restraining the financial accounts used by Defendants, pursuant to pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a).

For the reasons set forth herein, Plaintiffs' *Ex Parte* Application for Temporary Restraining Order [DE 6] is **GRANTED**.

I.    **Factual Background**[1]

Plaintiff, Apple Corps Limited, is the registered owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "BEATLES Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| THE BEATLES | 1,752,120 | February 16, 1993 | IC 014 - Watches. <br><br> IC 018 - Wallets <br><br> IC 025 - Headwear, sweatshirts, t-shirts, shirts. |
| BEATLES | 4,373,956 | July 30, 2013 | IC 009 - Computer keyboard accessories, namely mouse pads and wrist rests in the form of pads for use with computers; telephone apparatus, namely, telephones; telephone receivers, telephone answering machines, mobile telephones; cases for mobile telephones; cell phone covers; covers for mobile telephones, namely, fitted plastic films known as skins for covering and protecting electronic apparatus in the nature of mobile telephones; straps for mobile telephones; telephone call indicator lights and electro-mechanical shakers for detecting and signaling incoming telephone calls; mechanical and electric egg timers; boxes and cases specially adapted for holding audio cassettes, video cassettes, gramophone records, audio compact discs, audio mini discs, video discs, and interactive compact discs or cd-roms. <br><br> IC 014 - Jewelry boxes not of metal, |

---

[1]  The factual background is taken from Plaintiffs' Complaint, Application for Temporary Restraining Order, and supporting Declarations submitted by Plaintiffs.

| | | | including ceramic and porcelain jewelry boxes for trinkets; jewelry; horological and chronometric instruments, namely, watches and clocks; watch straps, cuff links, brooches, bracelets, bangles, earrings, pendants, medallions, trinkets being jewelry, charms being jewelry, rings being jewelry, tie pins, jewelers ornamental tie pins, lapel pins, tie clips, collectible non-monetary coins, ornamental pins; articles of precious metal and their alloys, and articles coated with precious metal and their alloys, namely, belt buckles for clothing, coasters, jewelry boxes, key rings, key chains; hat and shoe ornaments and key fobs all of precious metal; rings being jewelry; ornamental pins; cigarette and cigar cases; precious stones; semi-precious stones; statuettes and figurines of precious metal or precious stone or coated therewith; scale model vehicles, ships or submarines all made from, or coated with precious metal or precious stone. |
|---|---|---|---|
| | | | IC 016 - Posters; prints, namely, photograph prints and pictorial prints; pictures; art prints and framed art prints; framed and unframed pictorial prints, cartoon prints, lithographic prints, color prints, caricature prints, computer generated pictorial prints, and black and white, and color prints featuring hidden or three dimensional images; paper desk mats; pen and pencil cases; pen and pencil boxes; pen and pencil holders; drawing rulers; erasers; printed paper embroidery design patterns; sewing patterns for making clothes, knitting patterns. iron-on transfers for decorating textiles; printed wall charts; paperweights, not of precious |

metal; babies' bibs of paper; bookmarks; passport holders all made from leather or imitation leather; pencil cases, notelets and autograph books; reusable textile lunch bags; reusable plastic shopping bags.

IC 018 - Goods made from leather or imitation leather, namely, waist pouches for carrying purses and wallets; luggage, carry on traveling bags, clutch bags, trunks, business card cases, rucksacks, backpacks, purses, wallets, key cases, luggage tags; billfolds, leather key fobs, key cases, umbrellas; bags, namely, handbags, shoulder bags, all purpose sports bags, barrel bags, carry-on flight bags, and duffel bags, suitcases, attaché cases, school bags, satchels, gym bags, beach bags and credit card cases; hand carry overnight cases of metal, plastic or resin; tote bags, including metal totes; textile shopping bags; identity card holders of leather and imitations of leather.

IC 021 – Drinking vessels, namely, glasses, mugs, jugs, and tankards not of precious metal; bottles, namely, seltzer bottles for use as barware, sport bottles sold empty, and vacuum bottles; insulated bottles, namely, thermal insulated bottles and flasks for beverages.

IC 024 - Decorative window curtains of wood, reed, bamboo, beads or plastic; household linen; bed linen; bedspreads; table linen; table cloths not of paper; table mats not of paper; textile table napkins; coasters made of table linen or textile; unfitted fabric furniture covers; bed sheets, pillow cases, duvet covers; towels; face towels; face washing cloths; curtains; wall

4

|  |  |  | hanging of textile; cloth banners; cloth bunting; cloth flags; handkerchiefs; cushion covers; pre-cut textiles for making into cushions and cushion covers; traced cloths for embroidery. |
|---|---|---|---|
|  |  |  | IC 025 - Footwear and headgear, namely, hats and caps; clothing, namely, shirts, polo shirts, T-shirts, sweatshirts; sweatpants; jackets, coats; pullovers; vests; articles of underclothing, namely, underwear; shorts; scarves; silk pocket squares; neck-ties; braces in the nature of suspenders; belts; socks; long-sleeved shirts and long sleeved T-shirts; silk scarves; silk scarves in the shape of squares for wearing over the head or around the neck; pants; fleece tops; thermal tops; jerseys; baseball jerseys; hockey jerseys; sweaters; tank tops; waistcoats; trousers; golf shirts; golf pants; golf shoes; swim wear; beachwear; night gowns; pajamas; dressing gowns; bathrobes; bathing caps; head bands; slippers; beach shoes; sandals; clothing for toddlers, infants and babies, namely, rompers, shortalls, babies' sleep suits; cloth babies' bibs. |

(*See* Declaration of Paul Cole in Support of Plaintiffs' Application for Temporary Restraining Order (Cole Decl.") ¶¶ 4-5; *see also* United States Trademark Registrations of the BEATLES Marks at issue attached as Composite Exhibit 1 to the Complaint.) The BEATLES Marks are used in connection with the manufacture and distribution of quality goods in the categories identified above. (*See id.* ¶¶ 4-5.)

Plaintiff, Subafilms Limited, is the registered owner of the following trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "YELLOW SUBMARINE Mark"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| YELLOW SUBMARINE | 3,328,170 | November 6, 2007 | IC 009 - Musical sound and video recordings; gramophone records featuring music; audio compact discs featuring music; computer game software; video game software; interactive entertainment software for generating games, puzzles, images, musical entertainment, visual entertainment or movie clips; sunglasses; eyeglass cases; magnets; fridge magnets; mouse pads being accessories for keyboards; telephone apparatus, namely, covers for mobile telephones; straps for mobile telephones; and downloadable sound and video records featuring music, musicians, caricatures, cartoons, animation, movie clips, album art or music memorabilia images provided over broadcast, communications, satellite and computer networks.<br><br>IC 025 - Footwear; shirts; polo shirts; t-shirts; long-sleeved shirts and long-sleeved t-shirts; sweatshirts; jackets; pullovers; vests; scarves; pocket squares made of silk; neck-ties; hats; caps; sock; thermal tops; jerseys; |

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
|  |  |  | sweaters; tank tops; pajamas; clothing for toddlers, infants and babies namely, one-piece garments for infants and toddlers, sleep suits, t-shirts and long-sleeved t-shirts. |

(*See* Cole Decl. ¶¶ 10-11; *see also* United States Trademark Registrations of the YELLOW SUBMARINE Mark at issue attached as Composite Exhibit 2 to the Complaint.) The YELLOW SUBMARINE Mark is used in connection with the manufacture and distribution of quality goods in the categories identified above. (*See id.*)

Defendants, by operating a commercial Internet website under the domain name or e-commerce stores via the Internet marketplace platforms under their seller identification names identified on Schedule "A" hereto (the "Subject Domain Name and Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing what Plaintiffs have determined to be counterfeits, infringements, reproductions and/or colorable imitations of the BEATLES Marks and/or the YELLOW SUBMARINE Mark (collectively "Plaintiffs' Marks"). (*See* Cole Decl. ¶¶ 16-20; Declaration of Stephen M. Gaffigan in Support of Plaintiffs' Application for Temporary Restraining Order ("Gaffigan Decl.") ¶ 2; Declaration of Kathleen Burns in Support of Plaintiffs' Application for Temporary Restraining Order (Burns Decl.") ¶ 4.)

