IN UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AFG MEDIA LTD, <br><br> Plaintiff, <br><br> v. <br><br> POPTREND-OFFICIAL, *et al.*, <br><br> Defendants. | Civil Action No. 2:23-cv-1840 <br><br><br> Jury Trial Requested <br><br> **<u>FILED UNDER SEAL</u>** |

**DECLARATION OF FRASER SMEATON
IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION
FOR ENTRY OF A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

I, Fraser Smeaton, do hereby declare:

1.  I am over eighteen (18) years of age. I have never been convicted of a felony or any criminal offense involving moral turpitude, and I am fully competent to testify to the matters stated herein. I have personal knowledge of every statement made in this Declaration and such statements are true and correct.

2.  I am the Cofounder and CEO of AFG MEDIA LIMITED, a private limited company, existing under the laws of the United Kingdom ("AFG"). AFG owns and operates the Morph-Costumes brand and distributes products under that brand, including the Alien Costume, on its Amazon.com storefront and its website at www.morphsuits.com, described more fully below.

3. I make this declaration in support of Plaintiff's *Ex Parte* Application for Entry of a Temporary Restraining Order and Preliminary Injunction against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on **Schedule "A"** to the Complaint.

4. The Defendants use the interactive commercial Internet websites and Internet based e-commerce stores ("Online Marketplace Platforms" or "OMPs") using the seller identities and store names set forth on **Schedule "A"** to the Complaint.

5. Plaintiff has created and innovated all of its own products, packaging, and advertising. This is a costly effort involving graphic design, industrial design and tooling. It takes time to create, design, test, redesign and retest prototypes. Products are introduced to retailers via tradeshows across the world. This introduction process costs a lot of money but it is a chance to show customers the quality and use of the product. Today, Plaintiff's Morph-Costumes brand encompasses many whimsical and original costumes, including the Alien Costume described below.

6. Plaintiff began its costume design and sales business in 2009 with a very small offering of costumes but has grown today and now offers over 1000 different designs. To date, Plaintiff has sold over two million costumes worldwide under its famous MORPH® brand, and has well over 1.1 million Facebook followers.

7. Genuine goods comprising Plaintiff's Work (as defined below) are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet. Over the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasing important to Plaintiff's overall marketing.

8. Thus, Plaintiff and its authorized distributors expend significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Other costs include print catalog ads, tradeshows, and handing out free samples. Those strategies allow Plaintiff and its authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's brand and the goods sold thereunder. Similarly, Defendants' individual seller's stores are indexed on search engines and compete directly with Plaintiff for space in the search results.

9. Plaintiff developed and sells its Alien Costume ("Plaintiff's Product") under the registered MORPH® trademark ("Plaintiff's Mark"). No. 5398463 for MORPH® for, *inter alia*, "costumes" in class 25, and "retail stores" selling costumes in class 35. A copy of the trademark registration certificate is attached to the Complaint as **Exhibit 3A.** Plaintiff also owns U.S. Copyright Registration No. VA-2-261-150, the subject of which is the 2-D sculpture of Plaintiff's Product ("Plaintiff's Work"). Copies of the Copyright registration and deposit copies are attached to the Complaint as **Exhibit 3B**.

10. The Plaintiff's Product is a whimsical inflatable alien costume that gives the viewer the impression that a person is being carried around by an alien. Below are images of Plaintiff's Products, (ASIN[1] B06XKMP9KX) and (ASIN B09HQTDYLM) which retail for $40.00 to $50.00:

---

[1] Refers to Amazon Standard Identification Number. Each product is assigned a unique ASIN when listed on Amazon.



11.     MORPH® brand Alien Costumes have unique ornamental features, including: a whimsical alien body, face, and profile with dayglow green coloring, and jet black eyes, nose and mouth, hosting a human with black top, royal blue pants, and white sneakers with black laces -- inherently distinct features that function as a source identifier for the Plaintiff's Product. The combined distinct features of the Plaintiff's Work, packaging, instructions, and the Plaintiff's Mark all function as a trade dress so that consumers are certain that Plaintiff is the source of the Alien Costume. Plaintiff is also the owner of various published photographs, videos, artwork, creative text and product instructions appearing on its web site morphsuits.com. Screen shots of the Plaintiff's Amazon Store and Website showing Plaintiff's Work are shown in **Complaint Exhibit 2.**[2]

12.     The unique features of Plaintiff's Product, Plaintiff's Mark and Plaintiff's Work, including the distinct photographs, the design, the instructions, the packaging, and the unique presentation of the product, all comprise Plaintiff's valuable intellectual property ("IP") and all

---

[2] As set forth in the Complaint, and proven in **Composite Exhibit 1**, all of the Defendants are infringing on the federal copyright registration of the Plaintiff's Alien Sculpture ("Infringing Products").

have become distinct in consumer's minds such that consumers associate all of this IP with Plaintiff's Product.

