IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AFG MEDIA LTD,

                            Plaintiff,

v.

POPTREND-OFFICIAL, *et al*.,

                            Defendants.

Civil Action No. 2:23-cv-1840

**FILED UNDER SEAL**

## PLAINTIFF'S *EX PARTE* MOTION FOR AN ORDER AUTHORIZING ALTERNATIVE SERVICE ON DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)

Plaintiff AFG Media Ltd ("Plaintiff") hereby moves this Court on an *ex parte* basis,[1] for an order authorizing alternate service of process on Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on **Schedule "A"** of the Complaint (collectively "Defendants"), brought pursuant to Federal Rule of Civil Procedure 4(f)(3).  In support thereof, Plaintiff submits the following:

---

[1]    Plaintiff is moving for alternate service *ex parte* as Plaintiff has yet to provide Defendants with notice of this action. Contemporaneously herewith, Plaintiff has filed its *Ex Parte* Application for Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("*Ex Parte* Application for Temporary Restraining Order"), together with the supporting Declarations and Exhibits.  The present Motion makes reference to Plaintiff's *Ex Parte* Application for Temporary Restraining Order, and as such, Plaintiff seeks to prevent premature disclosure of that filing. (See Declaration of Stanley D. Ference III in Support of Plaintiff's *Ex Parte* Motion for Order Authorizing Alternate Service of Process on Defendants ["*Ference Dec*."] ¶ 1, n.1, filed herewith.)  However, Plaintiff is filing this Motion so that, in the event Plaintiff's *Ex Parte* Application for Temporary Restraining Order and the instant Motion are granted, Plaintiff can effectuate service of process pursuant to Rule 4 of the Federal Rules of Civil Procedure simultaneously with providing notice of the Court's order on Plaintiff's *Ex Parte* Application for Temporary Restraining Order. (See *id*.)

## I.    INTRODUCTION

Plaintiff is suing Defendants for federal copyright infringement pursuant to 17 U.S.C. §

501(a).  Defendants are using without authorization Plaintiff's copyrighted Alien Costume

("Plaintiff's Work"), while promoting, selling, offering for sale and distributing knock-offs of

Plaintiff's Product in a willful attempt to pass off their knock-off products as genuine versions of

Plaintiff's Products within this district and throughout the United States by operating e-

commerce stores established via at least one of the Internet marketplace websites Amazon.com,

aliexpress.com, eBay.com, Joybuy, Temu, wish.com, and Walmart.com under their Store Names

and Seller Names identified on Schedule "A" of the Complaint (the "Seller IDs").

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests an order

authorizing service of process on Defendants via electronic communication ("e-mail") and via

website publication.  E-mail and website publication service are appropriate and necessary in this

case, because Defendants (1) operate via the Internet, and (2) rely on electronic communications

to operate their businesses.  As such, Plaintiff has the ability to contact Defendants directly and

provide notice of Plaintiff's claims against them electronically via e-mail.  Additionally, Plaintiff

has created a publication website and will be posting copies of the Complaint, Plaintiff's *Ex

Parte* Application for Temporary Restraining Order, this instant Motion, and all other documents

filed in this action.  Plaintiff respectfully submits that an order allowing service of process and

future filings[2] via e-mail and by publication on a designated website will benefit all parties and

the Court by ensuring Defendants receive immediate notice of the pendency of this action and

---

[2]    Fed. R. Civ. P. 5 governs service of pleadings and other papers once service of process has been made.  Service
is not required on any party that fails to appear.  *See* Fed. R. Civ. P. 5(a)(2).  Nonetheless, Plaintiff proposes to
continue to serve pleadings and other papers via e-mail and by posting on a designated website.

allowing this action to move forward expeditiously. Absent the ability to serve Defendants by email and/or website publication, Plaintiff will almost certainly be left without the ability to pursue a remedy.

## II.    STATEMENT OF FACTS

### A.  Defendants Have Valid and Operational Means of Electronic Contact.

Defendants operate Internet-based businesses and use electronic means of communication such that Plaintiff will be able to provide Defendants with notice of this action via e-mail and website publication.  As a practical matter, it is necessary for merchants who operate entirely online, such as Defendants, to provide customers with valid electronic means by which customers may contact the merchants to ask questions about the merchants' products, place orders from the merchants, and receive information from the merchants regarding the shipments of orders.  Further, e-commerce defendants generally must maintain accurate e-mail addresses where their marketplace platforms and payment processor may communicate with them regarding issues related to their e-commerce store accounts and transfer of funds for the payment for goods.  Plaintiff has also created a webpage on www.ferencelawsuit.com ("Plaintiff's Website"), such that anyone accessing Plaintiff's Website will find copies of documents filed in this action.  (See *Ference Dec.*, ¶ 12.)