Although each Defendant may not copy and infringe each of Plaintiffs' Marks for each category of goods protected, Plaintiffs have submitted sufficient evidence showing that each Defendant has infringed, at least, one or more of Plaintiffs' Marks. (*See* Cole Decl. ¶¶ 16-20.) Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or

make counterfeits, reproductions, or colorable imitations of Plaintiffs' Marks. (*See id.*  ¶¶ 16, 18-20, 23.)

Plaintiffs' counsel retained Invisible Inc ("Invisible"), a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of Plaintiffs' branded products by Defendants and to obtain the available payment account data for receipt of funds paid to Defendants for the sale of counterfeit versions of Plaintiffs' branded products. (*See* Cole Decl. ¶ 17; Burns Decl. ¶ 3; Gaffigan Decl. ¶ 2.)  Invisible accessed Internet website and Internet based e-commerce stores operating under the Subject Domain Name and Seller IDs and placed orders from each Defendant for the purchase of various products, all bearing counterfeits of, at least, one of Plaintiffs' trademarks at issue in this action, and requested each product to be shipped to Invisible's address in the Southern District of Florida. (*See* Burns Decl. ¶ 4 and Comp. Exs. 1 through 6 thereto.) Each order was processed entirely online, and following the submission of the orders, Invisible received information for finalizing payment[2] for the various products ordered via Amazon Payments, Inc.,[3] via DHpay.com,[4] via PayPal, Inc. ("PayPal")[5] to

---

[2] Invisible was instructed not to transmit the funds to finalize the sale for the orders from some of the Defendants so as to avoid adding additional funds to Defendants' coffers. (*See* Gaffigan Decl. ¶ 2, n.1; Burns Decl. ¶ 4, n.1.)

[3] Amazon is an e-commerce marketplace that allows Defendants to conduct their commercial transactions privately via Amazon's payment processing and retention service, Amazon Payments, Inc. As such, Defendants' payment information is not publicly disclosed, but Amazon Payments, Inc. has the ability to identify and restrain the payment accounts using a seller's unique seller identification number.  (*See* Gaffigan Decl. ¶ 5; Burns Decl. ¶ 4, n.2.)

[4] Defendant Numbers 30-53 use the non-party e-commerce marketplace platform, DHgate.com, which processes its payments via the third-party platform, DHpay.com. The DHgate.com and DHpay.com platforms are operated by the Dunhuang Group, who utilizes Camel FinTech Inc to process transactions and deal with refunds and chargebacks on behalf of DHgate.com to its customers. (*See* Burns Decl. ¶ 4, n.3; Gaffigan Decl. ¶ 6.)

[5] Upon completion of Invisible's purchase from Defendant Number 68 operating via eBay.com, Invisible discovered that the PayPal receipt received did not identify the Defendant's PayPal financial account in the form of an e-mail address. However, the receipt identifies the

Defendants' respective PayPal accounts and/or via Defendants' respective payee,[6] which are identified on Schedule "A" hereto.[7] (*See id*.)  At the conclusion of the process, the detailed web page captures[8] and images of the various Plaintiffs' branded products ordered via Defendants' Subject Domain Name and Seller IDs were sent to Plaintiffs' representative, Paul Cole, for inspection.  (*See* Cole Decl. ¶ 18; Gaffigan Decl. ¶ 2.)

Plaintiffs' representative reviewed and visually inspected the detailed web page captures reflecting Plaintiffs' branded products Invisible ordered from Defendants through the Internet website and Internet based e-commerce stores operating under their respective Subject Domain Name and Sellers IDs, and determined the products were not genuine versions of Plaintiffs' goods.  (*See* Cole Decl. ¶¶ 18-20.)

---

Transaction Identification Number ("Transaction ID") for the purchase made from this Defendant's Seller IDs, and PayPal is able to identify a PayPal account using the Transaction ID. (*See* Burns Decl. ¶ 4, n.4.)

[6] The payee for the orders placed from Defendant Numbers 79-105 identifies "Joom USA Inc," which is the aggregate PayPal account for purchases made via Joom.com.  (*See* Burns Decl. ¶ 4 n.5; Gaffigan Decl. ¶ 8.)  The Joom.com platform itself is not the ultimate merchant, but it can tie a particular Seller ID using the seller's unique merchant identification number to a reported transaction and identify the merchant's funds held within the aggregate account.  (*See* Gaffigan Decl. ¶ 8.)

The payee for the orders placed from Defendant Numbers 106-109's Wish.com Seller IDs identifies "PayPal *Wish," which is the aggregate PayPal account for purchases made Wish.com. (*See* Burns Decl. ¶ 4 n.5; Gaffigan Decl. ¶ 9.)  The Wish.com platform itself is not the ultimate merchant, but it can tie a particular Seller ID using the seller's unique merchant identification number to a reported transaction and identify the merchant's funds held within the aggregate account.  (*See* Gaffigan Decl. ¶ 9.)

[7] Defendant Number 1 also provided a contact e-mail address in connection with its Subject Domain Name, which is included on Schedule "A" hereto. (*See* Burns Decl. ¶ 4 n.6.)

[8] The web pages captured and downloaded by Plaintiffs' counsel's office, Stephen M. Gaffigan, P.A., identifying the Seller Identification Number, Store Name and/or Store Number for certain Defendants are included in Comp. Exs. "2," "3" and "5" to the Burns Decl.

## II.    <u>Legal Standard</u>

In order to obtain a temporary restraining order, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F. 3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty*, 415 U.S. 423, 439 (1974).

## III.    <u>Conclusions of Law</u>

The declarations Plaintiffs submitted in support of their *Ex Parte* Application for Temporary Restraining Order support the following conclusions of law:

A.    Plaintiffs have a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing counterfeits, reproductions, or colorable imitations of Plaintiffs' Marks, and that the products Defendants are selling and promoting for sale are copies of Plaintiffs' products that bear copies of Plaintiffs' Marks.

B.    Because of the infringement of Plaintiffs' Marks, Plaintiffs are likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. The following specific facts, as set forth in Plaintiffs' Complaint, Application for Temporary Restraining Order, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to the Plaintiffs and to consumers before Defendants can be heard in opposition unless Plaintiffs' request for *ex parte* relief is granted:

1.    Defendants own or control a commercial Internet website or e-commerce stores via Internet marketplace platforms operating under their domain name and seller identification names which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of Plaintiffs' rights;

2.    There is good cause to believe that more counterfeit and infringing products bearing Plaintiffs' trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiffs may suffer loss of sales for their genuine products; and

3.    There is good cause to believe that if Plaintiffs proceed on notice to the Defendants on this Application for Temporary Restraining Order, Defendants can easily and quickly transfer or modify domain registration or e-commerce store data and content, change payment accounts, redirect consumer traffic to other domain names and seller identification names, and transfer assets and ownership of the domain names and seller identification names, thereby thwarting Plaintiffs' ability to obtain meaningful relief;

C.    The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiffs, their respective reputations, and their goodwill as manufacturers and distributors of quality products, if such relief is not issued.

D.    The public interest favors issuance of the temporary restraining order to protect Plaintiffs' trademark interests and protect the public from being defrauded by the palming off of counterfeit products as Plaintiffs' genuine goods.