13. Plaintiff's Work, Mark, and Trade Dress has been used in interstate commerce to identify and distinguish Plaintiff's goods. Plaintiff's Work, Mark and Trade Dress has been used by Plaintiff prior in time to Defendants' use of this mark and trade dress. Plaintiff's Work, Mark and Trade Dress have never been assigned or licensed to any of the Defendants in this matter. The Plaintiff's Work, Mark and Trade Dress are symbols of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

14. Due to the success of Plaintiff's Product, Plaintiff has become the target of multiple infringers seeking to profit off the goodwill, reputation, and fame enjoyed by Plaintiff's Mark, Trade Dress, Work, and Plaintiff's Product.

15. Plaintiff has been forced to police the various Internet marketplaces to identify and seek takedowns of unlawful listings for the Infringing Products since allowing the unlawful listings to continue is causing damage to Plaintiff's reputation and bottom line. Some Defendants sell their fake Alien Costume at a bargain basement price that specifically undercuts the controlled retail price of the Alien Costume. Because of the software provided by the various Internet Marketplaces, the lowest priced items are sorted to the top and/or promoted by the software and then purchased by the consumers. Plaintiff's Product is thus ignored. Plaintiff has had varied success in identifying and requesting takedowns of the various unlawful listings and as soon as one is taken down another unlawful listing replaces it.

16. Another major problem with the Internet Marketplaces is that there is a direct and convenient connection between various Chinese and other unidentified manufactures to the Infringing Products. In essence, a counterfeiter in Vietnam or Russia, for example, may order a

crate of Infringing Products from a Chinese manufacturer, have them drop shipped to a fulfillment center in the United States, and then sell the Infringing Products to a US consumer through a Third-Party Service Provider.  The ease of this system encourages knock-offs to flourish.

17.	For these reasons, Plaintiff retained the legal counsel of Ference & Associates LLC ("the Ference firm") to perform the policing of various Internet marketplaces.  During the process, the Ference firm identified many Chinese manufacturers operating on Marketplace Storefronts hosted by the Internet marketplaces. These manufacturers were supplying many of the other identified Defendants with infringing products flooding the Internet marketplaces and damaging Plaintiff's business.  This damage to Plaintiff's business will continue unless Plaintiff receive the sought after restraining order and injunctive relief.

18.	Defendants' sale, distribution, and advertising of the Infringing Product are highly likely to cause consumers to believe that Defendants are offering genuine versions of Plaintiff's Products when in fact they are not.  To illustrate, below are several examples which vividly show that the Infringing Product itself and the manner in which it is marketed is designed to confuse and mislead consumers into believing that they are purchasing Plaintiff's Product or that the Infringing Product is otherwise approved by or sourced from Plaintiff:

| Plaintiff's Copyrighted Sculpture | Listing of Defendant Decalare Showing Infringing Sculpture |
|---|---|
|  |  |
| Plaintiff's Copyrighted Sculpture | Listing of Defendant Poptrend-Official Showing Infringing Sculpture |
|  |  |

Additional photograph comparisons of Plaintiff's Product and the Infringing Products appear in **Exhibit 1** attached to the Complaint.

19. Defendants' actions have resulted in actual confusion in the marketplace between Defendants' Infringing Product and the genuine version of Plaintiff's Products. Some purchasers of Defendants' Infringing Products have written on-line reviews to complain about the quality of the Infringing Product believing same to be a genuine version of Plaintiff's Product.

20. As poorly designed and manufactured products, there is a risk of injury to and disappointment from the confused customers.

21. The Infringing Products threaten to destroy the reputation of high quality that Plaintiff's Products have earned.

22. Defendants do not have, nor have they ever had, the right or authority to use Plaintiff's Mark, Trade Dress, or Work, for any purpose. Defendants' unlawful activities have deprived and continue to deprive Plaintiff of its rights to fair competition. By their activities, Defendants are defrauding Plaintiff and the consuming public for Defendants' benefit. Defendants should not be permitted to continue their unlawful activities, which are causing Plaintiff ongoing irreparable harm. Accordingly, Plaintiff is seeking entry of a temporary restraining order prohibiting Defendants' infringement of the Plaintiff.

23. Given Defendants' copying and therefore infringing on Plaintiff's Work in violation of 17 U.S.C. § 501 (a), the Infringing Products are indistinguishable to consumers, both at the point of sale and post-sale. By using Plaintiff's intellectual property, Defendants have created a false association between their Infringing Products, their Internet e-commerce stores, and Plaintiff. Such false association is in violation of 15 U.S.C. § 1125(a), constitutes unfair competition, infringes on Plaintiff's Mark, and is causing and will continue to cause Plaintiff's irreparable harm and damage.

24. The infringements of Plaintiff's Work deprive Plaintiff of the ability to control the creative content protected by the Copyright Act, it devalues the Plaintiff's Morph® brand by associating it with inferior quality goods, and it undermines the value of the Plaintiff's IP by creating the impression that infringement may be undertaken with impunity which threatens Plaintiff's ability to attract investors and markets for the Plaintiff's Products.