Amazon.com, Inc., which operates the Amazon.com marketplace maintains contact e-mail addresses for sellers operating via their marketplaces, and based upon past actions, Amazon.com, Inc. identifies these contact e-mail addresses for Defendants at issue upon compliance with a temporary restraining order, such as the temporary restraining order Plaintiff is requesting in the instant case.   (See *Ference Dec.*, ¶ 3.)  Additionally, Defendants operating their respective e-commerce stores via the Internet marketplace website Amazon.com have

provided an electronic form of contact in the form of Amazon's messaging system. (*Id.*) Amazon's messaging system facilitates communication between customers and merchants in the Amazon.com marketplace. (*Id.*)

eBay.com, Inc., which operates the eBay.com marketplace maintains contact e-mail addresses for sellers operating via their marketplaces, and based upon past actions, eBay.com, Inc. identifies these contact e-mail addresses for Defendants at issue upon compliance with a temporary restraining order, such as the temporary restraining order Plaintiff is requesting in the instant case. (See *Ference Dec.*, ¶ 4.) Additionally, Defendants operating their respective e-commerce stores via the Internet marketplace website ebay.com have provided an electronic form of contact in the form of eBay's messaging system. (*Id.*) eBay's messaging system facilitates communication between customers and merchants in the eBay.com marketplace. (*Id.*)

Furthermore, sellers operating via eBay.com use money transfer and retention services with PayPal, Inc. ("PayPal"), as a method to receive monies generated through the sale of Infringing Products. Defendants have provided at least one accurate contact email address to PayPal in order to conduct business via their respective Seller IDs. (*See Ference Dec.*, ¶ 5) Defendants' PayPal account e-mail addresses must necessarily be valid, working e-mail addresses; otherwise, Defendants would not be able to process payments through their PayPal accounts.[3] (See *Id.*) Moreover, pursuant to PayPal's Electronic Communications Delivery Policy (E-Sign Disclosure and Consent), PayPal account holders consent to receive all communication electronically, including via e-mail, and are required to maintain a valid e-mail

---

[3]   See PayPal's Electronic Communications Delivery Policy (E-Sign Disclosure and Consent), available at https://www.paypal.com/us/webapps/mpp/ua/esign-full (last visited October 16, 2023).

address.  If PayPal discovers an e-mail address has become invalid such that electronic communications sent to the e-mail address by PayPal are returned, PayPal may deem the account to be inactive and disable transaction activity until a valid, working e-mail address is provided. (See *Id*.)  Based upon past actions, PayPal identifies these contact e-mail address for all Defendants at issue upon compliance with a temporary restraining order, such as the temporary order Plaintiff is requesting in the instant case. (*Id*.)

Context Logic, Inc., which operates the wish.com website, maintains contact e-mail addresses for sellers operating via Wish.com, and based upon past actions, ContextLogic, Inc. identifies these additional contact e-mail addresses for all Defendants at issue upon compliance with a temporary restraining order, such as the temporary restraining order Plaintiff is requesting in the instant case. (*See Ference Dec.*, ¶ 6).

AliExpress.com ("AliExpress") Messaging Service is an available means for contacting sellers on that online marketplace. (*See Ference Dec.*, ¶ 7) The AliExpress Messaging Service is a system that facilitates communication between customers and merchants in the AliExpress marketplace. (*Id*.) By using the Messaging Service, a customer can communicate with an AliExpress merchant via a unique anonymized electronic mail ("e-mail") address. (*Id*.) This anonymized e-mail alias is treated in the same way as a real e-mail address.[4]  (*Id*.) Additionally, AliExpress allows a customer to see a copy of the message on the Messages Center page in the customer's account. (*Id*.) More importantly, customers are automatically notified when an e-mail message is not delivered to the merchant. (*Id*.)

---

[4]     See How to contact seller, available at
https://service.aliexpress.com/page/knowledge?pageId=37&category=1000022034&knowledge=1060073785&language=en (last visited October 16, 2023).