E.    Under 15 U.S.C. § 1117(a), Plaintiffs may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing counterfeits and infringements of Plaintiffs' Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Products Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

F.    Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G.    In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Upon review of Plaintiffs' Complaint, Application for Temporary Restraining Order, and supporting evidentiary submissions, it is hereby

ORDERED that Plaintiffs' Application for Temporary Restraining Order [DE 6] is **GRANTED**, according to the terms set forth below:

## TEMPORARY RESTRAINING ORDER

(1)    Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby temporarily restrained:

    a.    From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing Plaintiffs' Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by the Plaintiffs; and

    b.    From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiffs, bearing Plaintiffs' Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing Plaintiffs' Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

(2)    Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of Plaintiffs' Marks or any confusingly similar trademarks, on or in connection with all Internet websites and Internet based e-commerce stores owned and operated, or controlled by them, including the Internet website and Internet based e-commerce stores operating under the Subject Domain Name and Seller IDs;

(3)    Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of Plaintiffs' Marks, or any confusingly similar trademarks within metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such

terms that are visible to a computer user or serves to direct computer searches to Internet websites and Internet based e-commerce stores registered, owned, or operated by any Defendant, including the Internet website and Internet based e-commerce stores operating under the Subject Domain Name and Seller IDs;

(4)     Each Defendant shall not transfer ownership of the Internet website or Internet based e-commerce stores operating under their Subject Domain Name and Seller IDs during the pendency of this action, or until further order of the Court;

(5)     Each Defendant shall preserve copies of all computer files relating to the use of the Internet website and any of the Internet based e-commerce stores operating under their Subject Domain Name and Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Internet website or Internet based e-commerce stores under their Subject Domain Name and Seller IDs that may have been deleted before the entry of this Order;

(6)     Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Amazon Payments, Inc. ("Amazon"), Dunhuang Group (which operates the DHgate.com and DHPay.com platforms), Camel FinTech Inc, PayPal, Inc. ("PayPal"), SIA Joom, which operates the Joom.com platform ("Joom"), ContextLogic, Inc., which operates the Wish.com website ("ContextLogic"), and their related companies and affiliates shall (i) immediately identify all financial accounts and/or sub-accounts, associated with the Internet website and Internet based e-commerce stores operating under the Subject Domain Name and Seller IDs, merchant identification numbers, and/or the e-mail addresses identified on Schedule "A" hereto, as well as any other accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as

opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court;

(7)     Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, Amazon, Dunhuang Group, Camel FinTech Inc, PayPal, Joom, ContextLogic, and their related companies and affiliates, shall further, within five business days of receiving this Order, provide Plaintiffs' counsel with all data that details (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained. Such restraining of the funds and the disclosure of the related financial institution account information shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, Amazon, Dunhuang Group, Camel FinTech Inc, PayPal, Joom, ContextLogic, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court;

(8)     Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order;

(9)     This Order shall apply to the Subject Domain Name and Seller IDs, associated website and e-commerce stores, and any other domain names, websites, seller identification names, e-commerce stores, or financial accounts which are being used by the Defendants for the

purpose of counterfeiting Plaintiffs' Marks at issue in this action and/or unfairly competing with the Plaintiffs;

(10)    This Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated to by the parties;

## BOND TO BE POSTED

(11)    Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiffs shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice;

## PRELIMINARY INJUNCTION

(12)    A **HEARING** is set before this Court on **Friday, June 12, 2020, at 2:30 P.M.**, in Courtroom 205B at the U.S. Courthouse, 299 E. Broward Boulevard, Fort Lauderdale, Florida, at which time Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiffs' requested preliminary injunction.[9]

(13)    After Plaintiffs' counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, Plaintiffs shall serve a copy of the Complaint, Application for Temporary Restraining Order, and this Order, on each Defendant by e-mail via

---

[9] Plaintiffs' counsel is granted permission to appear at the hearing telephonically. By no later than June 10, 2020, Plaintiffs' counsel shall provide the Court with a telephone number where the Court may reach counsel by telephone at the time of the hearing. For clarity, please do not use a speaker phone.

their corresponding e-mail address and/or online contact form provided on the website and e-commerce stores operating under the respective Subject Domain Name and Seller IDs, or by providing a copy of this Order by e-mail to the registrar of record for the Subject Domain Name or the marketplace platforms for each of the Seller IDs so that the registrar and marketplace platform, in turn, notifies each Defendant of the Order, or by other means reasonably calculated to give notice which is permitted by the Court.  In addition, Plaintiffs shall post copies of the Complaint, Application for Temporary Restraining Order, and this Order, as well as all other documents filed in this action on the website located at http://servingnotice.com/awoa7y/index.html, and shall provide the address to the website to the Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof. Plaintiffs shall continue to provide notice of these proceedings and copies of the documents on file in this matter to the Defendants by regularly updating the website located at http://servingnotice.com/awoa7y/index.html, or by other means reasonably calculated to give notice which is permitted by the Court;

(14)    Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the Internet marketplace websites, and/or financial institutions, payment processors, banks, escrow services, money transmitters, and marketplace platforms, including but not limited to Amazon.com, DHgate.com, eBay.com, Joom.com, Wish.com and ContextLogic, shall, at Plaintiffs' request, provide Plaintiffs' counsel with any e-mail address known to be associated with the Defendants' respective Seller IDs;

(15)    Any response or opposition to Plaintiffs' Motion for Preliminary Injunction must be filed and served on Plaintiffs' counsel by **June 4, 2020.** Plaintiffs shall file any Reply Memorandum on or before **June 8, 2020.** The above dates may be revised upon stipulation by all

parties and approval of this Court. Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d), Fed. R. Civ. P. 65, The All Writs Act, 28 U.S.C. § 1651(a), and this Court's inherent authority.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 21st day of May, 2020.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:
Counsel of Record

**SCHEDULE A:**
**DEFENDANTS BY NUMBER, SELLER ID,**
**ASSOCIATED FINANCIAL ACCOUNTS AND ADDITIONAL E-MAIL ADDRESS**

| Def. No. | Defendant / Seller ID | Financial Account Information | Additional E-Mail Address |
|---|---|---|---|
| 1 | merchclan.com | phamngocbich27060@gmail.com | support@merchclan.com |
| 2 | Alimalalisai | A300CFBDH69OG1 | |
| 3 | BayBiGO | A219XDZ2LMV2WN | |
| 4 | Dean Carnegie | A2J9MHTG1KPIDZ | |
| 5 | Dick Church | A18NAJBQ54GGV0 | |
| 6 | EarBell | A1BHFGCJ0ES7JV | |
| 7 | Eastern Cowboy | A1T1M6SMLCQDJ2 | |
| 8 | Geralry | A2AURW80L41FGB | |
| 9 | Giieena | AAXBIB59PYCZX | |
| 10 | jiningjintaihedianzishangwuyouxiangongsi | AZHN6KGYOITZZ | |
| 11 | junlianxianpeixianbaihuodian | A1M1ZJ0OWX0MXE | |
| 12 | Kingreat | A38Q90S4MK3W0 | |
| 13 | Koongso | A2XFZTCE7XHII8 | |
| 14 | LAVYINGYUSA | AH3JNM3ZN1B45 | |
| 15 | Lemonran | AZ32M0N64H7KA | |
| 16 | li liangshengsdfrtdf | AK2GR196NUQLP | |
| 17 | liqiqimaoyouxiangongsi | A3AJ3DLY8J8GVW | |
| 18 | longjia917024 | A3HA3Q20CFBWOW | |
| 19 | Magices | A1U2TVYBMOD9F0 | |
| 20 | MARI DM | A188J7CGR17RKI | |
| 21 | shangzuo | AAGI6NEOD1J8E | |
| 22 | skdj | A15JJ24YYL2RCM | |
| 23 | SPbSj | AQ7Q1N7UDCQI3 | |
| 24 | TOMFOXS | A5TK1M2E0IFQY | |
| 25 | Toresia | A3SVZYLKVDJRY3 | |