25. I have reviewed **Composite Exhibit 1** and the pictured web listings and upon my information and belief, the Defendants identified in **Schedule "A"** of the Complaint, were and/or are currently manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and or/selling non genuine, infringing versions of Plaintiff's Product and copying and using Plaintiff's Mark, and/or Trade Dress, and/or Plaintiff's Work, or using substantially similar copies of Plaintiff's Work, with the non-genuine, copies of Plaintiff's Product directed to U.S. consumers, including those consumers in Pennsylvania, through their e-commerce stores.

26. None of the identified Defendants are authorized re-sellers of genuine version of Plaintiff's Product. Moreover, none of the identified Defendants are authorized to manufacture, import, export, advertise, offer for sale or sell Plaintiff's Products. Further, Plaintiff never consented or granted permission to any of the identified Defendants to use Plaintiff's Mark, Trade Dress, or Work.

27. I have confirmed that all of the identified products pictured in **Composite Exhibit 1** are infringements of Plaintiff's Product and upon information and belief, the Defendants set forth in **Schedule "A" of the Complaint** were and/or are currently manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling infringing and unfairly competing products with at least one of the Plaintiff's Mark, and/or Trade Dress and/or using Plaintiff's Work, or substantially similar copies of Plaintiff's Work, to sell to U.S. consumers, including those consumers in Pennsylvania, through their Online Marketplace Storefronts. Through visual inspection of Defendants' listings for Infringing Products, it was confirmed that each Defendant is featuring, displaying, and/or using at least one of Plaintiff's Mark, Trade Dress, and/or Work without authorization and that the products that

each Defendant is offering are infringing versions of the Plaintiff's Product. The checkout pages or order forms for the Infringing Products confirm that each Defendant was and/or is still currently offering for sale and/or selling Infringing Products through their respective Merchant Storefronts and User Accounts and that each Defendant provides shipping and/or has actually shipped Infringing products to the United States, including to customers located in Pennsylvania. At checkout, a shipping address located in the Pittsburgh area ("the Pennsylvania Address") in the Western District of Pennsylvania verified that each Defendant provides shipping to the Pennsylvania Address. I inspected the detailed web listings describing the Infringing Products Defendants are offering for sale through the Internet based e-commerce stores operating under each of their respective Seller IDs, and determined the products were not genuine versions of Plaintiff's Products. Further, each of the Defendant's web listing infringes on the Plaintiff's Work.

28. Defendants' actions have caused and will continue to cause, in the event the requested relief is not granted, irreparable harm to Plaintiff's goodwill and reputation as well as to the unassuming consumers who will continue to believe that the Defendants' cheaply produced, inferior, and typically faulty infringing products and knock-offs are produced, authorized, approved, endorsed, or licensed by Plaintiff, when they are not.

29. Defendants' intentional and illegal conduct, including offering for sale and selling inferior infringing and knock-offs into the U.S. and the Commonwealth of Pennsylvania has caused lost profits to Plaintiff and damaged the inherent value of Plaintiff's business and the Plaintiff's Mark, and, by diluting the brand and goodwill, damaging Plaintiff's reputation for providing high quality products, and interfering with Plaintiff's relationships with its customers and authorized resellers, as well as impeding Plaintiff's ability to attract new customers and

business. Defendants are willfully and in bad faith infringing on Plaintiff's Work, thereby unjustly profiting from such activities at Plaintiff's expense.

30. All of the injuries and damages described above are taking place in the United States, including in Pittsburgh, Allegheny County, Pennsylvania.

31. In addition to trying to stop the injuries and damages caused to Plaintiff's business, Plaintiff is also seeking in this lawsuit to protect consumers from being exposed to and purchasing the substandard, faulty, and potentially dangerous knock-offs and infringing products that wrongly indicate their origin as being from Plaintiff or wrongfully use of Plaintiff's Mark, and/or Trade Dress and/or Work.

32. I have worked with Plaintiff's legal counsel in this case to assist them in identifying knock-off products and have provided them with various leads in order to find the various outlets for the infringing and knock-off products. If called upon by the Court, Plaintiff's legal counsel is able to explain additional differences between the genuine version of Plaintiff's Product and the knock-off products and unfairly competing products offered by the identified Defendants.

33. To be sure that none of the Defendants receive advance notice of the relief and remedies requested in Plaintiff's Complaint, or the *Ex Parte* Application for Entry of a Temporary Restraining Order and Preliminary Injunction in this case, neither I nor anybody else at Plaintiff have publicized the filing of this lawsuit.

I declare under penalty of perjury that the foregoing is true and correct.

*Dated: October 23, 2023*

City of Edinburgh, UK

                                          /s/Fraser Smeaton
                                          **FRASER SMEATON**