Walmart.com provides a direct messaging system that facilitates communication between customers and merchants in the Walmart.com marketplace. (*See Ference Dec.*, ¶ 8) By clicking on the contact seller link on the seller's storefront, a customer can communicate with a Walmart merchant via an encrypted email address that the seller can use through their private email address to reach the customer.[5] (*Id.*) Walmart requires the merchant to respond to the customer emails within 48 hours of receiving the message. (*Id.*)

Jingdong E-commerce (Trade) Hong Kong Corporation Limited (registered in Hong Kong) and JD E-Commerce America (registered in California, USA) operate the JoyBuy Marketplace. (*See Ference Dec.*, ¶ 9) JoyBuy Marketplace has agreed with Plaintiff to provide actual notice of the lawsuit to each of its sellers named as defendants in this lawsuit, by electronically transmitting notice of all the court proceedings to each of the defendants operating on the JoyBuy Marketplace platform.  (*Id.*) JoyBuy Marketplace has successfully accomplished this in other lawsuits for Plaintiff and the served defendants have then contacted Plaintiff's counsel to communicate about the lawsuits. (*Id.*)

Whaleco Inc., a Delaware Corporation, which is a wholly owned subsidiary of Pinduoduo Inc. which is owned by PDD Holdings (collectively, "Temu") operate the Temu.com marketplace platform. (*See Ference Dec.*, ¶ 10) Temu provides a direct messaging system that facilitates communication via chat between customers and merchants in the Temu.com marketplace. (*Id.*) By clicking on the contact seller link on the seller's storefront, a customer can communicate by chat directly with the Temu seller. (*Id.*) Chat will confirm that messages have

---

[5]    See Communicate with Marketplace Seller https://www.walmart.com/help/article/marketplace-sellers-on-walmart/33258c6228d94acbbcbdaf6b7b0b616b (last visited October 16, 2023).

been received and answered. (*Id*.) Chat allows the customer to leave a message for later

response. (*Id*.)

Accordingly, each Defendant will be provided with notice of this action electronically by

providing the address to Plaintiff's Website (discussed *supra*) to their corresponding e-mail

addresses and/or direct messaging or inquiry system that Defendants use to conduct their

commercial transactions via the Sellers IDs.  (*Ference Dec.,* ¶ 11)  In this manner, Defendants

will receive a web address at which they can access all electronic filings to view, print, or

download any document filed in the case similar to the court's CM/ECF procedures.

Finally, Plaintiff will be able to provide each Defendant notice of this action via public

announcement on Plaintiff's designated website.  Plaintiff has created a publication website that

will be appearing on [www.ferencelawsuit.com](www.ferencelawsuit.com) ("Plaintiff's Website), whereupon copies of the

Complaint, Plaintiff's *Ex Parte* Application for Temporary Restraining Order, this Motion,

discovery,  and other filings, and orders issued in this action will be posted, such that anyone

accessing Plaintiff's Website will find copies of documents filed in this action similar to the

Court's CM/ECF procedures. (*Ference Dec.*, ¶¶ 11-12.)  The address for Plaintiff's Website will

be provided to Defendants via their known-mail accounts and/or onsite contact forms, and will

be included as part of service of process in this matter. (*Id*.)

**B. Defendants Rely on Electronic Communications.**

Defendants have structured their e-commerce store businesses so that the sole means for

customers to purchase Defendants' goods at issue is by placing an order electronically.

Defendants take and confirm orders online and rely on electronic means to receive a payment.

(*See* Declaration of Dee Odell in Support of Plaintiff's *Ex Parte* Application for Entry of

Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets

[*Odell Dec.* ¶ 2] and Comp. Ex. 1 thereto.)  During the investigation, Plaintiff was able to view

Defendants' Infringing Products, add products to the online shopping cart, proceed to a point of

checkout, add a shipping address in this judicial district and payment information and otherwise

actively exchange data with each Merchant Storefront.   (*Id*.)  Clearly, Defendants rely on

electronic means as reliable forms of contact.

### III.    ARGUMENT

Pursuant to Federal Rule of Civil Procedure 4(h)(2), a foreign partnership or other

unincorporated association may be served with process in any manner prescribed by Rule 4(f) for

serving foreign individuals.  Federal Rule of Civil Procedure 4(f)(3), allows a district court to

authorize an alternate method for service to be affected upon a foreign defendant, provided that it

is not prohibited by international agreement and is reasonably calculated to give notice to the

defendant. In the present matter, alternate service of process via e-mail and website publication

are appropriate given that Defendants have established Internet-based businesses by which they

rely on electronic communications for their operation. Accordingly, this Court should permit

service on Defendants by e-mail and website publication.