| 26 | UJJERYTOW | A3BXLWNP6MZ0EG | |
| 27 | xuankeke | A2A8H7AJPKQ9XV | |
| 28 | yi chang ding cai zhuang shi gong cheng you xian | A3BSK2K9NXYLEC | |
| 29 | zhendian | AH86M0WZOMYRM | |
| 30 | Amaz2016 | 20279261 | |
| 31 | Bapeaape | 20569870 | |
| 32 | Cloth_mall | 20994301 | |
| 33 | Cnkk | 21092061 | |
| 34 | Cooposc | 21227252 | |
| 35 | Designlife | 20800367 | |
| 36 | Dh_kenzo | 21227254 | |
| 37 | Dododi | 20968960 | |
| 38 | fishclub | 21185153 | |
| 39 | giantcutedepartments | 21081345 | |
| 40 | Good_babyclothes | 20608955 | |
| 41 | H_ss | 19312457 | |
| 42 | Iiceef | 21227651 | |
| 43 | Ktmsky | 21176071 | |
| 44 | liqyi0304 | 20471186 | |
| 45 | Malleight | 20451232 | |
| 46 | Memell | 21226975 | |
| 47 | Popooi | 21141938 | |
| 48 | shangshenglingshig | 20549067 | |
| 49 | Sunflower_fz | 20996077 | |
| 50 | Tt_lady | 21065021 | |
| 51 | Vipvood | 21227130 | |
| 52 | Vogocm55 | 20899187 | |
| 53 | Yanliw123 | 16213451 | |
| 54 | basap-37 | hahajuity@gmail.com | |

| 55 | ca1862 | pakcamat0011@gmail.com | |
|---|---|---|---|
| 56 | charity_79 | charityburris55@gmail.com | |
| 57 | cvcvx_1 | dewiriana898@gmail.com | |
| 58 | dadandodo0 | dadangdodot679@gmail.com | |
| 59 | dayrifa_0 | dayu7820@gmail.com | |
| 60 | deyfdidi0 | deyfadidit453@gmail.com | |
| 61 | dipras23 | dimasprasetya56@hotmail.com | |
| 62 | diyamay-0 | diyanmaya67@gmail.com | |
| 63 | gunjae-0 | gunturjaelani88@gmail.com | |
| 64 | id2015.berl | adeliaberlian@yahoo.com | |
| 65 | jokpel-0 | jokopelo209@gmail.com | |
| 66 | joobla-8 | oblak6223@gmail.com | |
| 67 | latif45 | happykamudan@gmail.com | |
| 68 | marketdaymarketday | Transaction ID:44P28451KL3153647 | |
| 69 | nanankose0 | nanangkosem6675@gmail.com | |
| 70 | nguybich65 | aduong15987@gmail.com | |
| 71 | rizfatu_0 | rizafatur688@gmail.com | |
| 72 | rudiyantputr-0 | rudiyantoputra21@gmail.com | |
| 73 | sajiw_0 | bagussajiwo138@gmail.com | |
| 74 | yaanrro_0 | iyo.tai89@gmail.com | |
| 75 | yogsetiawa_1 | setiawanyoga016@gmail.com | |
| 76 | yongpinlon0 | dragon1yp@163.com | |
| 77 | yumanugroh_0 | yumannugroho21@gmail.com | |
| 78 | zitnala-0 | zitnialam547@gmail.com | |
| 79 | Arbutus | 5b51a4768b2c370353deec85 | |
| 80 | Atlanta | 5af010f08b2c3703f45133b3 | |
| 81 | Barcelona | 5af0125c8b45130383483ad3 | |
| 82 | Beagirl | 5b8e1e408b451303f398c65c | |
| 83 | Bluebell | 5b51a4c01436d40366ca9a53 | |

| 84 | Cairo | 5af013558b2c3703f451678e | |
| 85 | DC Shoes | 5be2d6518b4513034ead677e | |
| 86 | Dream Back KiD | 5ddf3e1b28fc710301cb951f | |
| 87 | Dublin | 5af012f01436d40316ece4c7 | |
| 88 | EnjoyLi | 5c9351091436d4030152564c | |
| 89 | Gnbu1 | 5dd3affc8b2c370301901b46 | |
| 90 | Golden Bamboo | 5b51a25a8b451303bc8c1ad7 | |
| 91 | Houston | 5af0110c8b451303834829ca | |
| 92 | Istanbul | 5af012681436d40316ecc871 | |
| 93 | Milan | 5af010491436d40316ec71a8 | |
| 94 | Mint | 5b51a26f8b451303bc8c1bb2 | |
| 95 | Morning Glory-43 | 5b51a7c08b451303bc8c716b | |
| 96 | Munich | 5af010cd8b2c3703f4513196 | |
| 97 | NMUM | 5d9b514136b54d03012b9ad9 | |
| 98 | QWA327 | 5e0aa2b08b2c3703019f66fc | |
| 99 | San Diego | 5af012038b45130383483470 | |
| 100 | sanjose | 1510907051958937023-153-3-26193-734915978 | |
| 101 | Star Cluster | 5b51a3131436d40366ca872e | |
| 102 | Taraxacum-50 | 5b51acad1436d40366cb145d | |
| 103 | Tiger Lily-49 | 5b51ac558b451303bc8caf22 | |
| 104 | Vienna | 5af010018b2c3703f450dd4c | |
| 105 | Warsaw | 5af011618b2c3703f45138b9 | |
| 106 | lucky and happy | 5e09cdcae0e2e0098eb668f4 | |
| 107 | luoshuanglin0812 | 5e0dd94ca577533230033073 | |
| 108 | marinaallenshop | 59dba4be15da0767683bb10b | |
| 109 | Tobeno1shop | 59f88ab368788b1a4c181ee5 | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60982-CIV-DIMITROULEAS/SNOW

APPLE CORPS LIMITED and SUBAFILMS
LIMITED,

        Plaintiffs,

vs.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

        Defendants.

_____/

## SEALED ORDER AUTHORIZING ALTERNATE SERVICE OF PROCESS ON DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)

THIS CAUSE is before the Court upon Plaintiffs' *Ex Parte* Motion for Order Authorizing Alternate Service of Process on Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3) (the "Motion") [DE 7], filed herein on May 20, 2020. The Court has carefully considered the Motion and is otherwise fully advised in the premises.

Plaintiffs seek an order granting alternative service of process on the Defendants in this action, all of which are foreign. Plaintiffs allege that Defendants have established Internet-based businesses and utilize electronic means as reliable forms of contact. Therefore, Plaintiffs seek to serve these Defendants by both e-mail and website posting.

Rule 4(h)(2) for the Federal Rules of Civil Procedure (the "Rules") defines the contours of service upon foreign corporations and incorporates the service methods set forth regarding individuals in Rule 4(f). Rule 4(f)(3), in turn, provides that service may be accomplished "by other means not prohibited by international agreement, as the court orders." Alternative methods of service under Rule 4(f)(3) are available without first attempting service by other means. *Rio*

*Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). "So especially in a circumstance where service upon a foreign corporation under Rule 4(f)(1) or 4(f)(2) has been cumbersome, district courts have broad discretion under Rule 4(f)(3) to authorize other methods of service that are consistent with due process and are not prohibited by international agreements." *Brookshire Brothers, Ltd. v. Chiquita Brands Int'l, Inc*., Case No. 05-CIV-21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007) (citing *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 921, 927 (11th Cir. 2003)).