**A.  The Court May Authorize Service via Electronic Mail and Website Publication
Pursuant to Federal Rule of Civil Procedure 4(f)(3).**

Fed. R. Civ. P. 4(f)(3) enables a foreign business entity to be served with process using

an alternative method of service so long as the alternative method: (1) "is not prohibited by

international agreement" and (2) "comports with constitutional notions of due process".  *Henry*

*F. Teichmann, Inc. v. Caspian Flat Glass OJSC*, No. 13-cv-458, 2013 WL 1644808 at *1, *2

(W.D. Pa. April 16, 2013) (Hornak, J.).  Notably, "[s]ervice under subsection [4(f)] (3) is neither

a last resort nor extraordinary relief. It is merely one means among several which enables service

of process on an international defendant." *Sulzer Mixpac AG v. Medenstar Indus. Co.,* 312

F.R.D. 329, 330 (S.D.N.Y 2015) (quoting *Advanced Aerofoil Techs., AG v. Todaro,* 2012 U.S.

Dist. LEXIS 12383, at \*1 (S.D.N.Y. Jan. 31, 2012) (internal citations omitted)).  Since third-

party merchants on Internet marketplaces, like Defendants, have been known to use aliases, false

addresses and other incomplete identification information to shield their true identities and there

are, in fact, no physical addresses whatsoever associated with the majority of Defendants' User

Accounts, this is exactly the circumstance where the courts should exercise, as they previously

have exercised, the authority to grant alternative methods of service.  *See Id.* (quoting *Madu,*

*Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,* 265 F.R.D. 106, 115 (S.D.N.Y. 2010) ("The

decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed

to the sound discretion of the district court.") (internal quotation marks omitted)); *see also*

*Ference Dec.,* ¶¶ 3 - 6.

Fed. R. Civ. P. 4(f)(3) permits service in a place not within any judicial district of the

United States[6] "by any internationally agreed means of service that is reasonably calculated to

give notice".  *See Rio Props. v. Rio Intern. Interlink,* 284 F. 3d 1007, 1014 (9th Cir. 2002).  The

Ninth Circuit in *Rio Props.* held, "without hesitation," that e-mail service of an online business

defendant "was constitutionally acceptable."  *Id.* at 1017.  The Court reached this conclusion, in

---

[6]   In the unlikely event a defendant for whom Plaintiff does not have an address was located in the United States,
service would be governed by Fed. R. Civ. P. 4(e)(1), which provides for "following state law for serving a
summons in an action brought in courts of general jurisdiction in the state where the district court is located".
Pa. R. Civ. Pro. 430 provides "[i]f service cannot be made under the applicable rule the plaintiff may move the
court for a special order directing the method of service."  Thus, service by electronic means would also be
sufficient in the event any Defendant is located in the United States.  *See Power Corp. of Canada v. Power*
*Financial*, No. 4:09-cv-0510, 2009 WL 982750 (M.D. Pa., April 13, 2009) (service by email is permitted under
Rule 430 when defendant uses online service that shields owner's identity).

part, because the defendant conducted its business over the Internet, used e-mail regularly in its

business, and encouraged parties to contact it via e-mail. *Id.*

Rule 4 does not require that a party attempt service of process by other methods

enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio*

*Props.,* 284 F. 3d at 1014-15.  As the *Rio Properties* Court explained, Rule 4(f) does not create a

hierarchy of preferred methods of service of process. *Id.* at 1014.  To the contrary, the plain

language of the Rule requires only that service be directed by the court and not be prohibited by

international agreement.  There are no other limitations or requirements. *Id.* Alternative service

under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means

among several by which an international defendant may be served. *Id.*  As such, this Court may

allow Plaintiff to serve the defendants via electronic publication and/or e-mail.

Additionally, the Constitution itself does not mandate that service be effectuated in any

particular way. Rather, Constitutional due process considerations require only that the method of

service selected be "reasonably calculated, under all the circumstances, to apprise interested

parties of the pendency of the action and afford them an opportunity to present their objections."

*Brookshire Bros., Ltd. v. Chiquita Brands Int'l*, Case No. 05-CIV-21962, 2007 WL 1577771, at

*1 (S.D. Fla. May 31, 2007) (quoting *Mullane v. Cent. Hanover Bank & Trust* 10 Co., 339 U.S.