For the following reasons, the Court finds that alternative service of process under Rule 4(f)(3) is warranted. First, the Hague Convention does not specifically preclude service by e-mail and website posting. Where a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such e-mail or website posting. *Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, Case No. 15-cv-20590-FAM, 2015 U.S. Dist. LEXIS 122000 (S.D. Fla. Sept. 14, 2015) (noting that an objection to the alternative forms of service set forth in the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 658 U.N.T.S. 16, is limited to the specific forms of service objected to). A court acting under Rule 4(f)(3) therefore remains free to order alternative means of service where a signatory nation has not expressly objected to those means. *See Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011). Accordingly, the requested service methods are not prohibited by international agreement.

Second, Defendants have at least one known and valid form of electronic contact, and Plaintiffs have created a website for the sole purpose of providing notice of this action to Defendants, the address to which will be provided to Defendants' known e-mail accounts and onsite contact forms. Therefore, service via e-mail and through website posting is "reasonably

calculated, under all circumstances, to apprise [Defendants] of the pendency of the action and afford them an opportunity to present their objections." *See Brookshire Brothers, Ltd.*, 2007 WL 1577771, at *1. Thus, the Court will exercise its discretion to allow service on Defendants through e-mail and website posting.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.     The Motion [DE 7] is hereby **GRANTED**;

2.     Pursuant to Rule 4(f)(3), Plaintiffs are permitted to serve the Summonses, Complaint, and all other filings and discovery in this matter upon each Defendant:

   a.  by providing the address to Plaintiffs' designated serving notice website to Defendants via the e-mail accounts provided by each Defendant as part of the data related to its e-commerce store or website, including customer service e-mail addresses and onsite contact forms, or via the e-commerce platform e-mail for each of the e-commerce stores or registrar of record for the domain name. *See* Schedule "A" attached to the Motion [DE 7], which lists Defendants' Subject Domain Name and Seller IDs and associated means of contact; **and**

   b.  by publicly posting a copy of the Summonses, Complaint, and all filings and discovery in this matter on Plaintiffs' designated serving notice website appearing at http://servingnotice.com/awoa7y/index.html.

   **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 21st day of May, 2020.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:
Counsel of Record

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60982-CIV-DIMITROULEAS/SNOW

APPLE CORPS LIMITED and SUBAFILMS
LIMITED,

    Plaintiffs,

vs.

MERCHCLAN.COM, *et al.,*

    Defendants.

_____/

## ORDER GRANTING APPLICATION FOR ENTRY OF PRELIMINARY INJUNCTION

  THIS CAUSE came before the Court upon Plaintiffs' Application for Entry of Preliminary Injunction (the "Application") [DE 6]. The Court has carefully reviewed the Application and the record and is otherwise fully advised in the premises.

  By the instant Application, Plaintiffs, Apple Corps Limited and Subafilms Limited (collectively "Plaintiffs") move for entry of a preliminary injunction against Defendants, the Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" hereto (collectively "Defendants"), pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a).

  The Court convened a hearing on June 12, 2020, at which only counsel for Plaintiffs was present and available to present evidence supporting the Application. Because Plaintiffs have satisfied the requirements for the issuance of a preliminary injunction, the Court will now grant Plaintiffs' Application for Preliminary Injunction as to all Defendants.

## I.     **Factual Background**[1]

Plaintiff, Apple Corps Limited, is the registered owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "BEATLES Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| THE BEATLES | 1,752,120 | February 16, 1993 | IC 014 - Watches.<br><br>IC 018 - Wallets<br><br>IC 025 - Headwear, sweatshirts, t-shirts, shirts. |
| BEATLES | 4,373,956 | July 30, 2013 | IC 009 - Computer keyboard accessories, namely mouse pads and wrist rests in the form of pads for use with computers; telephone apparatus, namely, telephones; telephone receivers, telephone answering machines, mobile telephones; cases for mobile telephones; cell phone covers; covers for mobile telephones, namely, fitted plastic films known as skins for covering and protecting electronic apparatus in the nature of mobile telephones; straps for mobile telephones; telephone call indicator lights and electro-mechanical shakers for detecting and signaling incoming telephone calls; mechanical and electric egg timers; boxes and cases specially adapted for holding audio cassettes, video cassettes, gramophone records, audio compact discs, audio mini discs, video discs, and interactive compact discs or cd-roms. |

---

[1] The factual background is taken from Plaintiffs' Amended Complaint, Application for Preliminary Injunction, and supporting Declarations submitted by Plaintiffs.

| | | | IC 014 - Jewelry boxes not of metal, including ceramic and porcelain jewelry boxes for trinkets; jewelry; horological and chronometric instruments, namely, watches and clocks; watch straps, cuff links, brooches, bracelets, bangles, earrings, pendants, medallions, trinkets being jewelry, charms being jewelry, rings being jewelry, tie pins, jewelers ornamental tie pins, lapel pins, tie clips, collectible non-monetary coins, ornamental pins; articles of precious metal and their alloys, and articles coated with precious metal and their alloys, namely, belt buckles for clothing, coasters, jewelry boxes, key rings, key chains; hat and shoe ornaments and key fobs all of precious metal; rings being jewelry; ornamental pins; cigarette and cigar cases; precious stones; semi-precious stones; statuettes and figurines of precious metal or precious stone or coated therewith; scale model vehicles, ships or submarines all made from, or coated with precious metal or precious stone. |
| --- | --- | --- | --- |
| | | | IC 016 - Posters; prints, namely, photograph prints and pictorial prints; pictures; art prints and framed art prints; framed and unframed pictorial prints, cartoon prints, lithographic prints, color prints, caricature prints, computer generated pictorial prints, and black and white, and color prints featuring hidden or three dimensional images; paper desk mats; pen and pencil cases; pen and pencil boxes; pen and pencil holders; drawing rulers; erasers; printed paper embroidery design patterns; sewing patterns for making clothes, knitting patterns. iron-on |

transfers for decorating textiles; printed wall charts; paperweights, not of precious metal; babies' bibs of paper; bookmarks; passport holders all made from leather or imitation leather; pencil cases, notelets and autograph books; reusable textile lunch bags; reusable plastic shopping bags.

IC 018 - Goods made from leather or imitation leather, namely, waist pouches for carrying purses and wallets; luggage, carry on traveling bags, clutch bags, trunks, business card cases, rucksacks, backpacks, purses, wallets, key cases, luggage tags; billfolds, leather key fobs, key cases, umbrellas; bags, namely, handbags, shoulder bags, all purpose sports bags, barrel bags, carry-on flight bags, and duffel bags, suitcases, attaché cases, school bags, satchels, gym bags, beach bags and credit card cases; hand carry overnight cases of metal, plastic or resin; tote bags, including metal totes; textile shopping bags; identity card holders of leather and imitations of leather.

IC 021 – Drinking vessels, namely, glasses, mugs, jugs, and tankards not of precious metal; bottles, namely, seltzer bottles for use as barware, sport bottles sold empty, and vacuum bottles; insulated bottles, namely, thermal insulated bottles and flasks for beverages.