306, 314 (1950)); *see also TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 692 (S.D. Fla. Jan.

11, 2012); *Rio Props., Inc.*, 284 F.3d at 1016.  Accordingly, federal courts have allowed a variety

of alternative service methods, including service by e-mail and publication on a designated

website, where a plaintiff demonstrates the likelihood that the proposed alternative method of

service will notify a defendant of the pendency of the action. *See, e.g., Rio Props., Inc.*, 284 F.3d

at 1017 (holding, "without hesitation," that e-mail service of an online business defendant "was

constitutionally acceptable"); *In re Int'l Telemedia Assocs.*, 245 B.R. 713, 721 (N.D. Ga. 2000)

("If any methods of communication can be reasonably calculated to provide a defendant with

real notice, surely those communication channels utilized and preferred by the defendant himself

must be included among them."); *National Association for Stock Car Auto Racing, Inc. v. Does*,

584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) (in "acknowledging the realities of the twenty-first

century and the information age, the Court determined that the most appropriate place for

publication was [Plaintiff's Website].").

Here, service on Defendants by e-mail and/or by publication on Plaintiff's Website will

satisfy due process by apprising them of the action and giving them the opportunity to answer

Plaintiff's claims. Based upon Plaintiff's investigation, each Defendant has at least one form of

electronic means of contact, demonstrating that this means of contact is not just effective, but the

most reliable means of communicating with that Defendant, and consequently, the most reliable

means of providing Defendants with notice of this action. (*Ference Dec.*, ¶¶ 11 - 12.)  Moreover,

service by publication on Plaintiff's Website will be an additional source of reliability as

Defendants will be able to see copies of the Complaint and all other documents in this matter

electronically via their Internet browser. (*Id.*)

E-mail service on an online business defendant is appropriate and constitutionally

acceptable in a case such as this when the plaintiff has proven that e-mail is the most effective

means of providing the defendant notice of the action. *See Rio Props., Inc.*, 284 F.3d at 1017

(concluding "not only that service of process by e-mail was proper—that is, reasonably

calculated to apprise [the defendant] of the pendency of the action and afford it an opportunity to

respond— but in this case, it was the method of service most likely to reach [the defendant].").

*See also Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn.

2004) ("Under the facts and circumstances presented here, Rule 4(f)(3) clearly authorizes the court to direct service upon defendant by e-mail. The rule is expressly designed to provide courts with broad flexibility in tailoring methods of service to meet the needs of particularly difficult cases. Such flexibility necessarily includes the utilization of modern communication technologies to effect service when warranted by the facts") (citation omitted). The *Rio Properties, Inc.* and *Popular Enters., LLC* courts each determined e-mail service to be appropriate in part because, as in this case, the defendants conducted their businesses online, used e-mail regularly in their businesses, and encouraged parties to contact them via e-mail.  *See Id.*

In cases that are factually similar to this one, a number of Courts have held that alternate forms of service pursuant to Rule 4(f)(3), such as e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Rio Properties, Inc.*, 284 F.3d at 1018; *see also Chanel, Inc. v. Zhixian*, Case No. 09-cv-02835, 2010 WL 1740695, at *3 (W.D. Tenn. March 17, 2010) (e-mail service "reasonably calculated to notify Defendants of the pendency of this action and provide him with an opportunity to present objections."); *TracFone Wireless, Inc.*, 278 F.R.D. at 693 (finding that service of process by e-mail was reasonably calculated to apprise the defendants of the action and give it an opportunity to respond); *Popular Enters., LLC*, 225 F.R.D. at 563 12 (same); *In re Int'l Telemedia Associates*, 245 B.R. at 722 ("A defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules. Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party" (concluding e-mail and facsimile service to be appropriate)); *Chanel, Inc. v. Zhibing*, 2010 WL 1009981, at *4 (stating that e-mail service has the "greatest likelihood"

of reaching e-commerce merchants and noting, "The federal judiciary's own CM/ECF system

alerts parties . . . by e-mail messages." Alternate service via e-mail granted).[7]

This Court has also authorized electronic service of process on merchants on Internet

marketplaces in cases that are factually similar to the present case. *See, e.g., Rapid Slicer v.*

*Buyspry*, No. 19-cv-249 (Order Authorizing Alternative Service entered on March 11, 2019)

(Horan, J.); *Airigan Solutions, LLC v. Babymove*, No. 19-cv-166 (Order Authorizing Alternative