IC 024 - Decorative window curtains of wood, reed, bamboo, beads or plastic; household linen; bed linen; bedspreads; table linen; table cloths not of paper; table mats not of paper; textile table napkins; coasters made of table linen or textile;

|  |  |  | unfitted fabric furniture covers; bed sheets, pillow cases, duvet covers; towels; face towels; face washing cloths; curtains; wall hanging of textile; cloth banners; cloth bunting; cloth flags; handkerchiefs; cushion covers; pre-cut textiles for making into cushions and cushion covers; traced cloths for embroidery.<br><br>IC 025 - Footwear and headgear, namely, hats and caps; clothing, namely, shirts, polo shirts, T-shirts, sweatshirts; sweatpants; jackets, coats; pullovers; vests; articles of underclothing, namely, underwear; shorts; scarves; silk pocket squares; neck-ties; braces in the nature of suspenders; belts; socks; long-sleeved shirts and long sleeved T-shirts; silk scarves; silk scarves in the shape of squares for wearing over the head or around the neck; pants; fleece tops; thermal tops; jerseys; baseball jerseys; hockey jerseys; sweaters; tank tops; waistcoats; trousers; golf shirts; golf pants; golf shoes; swim wear; beachwear; night gowns; pajamas; dressing gowns; bathrobes; bathing caps; head bands; slippers; beach shoes; sandals; clothing for toddlers, infants and babies, namely, rompers, shortalls, babies' sleep suits; cloth babies' bibs. |
|---|---|---|---|

(*See* Declaration of Paul Cole in Support of Plaintiffs' Application for Preliminary Injunction (Cole Decl.") ¶¶ 4-5; *see also* United States Trademark Registrations of the BEATLES Marks at issue attached as Composite Exhibit 1 to the Amended Complaint.) The BEATLES Marks are used in connection with the manufacture and distribution of quality goods in the categories identified above. (*See id.* ¶¶ 4-5.)

Plaintiff, Subafilms Limited, is the registered owner of the following trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "YELLOW SUBMARINE Mark"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| YELLOW SUBMARINE | 3,328,170 | November 6, 2007 | IC 009 - Musical sound and video recordings; gramophone records featuring music; audio compact discs featuring music; computer game software; video game software; interactive entertainment software for generating games, puzzles, images, musical entertainment, visual entertainment or movie clips; sunglasses; eyeglass cases; magnets; fridge magnets; mouse pads being accessories for keyboards; telephone apparatus, namely, covers for mobile telephones; straps for mobile telephones; and downloadable sound and video records featuring music, musicians, caricatures, cartoons, animation, movie clips, album art or music memorabilia images provided over broadcast, communications, satellite and computer networks. <br><br> IC 025 - Footwear; shirts; polo shirts; t-shirts; long-sleeved shirts and long-sleeved t-shirts; sweatshirts; jackets; pullovers; vests; scarves; pocket squares made of silk; neck-ties; hats; caps; |

6

Case 0:23-cv-61840-WPD Document 7-6 Filed 10/24/23 Page 34 of 48

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| | | | sock; thermal tops; jerseys; sweaters; tank tops; pajamas; clothing for toddlers, infants and babies namely, one-piece garments for infants and toddlers, sleep suits, t-shirts and long-sleeved t-shirts. |

(*See* Cole Decl. ¶¶ 10-11; *see also* United States Trademark Registrations of the YELLOW SUBMARINE Mark at issue attached as Composite Exhibit 2 to the Amended Complaint.) The YELLOW SUBMARINE Mark is used in connection with the manufacture and distribution of quality goods in the categories identified above. (*See id.*)

Defendants, by operating a commercial Internet website under the domain name or e-commerce stores via the Internet marketplace platforms under their seller identification names identified on Schedule "A" hereto (the "Subject Domain Name and Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing what Plaintiffs have determined to be counterfeits, infringements, reproductions and/or colorable imitations of the BEATLES Marks and/or the YELLOW SUBMARINE Mark (collectively "Plaintiffs' Marks"). (*See* Cole Decl. ¶¶ 16-20; Declaration of Stephen M. Gaffigan in Support of Plaintiffs' Application for Preliminary Injunction ("Gaffigan Decl.") ¶ 2; Declaration of Kathleen Burns in Support of Plaintiffs' Application for Preliminary Injunction (Burns Decl.") ¶ 4.)

Although each Defendant may not copy and infringe each of Plaintiffs' Marks for each category of goods protected, Plaintiffs have submitted sufficient evidence showing that each Defendant has infringed, at least, one or more of Plaintiffs' Marks. (*See* Cole Decl. ¶¶ 16-20.) Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or

make counterfeits, reproductions, or colorable imitations of Plaintiffs' Marks. (*See id.* ¶¶ 16, 18-20, 23.)

Plaintiffs' counsel retained Invisible Inc ("Invisible"), a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of Plaintiffs' branded products by Defendants and to obtain the available payment account data for receipt of funds paid to Defendants for the sale of counterfeit versions of Plaintiffs' branded products. (*See* Cole Decl. ¶ 17; Burns Decl. ¶ 3; Gaffigan Decl. ¶ 2.) Invisible accessed Internet website and Internet based e-commerce stores operating under the Subject Domain Name and Seller IDs and placed orders from each Defendant for the purchase of various products, all bearing counterfeits of, at least, one of Plaintiffs' trademarks at issue in this action, and requested each product to be shipped to Invisible's address in the Southern District of Florida. (*See* Burns Decl. ¶ 4 and Comp. Exs. 1 through 6 thereto.) Each order was processed entirely online, and following the submission of the orders, Invisible received information for finalizing payment[2] for the various products ordered via Amazon Payments, Inc.,[3] via DHpay.com,[4] via PayPal, Inc. ("PayPal")[5] to

---

[2] Invisible was instructed not to transmit the funds to finalize the sale for the orders from some of the Defendants so as to avoid adding additional funds to Defendants' coffers. (*See* Gaffigan Decl. ¶ 2, n.1; Burns Decl. ¶ 4, n.1.)

[3] Amazon is an e-commerce marketplace that allows Defendants to conduct their commercial transactions privately via Amazon's payment processing and retention service, Amazon Payments, Inc. As such, Defendants' payment information is not publicly disclosed, but Amazon Payments, Inc. has the ability to identify and restrain the payment accounts using a seller's unique seller identification number. (*See* Gaffigan Decl. ¶ 5; Burns Decl. ¶ 4, n.2.)

[4] Defendant Numbers 30-53 use the non-party e-commerce marketplace platform, DHgate.com, which processes its payments via the third-party platform, DHpay.com. The DHgate.com and DHpay.com platforms are operated by the Dunhuang Group, who utilizes Camel FinTech Inc to process transactions and deal with refunds and chargebacks on behalf of DHgate.com to its customers. (*See* Burns Decl. ¶ 4, n.3; Gaffigan Decl. ¶ 6.)

[5] Upon completion of Invisible's purchase from Defendant Number 68 operating via eBay.com, Invisible discovered that the PayPal receipt received did not identify the Defendant's PayPal

Defendants' respective PayPal accounts and/or via Defendants' respective payee,[6] which are identified on Schedule "A" hereto.[7] (*See id.*)  At the conclusion of the process, the detailed web page captures[8] and images of the various Plaintiffs' branded products ordered via Defendants' Subject Domain Name and Seller IDs were sent to Plaintiffs' representative, Paul Cole, for inspection.  (*See* Cole Decl. ¶ 18; Gaffigan Decl. ¶ 2.)

Plaintiffs' representative reviewed and visually inspected the detailed web page captures reflecting Plaintiffs' branded products Invisible ordered from Defendants through the Internet website and Internet based e-commerce stores operating under their respective Subject Domain Name and Sellers IDs, and determined the products were not genuine versions of Plaintiffs' goods.  (*See* Cole Decl. ¶¶ 18-20.)

---

financial account in the form of an e-mail address. However, the receipt identifies the Transaction Identification Number ("Transaction ID") for the purchase made from this Defendant's Seller IDs, and PayPal is able to identify a PayPal account using the Transaction ID. (*See* Burns Decl. ¶ 4, n.4.)