---

[7]   Courts in the Southern District of New York are also very experienced in handling cases against merchants on Internet marketplaces and have consistently permitted alternate electronic service. *See, e.g. Intenze Products, Inc. v. 1586, et al.,* No. 18-cv-4611-RWS (S.D.N.Y. May 24, 2018)*; Allstar Marketing Group, LLC v. 158, et al.,* No. 18-cv-4101-GHW, Dkt. 22 (S.D.N.Y. May 17, 2018)*; William Mark Corporation v. 1&cc, et al.,* No. 18-cv-3889-RA, Dkt. 18 (S.D.N.Y. May 2, 2018)*; WOW Virtual Reality, Inc. v. Bienbest, et al.,* No. 18-cv-3305-VEC, Dkt. 9 (S.D.N.Y. April 16, 2018)*; Ideavillage Products Corp. v. abc789456, et al.,* No. 18-cv-2962-NRB, Dkt. 11 (S.D.N.Y. April 11, 2018)*; Ideavillage Products Corp. v. Aarhus, et al.,* No. 18-cv-2739-JGK, Dkt. 22 (S.D.N.Y. March 28, 2018)*; Moose Toys Pty Ltd. et al., v. 963, et al.,* No. 18-cv-2187-VEC, Dkt. 16 (S.D.N.Y. April 2, 2018)*; Off-White, LLC v. A445995685, et al.,* No. 18-cv-2009-LGS, Dkt. 5 (S.D.N.Y. March 27, 2018)*; Spin Master Ltd. and Spin Master, Inc. v. 158, et al.,* No. 18-cv-1774-PAE, Dkt. 18 (Feb. 27, 2018)*; JLM Couture, Inc. v. Aimibridal, et al.,* No. 18-cv-1565-JMF, Dkt. 18 (S.D.N.Y. Feb. 21, 2018)*; Spin Master Ltd. and Spin Master, Inc. v. Alisy, et al.,* No. 18-cv-543-PGG, Dkt. 16 (S.D.N.Y. Jan. 22, 2018)*; WowWee Group Limited, et al. v. Meirly, et al.,* No. 18-cv-706-AJN, Dkt. 11 (S.D.N.Y. Jan. 26, 2018)*; Ideavillage Products Corp. v. Dongguan Shipai Loofah Sponge Commodity Factory, et al.,* No. 18-cv-901-PGG, Dkt. 20 (S.D.N.Y. Feb. 1, 2018)*; WowWee Group Limited, et al. v. A249345157, et al,* No. 17-cv-9358-VEC, Dkt. 18 (S.D.N.Y. Dec. 11, 2017)*; HICKIES, Inc. v. Shop1668638 Store, et al.,* No. 17-cv-9101-ER, Dkt. 14 (S.D.N.Y. Dec. 6, 2017)*; Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.,* No. 17-cv-9099-JMF, Dkt. 19 (S.D.N.Y. Nov. 27, 2017); *Ideavillage Products Corp. v. Shenzhen City Poly Hui Foreign Trade Co., Ltd., et al.,* No. 17-cv-8704-JGK. .(S.D.N.Y. May 24, 2017)*; Moose Toys Pty LTD et al. v. Guangzhou Junwei Trading Company d/b/a Backgroundshop et al.,* No. 17-cv-2561-LAK, Dkt. 12 (S.D.N.Y. May 11, 2017)*; Rovio Entertainment Ltd. and Rovio Animation OY v. Angel Baby Factory d/b/a Angelbabyfactory et al.,* No. 17- cv-1840-KPF, Dkt. 11 (S.D.N.Y. March 27, 2017); *Ontel Products Corporation v. Airbrushpainting Makeup Store a/k/a Airbrushespainting et al.,* No. 17-cv-871-KBF, Dkt. 20 (S.D.N.Y. Feb. 6, 2017)*; Ideavillage Products Corp. v. Bling Boutique Store, et al.,* No. 16-cv-09039-KMW, Dkt. 9 (S.D.N.Y. Nov. 21, 2016); *Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al,* No. 1:15-cv-03784-PKC (S.D.N.Y. June 23, 2015) (unpublished); *Chanel, Inc. v. Conklin Fashions, Inc.*, No. 3:15-cv-893-MAD/DEP, 2015 U.S. Dist. LEXIS 109886, at *10-13 (N.D.N.Y. Aug. 14, 2015)*; Belstaff Grp. SA v. Doe, No. 15-cv-2242-PKC/MHD,* 2015 U.S. Dist. LEXIS 178124, at *2 (S.D.N.Y. June 18, 2015); *AW Licensing, LLC v. Bao*, No. 15-cv-1373, 2015 U.S. Dist. LEXIS 177101, at *2-3 (S.D.N.Y. Apr. 1, 2015)*; Klipsch Grp., Inc. v. Big Box Store Ltd.,* No. 1:12-cv-06283-VSB, 2012 U.S. Dist. LEXIS 153137, at *3-4 (S.D.N.Y. Oct. 24, 2012); *True Religion Apparel, Inc. et al. v. Xiaokang Lee et al.*, No. 1:11-cv-08242-HB (S.D.N.Y. Nov. 15, 2011) (unpublished)*; N. Face Apparel Corp. v. Fujian Sharing Imp. & Exp. Ltd. Co.*, No. 1:10- cv-1630-AKH, 2011 U.S. Dist. LEXIS 158807 (S.D.N.Y. June 24, 2011).