[6] The payee for the orders placed from Defendant Numbers 79-105 identifies "Joom USA Inc," which is the aggregate PayPal account for purchases made via Joom.com.  (*See* Burns Decl. ¶ 4 n.5; Gaffigan Decl. ¶ 8.)  The Joom.com platform itself is not the ultimate merchant, but it can tie a particular Seller ID using the seller's unique merchant identification number to a reported transaction and identify the merchant's funds held within the aggregate account.  (*See* Gaffigan Decl. ¶ 8.)

The payee for the orders placed from Defendant Numbers 106-109's Wish.com Seller IDs identifies "PayPal *Wish," which is the aggregate PayPal account for purchases made Wish.com. (*See* Burns Decl. ¶ 4 n.5; Gaffigan Decl. ¶ 9.)  The Wish.com platform itself is not the ultimate merchant, but it can tie a particular Seller ID using the seller's unique merchant identification number to a reported transaction and identify the merchant's funds held within the aggregate account.  (*See* Gaffigan Decl. ¶ 9.)

[7] Defendant Number 1 also provided a contact e-mail address in connection with its Subject Domain Name, which is included on Schedule "A" hereto. (*See* Burns Decl. ¶ 4 n.6.)

[8] The web pages captured and downloaded by Plaintiffs' counsel's office, Stephen M. Gaffigan, P.A., identifying the Seller Identification Number, Store Name and/or Store Number for certain Defendants are included in Comp. Exs. "2," "3" and "5" to the Burns Decl.

Case 0:20-cv-60932-WPD Document 27 Entered on FLSD Docket 06/12/2020 Page 10 of 21

On May 19, 2020, Plaintiffs filed their Complaint [DE 1] and thereafter their Amended Complaint on June 1, 2020 [DE 18] against Defendants for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement. On May 20, 2020, Plaintiffs filed their *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets [DE 6]. On May 21, 2020, this Court entered an Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order (the "TRO") [DE 9] and temporarily restrained Defendants from infringing Plaintiffs' Marks at issue. Pursuant to the Court's May 21, 2020 TRO, Plaintiffs properly served Defendants with a copy of the Amended Complaint, and all filings in this matter, and the Court's May 21, 2020 TRO [*see* DE Nos. 21 and 22]. On June 12, 2020, the Court conducted a hearing on Plaintiffs' Application, at which only counsel for Plaintiffs was in attendance.

## II.   <u>Legal Standard</u>

In order to obtain a preliminary injunction, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F. 3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

### III.  **Conclusions of Law**

The declarations Plaintiffs submitted in support of their Application for Preliminary Injunction support the following conclusions of law:

A.     Plaintiffs have a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing counterfeits, reproductions, or colorable imitations of Plaintiffs' Marks, and that the products Defendants are selling and promoting for sale are copies of Plaintiffs' products that bear copies of Plaintiffs' Marks.

B.     Because of the infringement of Plaintiffs' Marks, Plaintiffs are likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in Plaintiffs' Amended Complaint, Application for Preliminary Injunction, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to the Plaintiffs and to consumers because it is more likely than not that:

1.     Defendants own or control a commercial Internet website or e-commerce stores via Internet marketplace platforms operating under their domain name and seller identification names which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of Plaintiffs' rights; and

2.     There is good cause to believe that more counterfeit and infringing products bearing Plaintiffs' trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiffs may suffer loss of sales for their genuine products.

C.     The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiffs, their respective reputations, and their goodwill as manufacturers and distributors of quality products, if such relief is not issued.

D.     The public interest favors issuance of the preliminary injunction to protect Plaintiffs' trademark interests and protect the public from being defrauded by the palming off of counterfeit products as Plaintiffs' genuine goods.

E.     Under 15 U.S.C. § 1117(a), Plaintiffs may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing counterfeits and infringements of Plaintiffs' Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Products Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

F.     Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G.     In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Upon review of Plaintiffs' Amended Complaint, Application for Preliminary Injunction, and supporting evidentiary submissions, it is hereby

ORDERED that Plaintiffs' Application for Preliminary Injunction [DE 6] is **GRANTED**, according to the terms set forth below:

(1)     Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby restrained and enjoined until further Order of this Court:

> a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing Plaintiffs' Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by the Plaintiffs; and
>
> b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiffs, bearing Plaintiffs' Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing Plaintiffs' Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

(2)     Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of Plaintiffs' Marks or any confusingly similar trademarks, on or in connection with all Internet websites and Internet based e-commerce stores owned and operated, or controlled by them, including the Internet website and Internet based e-commerce stores operating under the Subject Domain Name and Seller IDs;

13

(3)     Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of Plaintiffs' Marks, or any confusingly similar trademarks within metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet websites and Internet based e-commerce stores registered, owned, or operated by any Defendant, including the Internet website and Internet based e-commerce stores operating under the Subject Domain Name and Seller IDs;

(4)     Each Defendant shall not transfer ownership of the Internet website or Internet based e-commerce stores operating under their Subject Domain Name and Seller IDs during the pendency of this action, or until further order of the Court;

(5)     Each Defendant shall continue to preserve copies of all computer files relating to the use of the Internet website and any of the Internet based e-commerce stores operating under their Subject Domain Name and Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Internet website or Internet based e-commerce stores under their Subject Domain Name and Seller IDs that may have been deleted before the entry of this Order;

(6)     Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Amazon Payments, Inc. ("Amazon"), Dunhuang Group (which operates the DHgate.com and DHPay.com platforms), Camel FinTech Inc, PayPal, Inc. ("PayPal"), SIA Joom, which operates the Joom.com platform ("Joom"), ContextLogic, Inc.,

which operates the Wish.com website ("ContextLogic"), and their related companies and affiliates shall, to the extent not already done, (i) immediately identify all financial accounts and/or sub-accounts, associated with the Internet website and Internet based e-commerce stores operating under the Subject Domain Name and Seller IDs, merchant identification numbers, and/or the e-mail addresses identified on Schedule "A" hereto, as well as any other accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court;

(7)     Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, Amazon, Dunhuang Group, Camel FinTech Inc, PayPal, Joom, ContextLogic, and their related companies and affiliates, shall further, to the extent not already done,  provide Plaintiffs' counsel with all data that details (i)  an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, Amazon, Dunhuang Group, Camel FinTech Inc, PayPal, Joom, ContextLogic, and their related companies and affiliates for any purpose (other than pursuant

Case 2:23-cv-01840-WSS Document 76 Filed 10/24/23 Page 43 of 48

to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court;

(8)     Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order;

(9)     This Order shall apply to the Subject Domain Name and Seller IDs, associated website and e-commerce stores, and any other domain names, websites, seller identification names, e-commerce stores, or financial accounts which are being used by the Defendants for the purpose of counterfeiting Plaintiffs' Marks at issue in this action and/or unfairly competing with the Plaintiffs;

(10)     Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiffs shall maintain their previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice;

(11)     Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the Internet marketplace websites, and/or financial institutions, payment processors, banks, escrow services, money transmitters, and marketplace platforms, including but not limited to Amazon.com, DHgate.com, eBay.com, Joom.com, Wish.com and ContextLogic, shall, at Plaintiffs' request, provide Plaintiffs' counsel with any e-mail address known to be associated with the Defendants' respective Seller IDs;

(12)    This Order shall remain in effect during the pendency of this action, or until such further date as set by the Court or stipulated by the parties.