Service entered on February 14, 2019) (Fischer, J.); and *Airigan Solutions, LLC v.*

*Artifacts_Selling,* No. 18-cv-1462 (Order Authorizing Alternative Service entered on November

2, 2018) (Fischer, J.).  Plaintiff submits that allowing e-mail service in the present case is

appropriate and comports with constitutional notions of due process, particularly given

Defendants' decision to conduct their illegal businesses using the Internet and utilizing e-mail as

a primary means of communication.

Additionally, service of a defendant by publication on a designated website,**8** such as

Plaintiff's Website, has been deemed appropriate service "so long as the proposed publication is

'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections.'"  *National Association*

*for Stock Car Auto Racing, Inc. v. Does,* 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) (quoting

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 315-16 (1950)).  In *National*

*Association for Stock Car Auto Racing, Inc. v. Does,* the United States District Court for the

Western District of North Carolina determined that the plaintiff could serve "Doe" defendants

and apprise those defendants of a pending preliminary injunction hearing by publishing on the

plaintiff's website.  *Id.*

Accordingly, Plaintiff has created a publication website on www.ferencelaw.com

whereon copies of the Complaint, Plaintiff's *Ex Parte* Application for Temporary Restraining

Order, this instant Motion, discovery, and other documents filed in this action will be posted.

---

8    The Ference firm is prepared to provide notice via website publication if permitted by the Court. Through the
     email addresses received from the Third-Party Service Providers and Financial Institutions, Ference would
     provide the named Defendants with a link to a web page accessible at www.ferencelawsuit.com that includes all
     of the relevant filings for the lawsuit.  *See Ference Dec.*, ¶¶ 11 - 12.

(*Ference Dec.*, ¶¶ 11 - 12).  The address for Plaintiff's Website will be included as part of

service of process in this matter.  (*Id.*)  Posting the Summonses, Complaint, and Plaintiff's *Ex*

*Parte* Application for Temporary Restraining Order on Plaintiff's Website will provide notice

sufficient to meet the due process requirements for service of process and notice pursuant to

Federal Rule of Civil Procedure 4, apprise Defendants of the pendency of this action, and afford

Defendants and any other interest parties an opportunity to present their answers and objection.

### B.  E-mail and Publication Service Are Not Prohibited by International Agreement.

Service via e-mail and website publication is not prohibited by international agreement.

Based upon the information contained on Defendants' actual e-commerce marketplace stores,

such as shipping information, and the data provided thereunder, Plaintiff has good cause to

suspect some Defendants may be residing in the People's Republic of China ("China"), or other

foreign jurisdictions, and/or redistribute products from sources in those locations.  (*Ference Dec.*

¶ 13.)  Both China and the United States are signatories to the Hague Convention on the Service

Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Hague

Service Convention").  (*See Ference Dec.* ¶ 14 and Comp. Ex. 1 thereto, Hague Service

Convention and list of signatory Members.)  However, the Hague Service Convention does not

preclude the Court from authorizing service of process via e-mail or website publication.

Alternative means of service, such as e-mail and website publication, are not prohibited

by the Hague Service Convention where a signatory nation has not expressly objected to those

means. *See Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, Case No. 15-cv-20590-FAM, 2015 U.S.

Dist. LEXIS 122000 (S.D. Fla. Sept. 14, 2015) (noting that an objection to the alternative forms

of service set forth in the Hague Convention is limited to the forms of service expressly objected

to).  Article 10 to the Hague Service Convention allows service of process through means other

than a signatory's Central Authority, such as "postal channels" and "judicial officers," provided

the State of destination does not object to those means. *See* Hague Convention, Art. 10, 20 U. S.