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Broward County, Florida, this 12th day of June, 2020.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:
Counsel of Record

**SCHEDULE A:**
**DEFENDANTS BY NUMBER, SUBJECT DOMAIN NAME, SELLER ID,**
**ASSOCIATED FINANCIAL ACCOUNTS AND ADDITIONAL E-MAIL ADDRESS**

| Def. No. | Defendant by Subject Domain Name / Seller ID | Financial Account Information | Additional E-Mail Address |
|---|---|---|---|
| 1 | merchclan.com | phamngocbich27060@gmail.com | support@merchclan.com |
| 2 | Alimalalisai | A300CFBDH69OG1 | |
| 3 | BayBiGO | A219XDZ2LMV2WN | |
| 4 | Dean Carnegie | A2J9MHTG1KPIDZ | |
| 5 | Dick Church | A18NAJBQ54GGV0 | |
| 6 | EarBell | A1BHFGCJ0ES7JV | |
| 7 | Eastern Cowboy | A1T1M6SMLCQDJ2 | |
| 8 | Geralry | A2AURW80L41FGB | |
| 9 | Giieena | AAXBIB59PYCZX | |
| 10 | jiningjintaihedianzishangwuyouxiangongsi | AZHN6KGYOITZZ | |
| 11 | junlianxianpeixianbaihuodian | A1M1ZJ0OWX0MXE | |
| 12 | Kingreat | A38Q90S4MK3W0 | |
| 13 | Koongso | A2XFZTCE7XHII8 | |
| 14 | LAVYINGYUSA | AH3JNM3ZN1B45 | |
| 15 | Lemonran | AZ32M0N64H7KA | |
| 16 | li liangshengsdfrtdf | AK2GR196NUQLP | |
| 17 | liqiqimaoyouxiangongsi | A3AJ3DLY8J8GVW | |
| 18 | longjia917024 | A3HA3Q20CFBWOW | |
| 19 | Magices | A1U2TVYBMOD9F0 | |
| 20 | MARI DM | A188J7CGR17RKI | |
| 21 | shangzuo | AAGI6NEOD1J8E | |
| 22 | skdj | A15JJ24YYL2RCM | |
| 23 | SPbSj | AQ7Q1N7UDCQI3 | |
| 24 | TOMFOXS | A5TK1M2E0IFQY | |

| 25 | Toresia | A3SVZYLKVDJRY3 | |
| 26 | UJJERYTOW | A3BXLWNP6MZ0EG | |
| 27 | xuankeke | A2A8H7AJPKQ9XV | |
| 28 | yi chang ding cai zhuang shi gong cheng you xian | A3BSK2K9NXYLEC | |
| 29 | zhendian | AH86M0WZOMYRM | |
| 30 | Amaz2016 | 20279261 | |
| 31 | Bapeaape | 20569870 | |
| 32 | Cloth_mall | 20994301 | |
| 33 | Cnkk | 21092061 | |
| 34 | Cooposc | 21227252 | |
| 35 | Designlife | 20800367 | |
| 36 | Dh_kenzo | 21227254 | |
| 37 | Dododi | 20968960 | |
| 38 | fishclub | 21185153 | |
| 39 | giantcutedepartments | 21081345 | |
| 40 | Good_babyclothes | 20608955 | |
| 41 | H_ss | 19312457 | |
| 42 | Iiceef | 21227651 | |
| 43 | Ktmsky | 21176071 | |
| 44 | liqyi0304 | 20471186 | |
| 45 | Malleight | 20451232 | |
| 46 | Memell | 21226975 | |
| 47 | Popooi | 21141938 | |
| 48 | shangshenglingshig | 20549067 | |
| 49 | Sunflower_fz | 20996077 | |
| 50 | Tt_lady | 21065021 | |
| 51 | Vipvood | 21227130 | |
| 52 | Vogocm55 | 20899187 | |
| 53 | Yanliw123 | 16213451 | |

| 54 | basap-37 | hahajuity@gmail.com | |
| 55 | ca1862 | pakcamat0011@gmail.com | |
| 56 | charity_79 | charityburris55@gmail.com | |
| 57 | cvcvx_1 | dewiriana898@gmail.com | |
| 58 | dadandodo0 | dadangdodot679@gmail.com | |
| 59 | dayrifa_0 | dayu7820@gmail.com | |
| 60 | deyfdidi0 | deyfadidit453@gmail.com | |
| 61 | dipras23 | dimasprasetya56@hotmail.com | |
| 62 | diyamay-0 | diyanmaya67@gmail.com | |
| 63 | gunjae-0 | gunturjaelani88@gmail.com | |
| 64 | id2015.berl | adeliaberlian@yahoo.com | |
| 65 | jokpel-0 | jokopelo209@gmail.com | |
| 66 | joobla-8 | oblak6223@gmail.com | |
| 67 | latif45 | happykamudan@gmail.com | |
| 68 | marketdaymarketday | Transaction ID:44P28451KL3153647 | |
| 69 | nanankose0 | nanangkosem6675@gmail.com | |
| 70 | nguybich65 | aduong15987@gmail.com | |
| 71 | rizfatu_0 | rizafatur688@gmail.com | |
| 72 | rudiyantputr-0 | rudiyantoputra21@gmail.com | |
| 73 | sajiw_0 | bagussajiwo138@gmail.com | |
| 74 | yaanrro_0 | iyo.tai89@gmail.com | |
| 75 | yogsetiawa_1 | setiawanyoga016@gmail.com | |
| 76 | yongpinlon0 | dragon1yp@163.com | |
| 77 | yumanugroh_0 | yumannugroho21@gmail.com | |
| 78 | zitnala-0 | zitnialam547@gmail.com | |
| 79 | Arbutus | 5b51a4768b2c370353deec85 | |
| 80 | Atlanta | 5af010f08b2c3703f45133b3 | |
| 81 | Barcelona | 5af0125c8b45130383483ad3 | |
| 82 | Beagirl | 5b8e1e408b451303f398c65c | |

| 83 | Bluebell | 5b51a4c01436d40366ca9a53 | |
| 84 | Cairo | 5af013558b2c3703f451678e | |
| 85 | DC Shoes | 5be2d6518b4513034ead677e | |
| 86 | Dream Back KiD | 5ddf3e1b28fc710301cb951f | |
| 87 | Dublin | 5af012f01436d40316ece4c7 | |
| 88 | EnjoyLi | 5c9351091436d4030152564c | |
| 89 | Gnbu1 | 5dd3affc8b2c370301901b46 | |
| 90 | Golden Bamboo | 5b51a25a8b451303bc8c1ad7 | |
| 91 | Houston | 5af0110c8b451303834829ca | |
| 92 | Istanbul | 5af012681436d40316ecc871 | |
| 93 | Milan | 5af010491436d40316ec71a8 | |
| 94 | Mint | 5b51a26f8b451303bc8c1bb2 | |
| 95 | Morning Glory-43 | 5b51a7c08b451303bc8c716b | |
| 96 | Munich | 5af010cd8b2c3703f4513196 | |
| 97 | NMUM | 5d9b514136b54d03012b9ad9 | |
| 98 | QWA327 | 5e0aa2b08b2c3703019f66fc | |
| 99 | San Diego | 5af012038b45130383483470 | |
| 100 | sanjose | 1510907051958937023-153-3-26193-734915978 | |
| 101 | Star Cluster | 5b51a3131436d40366ca872e | |
| 102 | Taraxacum-50 | 5b51acad1436d40366cb145d | |
| 103 | Tiger Lily-49 | 5b51ac558b451303bc8caf22 | |
| 104 | Vienna | 5af010018b2c3703f450dd4c | |
| 105 | Warsaw | 5af011618b2c3703f45138b9 | |
| 106 | lucky and happy | 5e09cdcae0e2e0098eb668f4 | |
| 107 | luoshuanglin0812 | 5e0dd94ca577533230033073 | |
| 108 | marinaallenshop | 59dba4be15da0767683bb10b | |
| 109 | Tobeno1shop | 59f88ab368788b1a4c181ee5 | |