T. 361 (1969). China has objected to the alternative means of service outlined in Article 10 of the

Convention.  (*Ference Dec*., ¶ 14.)  However, that objection is specifically limited to the means

of service enumerated in Article 10, and China has not expressly objected to service via e-mail or

website publication.  (*See id*. and Comp. Ex. 1 thereto, which includes a true and correct printout

of China's Declaration/Reservation/Notification in regards to the Hague Convention.) Because

the declaration to the Hague Convention filed by China does not object to e-mail and website

publication service, "a court acting under Rule 4(f)(3) remains free to order alternative means of

service that are not specifically referenced in Article [10]." *Gurung v. Malhotra*, 279 F.R.D. 215,

219 (S.D.N.Y. 2011); *see also WhosHere, Inc. v. Orun*, Case No. 13-cv-00526-AJT, 2014 U.S.

Dist. LEXIS 22084, at *9 (E.D. Va. Feb. 20, 2014) (authorizing e-mail service, noting objection

to means of service listed in Article 10 "is specifically limited to the enumerated means of

service in Article 10.").  Moreover, an objection to the alternative means of service provided in

Article 10 does not represent a per se objection to other forms of service, such e-mail or website

publication.  *See In re S. African Apartheid Litig*., 643 F. Supp. 2d 423, 434, 437 (S.D.N.Y.

2009) (requiring express objection to alternative method of service by signatory nation to

preclude that particular means of service). Consequently, China's objections to the means of

alternative service provided in Article 10 are no bar to court-directed service and do not prevent

this Court from authorizing alternative service of process via e-mail or website publication. *See,*

*e.g., Gurung*, 279 F.R.D. at 220 (approving service of process on foreign defendants via e-mail

despite India's objection to Article 10, stating that an "objection to service through postal

channels does not amount to an express rejection of service via electronic mail."); *Stat Med.*

*Devices, Inc.*, 2015 U.S. Dist. LEXIS 122000, at *8-9 (permitting service of process on foreign

defendants via e-mail and substituted service on domestic counsel despite Poland's objection to

Article 10, noting "This Court and many other federal courts have permitted service by

electronic mail and determined that an objection to Article 10 of the Hague Convention . . . does

not equate to an express objection to service via electronic mail."); *FTC v. PCCare247 Inc.*, Case

No. 12-cv-7189-PAE, 2013 U.S. Dist. LEXIS 31969, at *10 (S.D.N.Y. March 7, 2013)

(authorizing service of process via e-mail and Facebook, explaining that "Numerous courts have

held that service by email does not violate any international agreement where the objections of

the recipient nation are limited to those means enumerated in Article 10."); *WhosHere, Inc.,* 2014

U.S. Dist. LEXIS 22084 (authorizing service of process on foreign defendants via e-mail despite

Turkey's objection to Article 10); *Richmond 17 Techs., Inc. v. Aumtech Bus. Solutions*, Case No.

11-CV-02460-LHK, 2011 U.S. Dist. LEXIS 71269 (N.D. Cal. July 1, 2011) ("[N]umerous courts

have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies.

This is true even in cases involving countries that, like India, have objected to the alternative

forms of service permitted under Article 10 of the Hague Convention.").

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant the present

motion and authorize service of the Summonses, the Complaint, discovery, and future filings in

this matter upon each Defendant in this action:

(1) via e-mail by providing the address to Plaintiff's Website to Defendants via (i) the e-

mail accounts provided by Defendants as part of the data related to their respective e-commerce

stores, or (ii) via the e-commerce marketplace for each of the e-commerce stores; or

(2) via website publication by posting a copy of the Summonses, Complaint, Plaintiff's

*Ex Parte* Application for Temporary Restraining Order, discovery, and all filings in this matter

on Plaintiff's Website appearing on www.ferencelawsuit.com.

A Proposed Order granting this motion is submitted herewith.

Respectfully submitted,

Dated: October 23, 2023            /s/ Stanley D. Ference III
                                         Stanley D. Ference III
                                         Pa. ID No. 59899
                                         courts@ferencelaw.com

Brian Samuel Malkin
Pa. ID No. 70448
bmalkin@ferencelaw.com

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 – Telephone
(412) 741-9292 – Facsimile

Attorneys for Plaintiff