IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

AFG MEDIA LTD,

                 Plaintiff,

     v.

POPTREND-OFFICIAL, ET AL.,

                 Defendants.

Civil Action No. 2:23-cv-1840

Hon. William S. Stickman IV

**OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
AND REQUEST TO IMMEDIATELY DISSOLVE
(1) TEMPORARY RESTRAINING ORDER
AND (2) ORDER RESTRAINING ASSETS
<u>AND MERCHANT STOREFRONTS</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

I.     FACTUAL AND PROCEDURAL BACKGROUND ........................................... 3
    A.    Relevant Facts ...................................................................................... 3
    B.    Procedural History ................................................................................ 5

II.    THIS COURT LACKS JURISDICTION OVER THE SELECTED
    DEFENDANTS BECAUSE THE SELECTED DEFENDANTS HAVE NOT
    BEEN PROPERLY SERVED ........................................................................... 7
    A.    Formal Service of Process Is Required for the Issuance of an Enforceable
         Preliminary Injunction ......................................................................... 7
    B.    The Selected Defendants Have Not Been Served with Adequate Process ............ 8
         1.    The Hague Convention Applies Because Plaintiff Can Take
              Reasonable Efforts to Find Selected Defendants' Physical
              Addresses ................................................................................ 9
         2.    Plaintiff Failed to Serve Selected Defendants Properly Under the
              Hague Service Convention ...................................................... 11

III.    PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION AS TO
    SELECTED DEFENDANTS ......................................................................... 14
    A.    Legal Standard ................................................................................... 14
    B.    Plaintiff Has Not Established a Likelihood of Success on the Merits ................. 15
         1.    Plaintiff's Copyright Is Invalid ............................................. 16
         2.    Even if Valid, Selected Defendants Did Not Copy Plaintiff's
              Copyrighted Design ............................................................... 18
    C.    Plaintiff Has Not and Cannot Show any Risk of Irreparable Harm ..................... 19
    D.    The Balance of Harms Tilts Heavily Against Injunctive Relief and in
         Favor of the Selected Defendants ....................................................... 21

IV.    THE RELIEF SOUGHT BY THE PRELIMINARY INJUNCTION IS
    OVERBROAD AND NOT TAILORED TO THE HARM ALLEGED
    SUFFERED BY PLAINTIFF ........................................................................ 23

V.      THE AMOUNT OF PLAINTIFF'S BOND SHOULD BE INCREASED TO AT
        LEAST $20 MILLION TO ACCOUNT FOR THE HARM SUFFERED BY THE
        SELECTED DEFENDANTS ............................................................................................ 26

VI.     THE TEMPORARY RESTRAINING ORDER AND ORDER RESTRAINING
        ASSETS AND MERCHANT STOREFRONTS SHOULD BE VACATED AND
        PLAINTIFF'S BOND SHOULD BE FORFEITED ........................................................... 28

CONCLUSION ........................................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Other Authorities**

*3M Co. v. Christian Investments LLC*,
2011 WL 3678144 (E.D. Va. Aug. 19, 2011) ........................................................... 7

*Advanced Access Content Sys. Licensing Admin., LLC v. Shen*,
2018 WL 4757939 (S.D.N.Y. Sept. 30, 2018) ......................................................... 9

*Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*,
334 F.R.D. 465 (D. Mass. 2020) ............................................................................. 13

*Burda Media, Inc. v. Viertel*,
417 F.3d 292 (2d Cir. 2005) .................................................................................... 12

*Burns v. First. Am. Trustee Servicing Solutions, LLC*,
No. 11–0023, 2011 WL 175503 (N.D. Cal. Jan. 19, 2011) ...................................... 7

*Carty v. R.I. Dept. of Corrections*,
198 F.R.D. 18 (D.R.I. 2000) ..................................................................................... 7

*Celebration Intern., Inc. v. Chosun Intern., Inc.*,
234 F. Supp. 2d 905 (S.D. Ind. 2002) ............................................................... 19, 20

*Compass Bank v. Katz*,
287 F.R.D. 392 (S.D. Tex. 2012) ............................................................................ 10

*CRS Recovery, Inc. v. Laxton*,
No. C 06-7093 CW, 2008 WL 11383537 (N.D. Cal. Jan. 8, 2008) ........................ 13

*Digital Dream Labs, LLC. v. Living Tech. (Shenzhen) Co.*,
587 F. Supp. 3d 305 (W.D. Pa. 2022) ..................................................................... 19

*eBay Inc. v. MercExhange, L.L.C.*,
547 U.S. 388 (2006) ................................................................................................ 19

*Esquire, Inc. v. Ringer*,
591 F.2d 796 (D.C. Cir. 1978) ................................................................................ 16

*Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*,
480 F. Supp. 3d 977 (N.D. Cal. 2020) .................................................................... 13

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*,
　499 U.S. 340 (1991) ...................................................................................... 15

*Frank's GMC Truck Center, Inc. v. Gen. Motors Corp.*,
　847 F.2d 100 (3d Cir. 1988) ..................................................................... 20, 22

*Gianni Cereda Fabrics, Inc. v. Bazaar Fabrics, Inc.*,
　335 F. Supp. 278 (S.D.N.Y.1971) .................................................................. 19

*Google LLC v. Oracle Am., Inc.*,
　141 S. Ct. 1183 (2021) .................................................................................. 18

*Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*,
　864 F. Supp. 2d 316 (E.D. Pa. 2012) ........................................................ 15, 19

*Habas Sinai Ve Tibbi Gazlar Istihsal A.S. v. Int'l Tech. & Knowledge Co.*,
　2019 WL 7049504 (W.D. Pa. Dec. 23, 2019) ................................................ 13

*Hayward Indus., Inc. v. CompuPool Prod.*,
　2023 WL 3736216 (D.N.J. May 31, 2023) ..................................................... 10

*Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*,
　685 F.2d 78 (3d Cir. 1982) ........................................................................... 23

*In re Revel AC*,
　802 F.3d 558 (3d Cir. 2015) .......................................................................... 15

*Instant Air Freight Co. v. C.F. Air Freight*,
　882 F.2d 797 (3d Cir. 1989) ..................................................................... 15, 27

*Kelly Toys Holdings, LLC. v. Top Dep't Store*,
　No. 22 Civ. 558, 2022 WL 3701216 (S.D.N.Y. Aug. 26, 2022) ...................... 10

*Lakner v. Balke*,
　No. 08–cv–1791, 2008 WL 4473916 n.1 (S.D. Cal. Oct. 2, 2008) ..................... 7

*Lanard Toys Ltd. v. Dolgencorp LLC*,
　958 F.3d 1337 (Fed. Cir. 2020) ..................................................................... 16

*Leone v. Towanda Borough*,
　No. CIV.A. 3:12-0429, 2012 WL 1123958 (M.D. Pa. Apr. 4, 2012) .................. 6

*Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on
　Schedule "A"*,
　391 F. Supp. 3d 816 (N.D. Ill. 2019) ............................................................ 13

*Majorica, S.A. v. R.H. Macy & Co.*,
    762 F.2d 7 (2nd Cir.1985) ........................................................................ 19

*Mallet and Company Inc. v. Lacayo*,
    16 F.4th 364 (3d Cir. 2021) ........................................................... passim

*Mapping Your Future, Inc. v. Mapping Your Future Servs., Ltd.*,
    266 F.R.D. 305 (D.S.D. 2009) .................................................................. 7

*Mark v. Shui–Kuen*,
    1986 WL 11567 (S.D.N.Y. Oct. 8, 1986) .............................................. 8

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) ............................................................................... 23

*Norris Indus., Inc. v. Int'l Tel. & Tel. Corp.*,
    696 F.2d 918 (11th Cir. 1983) .............................................................. 16

*North Face Apparel Corp. v. TC Fashions, Inc.*,
    2006 WL 838993 (S.D.N.Y. Mar. 30, 2006) .......................................... 7

*Nutrasweet Company v. Vit–Mar Enterprises*,
    176 F.3d 151 (3d Cir.1999) ............................................................ 15, 19

*Opella v. Rullan*,
    2011 WL 2600707 (S.D. Fla. June 29, 2011) ...................................... 10

*Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*,
    494 F. Supp. 3d 404 (N.D. Tex. 2020) ................................................ 13

*Progressive Se. Ins. Co. v. J & P Transp.*,
    2011 WL 2672565 (N.D. Ind. July 8, 2011) ........................................ 10

*R.M.S. Titanic, Inc. v. Haver*,
    171 F.3d 943 (4th Cir. 1999) .................................................................. 7

*Rice v. Electrolux Home Products, Inc.*,
    No. 4:15-CV-00371, 2018 WL 4964076 (M.D. Pa. Oct. 15, 2018) ........ 13

*RSM Prod. Corp. v. Fridman*, 06 CIV. 11512 (DLC),
    2007 WL 1515068 (S.D.N.Y. May 24, 2007) ...................................... 12

*Safavieh Intl, LLC v. Chengdu Junsen Fengrui Tech. Co.-Tao Shen*,
    No. 23 CIV. 3960 (CM), 2023 WL 3977505 (S.D.N.Y. June 13, 2023) ...... 13

*Sangui Biotech Intern., Inc. v. Kappes*,
  179 F. Supp. 2d 1240 (D. Colo. 2002) ...................................................................... 7

*Schmidt v. Lessard*,
  414 U.S. 473 (1974) ................................................................................................... 23

*Schuh v. Michigan Dep't of Corrections*,
  No. 1:09cv982, 2010 WL 3648876 (W.D. Mich. July 26, 2010) .............................. 7

*SeaCube Containers LLC v. Compass Containers & Shipping Services Ltda.*,
  427 F. Supp. 3d 497 (S.D.N.Y. 2019) ...................................................................... 12

*Smart Study Co. v. Acuteye-Us*,
  620 F. Supp. 3d 1382 (S.D.N.Y. 2022) ................................................... 9, 10, 12, 14

*Tanksley v. Daniels*,
  902 F.3d 165 (3d Cir. 2018) ...................................................................................... 18

*TD Bank N.A. v. Hill*,
  928 F.3d 259 (3d Cir. 2019) ...................................................................................... 19

*Universal Licensing Corp. v. Paola del Lungo, S.p.A.*,
  293 F.3d 579 (2d Cir. 2002) ....................................................................................... 7

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  487 U.S. 694 (1988) ........................................................................................... 8, 9, 11

*Water Splash, Inc. v. Menon*,
  137 S. Ct. 1504 (2017) .......................................................................................... 8, 11

*Zuru (Singapore) Pte., Ltd. v. Individuals Identified on Schedule A Hereto*,
  No. 22 Civ. 2483, 2022 WL 14872617 (S.D.N.Y. Oct. 26, 2022) ........................... 10

**Statutes**

17 U.S.C. § 502(a) ........................................................................................................... 15

**Rules**

Fed. R. Civ. P. 4 ..................................................................................................... 6, 7, 8, 13

Fed. R. Civ. P. 65 ................................................................................................. 6, 7, 23, 26

**Other Authorities**

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in
   Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ..................................................... 9

**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND REQUEST TO IMMEDIATELY DISSOLVE (1) TEMPORARY RESTRAINING ORDER AND (2) ORDER RESTRAINING ASSETS AND MERCHANT STOREFRONTS**

Selected Defendants Poptrend-Official (Defendant No. 1 on Schedule A to Complaint ("Schedule A")); Decalare (Schedule A, Defendant No. 5); Easy-Fit (Schedule A, Defendant No. 6); Hacosoon Flagship Store (Schedule A, Defendant No. 8); Hacosoon Shop (Schedule A, Defendant No. 9); Stegosaurus (Schedule A, Defendant No. 17); and YEAHBEER store (Schedule A, Defendant No. 21) (collectively, "Selected Defendants"[1]), by and through their undersigned counsel, file the following Opposition to the Motion for Preliminary Injunction filed by Plaintiff AFG Media, Ltd. ("Motion").

## INTRODUCTION

This case is one of a growing number of cases filed in recent years, each of which follows a consistent pattern.[2] A plaintiff purporting to own certain intellectual property sues large groups of foreign defendants for infringement. The plaintiff institutes the case *ex parte*, seeking first a restraint on defendants' internet stores, a freezing of defendants' accounts and then a preliminary injunction. Anticipating that the majority of defendants—foreign businesses—may not realize immediately that they have been sued, or are unfamiliar with the American legal system—the

---

[1] Selected Defendants herein appear solely to defend against Plaintiff's request for a preliminary injunction and this Opposition is filed without waiver of Selected Defendants' position that they are not subject to the personal jurisdiction of this Court. By their appearance herein, Selected Defendants do not concede that this Court has jurisdiction over them and do not waive any defense provided by Rule 12(b)(1), 12(b)(6), or on any other basis.

[2] *See* "The counterfeit lawsuits that scoop up hundreds of Chinese Amazon sellers at once," Zeyi Yang, MIT Technology Review (June 20, 2023) ("US law firms…have been putting together mass intellectual-property cases …, suing hundreds of sellers on Amazon or other platforms at the same time for selling counterfeit goods.…. One thing they have in common is that multiple defendants are sued at once, and the defendants' identities are kept hidden…. [According to one lawyer representing defendants in such suits,] 'It started as a normal way to defend intellectual-property rights,'…. But over the years, [the attorney] has witnessed the IP violation claims getting increasingly baseless. 'It doesn't matter if [the claims] have any merits—you can just sue [the sellers], freeze their accounts, and force them to negotiate with you to take their money back.'").

plaintiff moves for default judgment, hoping that most of these foreign defendants will simply settle or take the default.

The Selected Defendants are among the latest such entities to be swept up in such a case. Importantly, however, the Selected Defendants are not counterfeiters as alleged by AFG, but are well-established Amazon storefronts that have independently developed the products implicated by Plaintiff's claim. The Selected Defendants have built solid reputations and are highly ranked Amazon sellers (indeed, they are each ranked significantly higher than Plaintiff) in their years as Amazon retailers (ranging from four to ten years). (*See* Declaration of Liu Ping ("Liu Decl.") at ¶ 3; *see also* Declaration of Wang Weiwei ("Wang Decl.") at ¶ 3; Declaration of Zhou Qinbin ("Zhou Decl.") at ¶ 3; Declaration of Zeng Fengyong ("Zeng Decl.") at ¶ 3; Declaration of Zhang Hongzhu ("Zhang Decl.") at ¶ 3; Declaration of Zhong Lei ("Zhong Decl.") at ¶¶ 3; Declaration of Jin Benfang ("Jin Decl.") at ¶ 3.)

For the following reasons (among others), Plaintiff is not entitled to the injunctive relief it seeks

- *First*, the Selected Defendants—companies located in China with publicly available physical addresses—have not been adequately served with process under the Hague Convention, and accordingly, this Court lacks the personal jurisdiction over Selected Defendants required to issue a preliminary injunction.

- *Second*, Plaintiff has not established a likelihood of success on the merits, as Plaintiff's design is not subject to copyright protection for two reasons: (i) it is a useful article with no separable copyrightable features, and (ii) the Selected Defendants did not, in fact, copy Plaintiff's design.

- *Third*, Plaintiff cannot establish the irreparable harm required to secure injunctive relief, most notably because the Selected Defendants have been selling the product at issue since March 15, 2019. (**Exhibits 2, 3** hereto.) Having taken no action for at least five years, Plaintiff's belated claims of imminent and irreparable harm ring hollow (to say nothing of the fact that no significant sales of the costumes at issue are likely until the 2024 Halloween season). Moreover, Plaintiff's concerns with the loss of goodwill or reputation are unsubstantiated, as the Selected Defendants' allegedly infringing products bear ***higher*** customer ratings than those of Plaintiff's products, and the Selected Defendants themselves are more highly ranked sellers than Plaintiff. (*E.g.*, **Exhibit 1** hereto.)

- *Fourth*, even if Plaintiff were able to establish that injunctive relief were warranted as against Selected Defendants, the relief it demands goes far beyond the allegedly unlawful conduct to preclude the Selected Defendants from **lawfully** selling hundreds of products wholly unrelated to this litigation, including massage guns and home decor.

In effect, Plaintiff is seeking to—and by virtue of the temporary restraining order (TRO) currently in place, is in fact—eject the Selected Defendants from the marketplace at large. Indeed, the account freezes implemented following the Court's entry of the TRO are already threatening the survival of each of the Selected Defendants' businesses. On this point, the Selected Defendants respectfully request that the Court vacate the TRO immediately, to be effective upon the denial of Plaintiff's Motion. At a minimum, should any injunction issue, Selected Defendants submit that the $5,000 bond imposed by the Court in connection with the TRO is woefully insufficient to address the likely harm to Selected Defendants, and request that the Court reconsider the bond amount that Plaintiff is required to post.

As a non-resident of the Commonwealth of Pennsylvania, this Court's temporary restraining order and asset restraint has unreasonably and inequitably halted Selected Defendants' access to their Amazon accounts, and has caused, and is continuing to cause them irreparable harm. For the reasons set forth below, Selected Defendants respectfully request that the Court vacate the temporary restraining order and deny Plaintiff's request for a preliminary injunction as against Selected Defendants.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Relevant Facts

Plaintiff possesses Copyright Registration No. VA 2-261-150, with an effective date of registration of September 16, 2020.  (Ex. 3B to Complaint.)  The title of Plaintiff's work is "Carried by Alien 'Pick me Up' Inflatable Costume" ("Plaintiff's Design").

The Selected Defendants are independently owned Chinese entities that operate seven Amazon.com storefronts. Each storefront is located in China, with addresses available on the Amazon storefront interface, as follows:

- **Poptrend-Official**: Room 1002, 10th Floor, Zhongxing Building, Xingxing Community, Xinqiao Street, Baoan District, Shenzhen, Guangdong 518105 China (available at https://www.amazon.com/sp?ie=UTF8&seller=A33BMWTKYKIOJL&asin=B09SCVB94X&ref_=dp_merchant_link&isAmazonFulfilled=1)

- **Decalare**: 1025(E), No. 5 Golf Avenue, Guangpei Community, Guanlan Street, Longhua District, Shenzhen, Guangdong 518000 China (available at https://www.amazon.com/sp?ie=UTF8&seller=A14XN8BPYZV8OO&asin=B0893FJFJR&ref_=dp_merchant_link&isAmazonFulfilled=1)

- **Easy-Fit**: 5603A, 56th Floor, SEG Plaza, Huaqiang North Road, Huaqiang North Street, Futian District, Shenzhen 518000 China (available at https://www.amazon.com/sp?ie=UTF8&seller=A3FYKOHW6MEN36&isAmazonFulfilled=1&asin=B083L8RNJR&ref_=olp_merch_name_4)

- **Hacosoon Flagship Store**: 1st Floor, 13 Cao Lang Street, Zhenxingwei, Tangxia Town, Dongguan, Guangdong 523720 China (available at https://www.amazon.com/sp?ie=UTF8&seller=A2E7OGP441SC0M&asin=B07T4VV9SC&ref_=dp_merchant_link&isAmazonFulfilled=1)

- **Hacosoon Shop**: Room 301, No. 3, Qingfeng 1st Road, 2nd Lane, Baiyun district, Guangzhou, Guangdong 510430 China (available at https://www.amazon.com/sp?ie=UTF8&seller=A27GOAX4KXJA22&asin=B0CBLXSPWQ&ref_=dp_merchant_link&isAmazonFulfilled=1)

- **Stegosaurus**: 501, Unit 8, Building 2, Xingxing Commercial Street, Shangde Road, Xingxing Community, Xinqiao Street, Baoan District, Shenzhen, Guangdong 518125 China (available at https://www.amazon.com/sp?ie=UTF8&seller=A6KRJRJHT6G0R&asin=B0C2Z5CRCN&ref_=dp_merchant_link&isAmazonFulfilled=1)

- **YEAHBEER store**: No. 9, Shangliutun, Zhongzhou Village, Zhangmu Town, Qintang District, Guigang, Yulin City, Guangxi, 53700 China (available at https://www.amazon.com/sp?ie=UTF8&seller=A2YOU85DCOCIGS&asin=B0CK7YC57X&ref_=dp_merchant_link&isAmazonFulfilled=1)

(*See* **Exhibits 4-10** hereto.)

Apart from the allegedly infringing costume at issue, each storefront sells a number of other products, including, for example, massage guns and inflatable home decorations, none of

which are implicated by this litigation. (*See* Liu Decl. ¶¶ 2, 21; Wang Decl. ¶¶ 2, 20; Zhou Decl.

¶¶ 2, 21; Zeng Decl. ¶¶ 2, 20; Zhang Decl. ¶¶ 2, 27; Zhong Decl. ¶¶ 2, 21; Jin Decl. ¶¶ 2, 6.) In

total, the seven storefronts sell ███ discrete ASINs.[3] Each storefront sells only one or two (a

child and adult version of the allegedly infringing costume) items that are implicated by

Plaintiff's claims in this litigation. (*See* Liu Decl. ¶ 4, 10; Wang Decl. ¶¶ 3, 9; Zhou Decl. ¶ 4;

Zeng Decl. ¶ 4; Zhang Decl. ¶ 4; Zhong Decl. ¶ 4; Jin Decl. ¶ 4.) However, the sum total of

Selected Defendants' funds earned by its Amazon sales (upwards of $███████) has been

frozen and is inaccessible to the Selected Defendants. These restraints are threatening the

survival of the Selected Defendants' businesses and their ability to pay employees, vendors, and

suppliers. (*See* Liu Decl. ¶¶ 17-23; Wang Decl. ¶¶ 20-23; Zhou Decl. ¶¶ 17-21; Zeng Decl.

¶¶ 19-22; Zhang Decl. ¶¶ 19-30; Zhong Decl. ¶¶ 19-27; Jin Decl. ¶¶ 17-21.)

## B.    Procedural History

On October 24, 2023, Plaintiff filed its Complaint against thirty-six entities that operate

online storefronts (listed on an attached Schedule A), including on Amazon.com. (Complaint,

ECF 2.) Plaintiff alleges broadly that all defendants have infringed Plaintiff's copyright in its

MORPH brand Alien Costume. That same date, Plaintiff filed a Motion for Temporary

Restraining Order ("TRO"), Order Restraining Assets and Merchant Storefronts, Order to Show

Cause Why a Preliminary Injunction Should Not Issue; and Order Authorizing Expedited

Discovery (ECF 4); (3) Motion for an Order Authorizing Alternative Service ("Alternative

---

[3] Amazon Standard Identification Number (ASIN) is a ten-digit alphanumeric code that identifies products on Amazon. The ASINs are broken out by storefront as follows: (1) Stegosaurus: 186 ASINs; (2) Poptrend Official: 102 ASINs; (3) YEAHBEER Store: 37 ASINs; (4) easy-fit: 36 ASINs; (5) Decalare: 22 ASINs; (6) Hacosoon Flagship: 15 ASINs; and (7) Hacosoon Shop: 10 ASINs.

Service Motion") (ECF 11). Notably, Plaintiff did not attempt service of any sort prior to its request to circumvent the Hague Convention applicable to Selected Defendants.

That same day, this Court granted Plaintiff's request for a TRO, thereby enjoining all defendants, including Selected Defendants from, among other things, distributing, marketing, advertising, offering for sale, or sale of any products allegedly using Plaintiff's Work, and simultaneously freezing and restraining "all funds" associated with any of the accounts of the defendants listed on the Schedule A submitted with the Complaint. (ECF 20.) The Court also ordered defendants to show cause why a preliminary injunction pursuant to Fed. R. Civ. P. 65(a) should not issue. (*Id.* p. 11.[4])

That same day, the Court also granted Plaintiff's Alternative Service Motion. (ECF 21.) The Order granting Plaintiff's request to serve by alternative means was broader than the relief requested by Plaintiff, allowing Plaintiff to serve via email *or* website publication (rather than email *and* website publication). The Selected Defendants did not receive constructive or actual notice of this litigation from either method of service. (Liu Decl. ¶ 7; Wang Decl. ¶ 6; Zhou Decl. ¶ 7; Zeng Decl. ¶ 7; Zhang Decl. ¶ 7; Zhong Decl. ¶ 7; Jin Decl. ¶ 7.) Instead, Selected Defendants learned of this litigation by notification of their accounts being frozen from Amazon.com, on which Selected Defendants list all of their products (including dozens of products that are not implicated by this litigation). (*See* **Exhibits 18-31** hereto.)

A hearing on Plaintiff's Motion is currently set for December 7, 2023. (ECF 30.)

---

[4] In addition, Plaintiff's Motion for Expedited Discovery was granted. However, for the same reasons articulated herein regarding insufficient service of process, the Selected Defendants believe that they have not been properly served with Plaintiff's discovery requests. The Selected Defendants also submit that Plaintiff has not established good cause for the requested discovery, that the discovery requested is far broader and more invasive than is warranted at this time, and that the response time of 14 days is not reasonable. *See, e.g., Leone v. Towanda Borough*, No. CIV.A. 3:12-0429, 2012 WL 1123958, at *2 (M.D. Pa. Apr. 4, 2012) (the party seeking expedited discovery must show "good" cause for its motion, such that the request is "reasonable" in light of the circumstances).

**ARGUMENT**

**II.    THIS COURT LACKS JURISDICTION OVER THE SELECTED DEFENDANTS BECAUSE THE SELECTED DEFENDANTS HAVE NOT BEEN PROPERLY SERVED.**

> **A.    Formal Service of Process Is Required for the Issuance of an Enforceable Preliminary Injunction.**

In the majority of courts considering the question, proper service of process is a prerequisite to the issuance of an enforceable preliminary injunction. This is because a court may not issue an injunction until it has personal jurisdiction over a defendant, which, in turn, requires valid service of process. *See 3M Co. v. Christian Investments LLC*, 2011 WL 3678144, *3-4 (E.D. Va. Aug. 19, 2011) *(citing R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943 (4th Cir. 1999) (district court's preliminary injunction against company was unenforceable because the district court did not obtain personal jurisdiction over the company through valid service of process)).[5]

---

[5] *See also Schuh v. Michigan Dep't of Corrections*, No. 1:09cv982, 2010 WL 3648876, at *2 (W.D. Mich. July 26, 2010) ("When a preliminary injunction is sought under Rule 65(a), service of the summons and the complaint is required. It is well settled that without service of process, a court has no jurisdiction over defendants named in a lawsuit.") (citations omitted); *Mapping Your Future, Inc. v. Mapping Your Future Servs., Ltd.*, 266 F.R.D. 305, 309 (D.S.D. 2009) (holding that motion for preliminary injunction against foreign defendant was premature and could be re-filed after defendant had been served with the summons and complaint); *Sangui Biotech Intern., Inc. v. Kappes*, 179 F. Supp. 2d 1240, 1241 (D. Colo. 2002) (holding that district court did not have jurisdiction to enter preliminary injunction against foreign defendant because he had not yet been served with process under the provisions of the Hague Convention); *Carty v. R.I. Dept. of Corrections*, 198 F.R.D. 18, 20 (D.R.I. 2000) ("When an injunction is sought, service of the summons and the complaint is required. It is well settled that without service of process, this Court has no jurisdiction over the named defendants. Personal jurisdiction is established either by proper service of process, or by the defendant's waiver of any defect in the service of process.") (citations omitted); *Universal Licensing Corp. v. Paola del Lungo, S.p.A.*, 293 F.3d 579, 582 (2d Cir. 2002) ("The court invited Universal to return to court six days later, after service of process had been properly effected on PDL, at which time the court would entertain a motion for a preliminary injunction."); *Burns v. First. Am. Trustee Servicing Solutions, LLC*, No. 11–0023, 2011 WL 175503, at *2 (N.D. Cal. Jan. 19, 2011) ("If Plaintiffs seek a preliminary injunction, they must serve the summons and complaint on any Defendant against whom relief is sought."); *Lakner v. Balke*, No. 08–cv–1791, 2008 WL 4473916, at *2 n.1 (S.D. Cal. Oct. 2, 2008) ("If Plaintiff wants to pursue a motion for a preliminary injunction, he must first serve Defendants with the summons, Complaint and preliminary injunction motion."); *North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 WL 838993, at *7 (S.D.N.Y. Mar. 30, 2006) ("The Court will grant Plaintiffs' application to convert the TRO into a preliminary injunction against SDT USA at such time as Plaintiffs submit proof of service of process upon SDT USA."); *Mark v.

Because the Selected Defendants have not been properly served with process pursuant to the Hague Convention, the Court lacks personal jurisdiction over the Selected Defendants and no enforceable preliminary injunction can issue.

> **B.      The Selected Defendants Have Not Been Served with Adequate Process.**

Every defendant must be served with a copy of the complaint and summons in accordance with Fed. R. Civ. P. 4. Because the Selected Defendants are Chinese entities with no physical presence in the United States, Fed. R. Civ. P. 4(f) authorizes two methods of service. First, service may be made "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Fed. R. Civ. P. 4(f)(1). Second, Rule 4(f)(3) authorizes service "by other means not prohibited by international agreement, as the court orders."

As Plaintiff acknowledges, the United States and China are parties to the Hague Convention, which has the force of federal law and limits available methods of service under Fed. R. Civ. P. 4(f)(3).  The Convention is intended to simplify and standardize serving process abroad, and prescribes "certain approved methods of service and 'preempts inconsistent methods of service' wherever it applies." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 487 U.S. 694, 698 (1988) (noting that "compliance with the Convention is mandatory in all cases to which it applies.")).

Here, Plaintiff's service of process by email – even if effected as Plaintiff claims[6] - and website posting is inadequate because (i) the Hague Convention applies to this case; and

---

*Shui–Kuen*, 1986 WL 11567, at *1 (S.D.N.Y. Oct. 8, 1986) ("Plaintiffs may move for a preliminary injunction after the summons and complaint have been served and defendants have served and filed their answers.").

[6] Selected Defendants did not receive notice of this litigation via email or Plaintiff's website posting; instead, they learned of the litigation when Amazon froze their accounts. (*See* **Exhibits 18-24** hereto.)

(ii) Plaintiff failed to even attempt to serve Selected Defendants properly under the Hague Convention.

### 1.    The Hague Convention Applies Because Plaintiff Can Take Reasonable Efforts to Find Selected Defendants' Physical Addresses.

Courts look to Article 1 to determine whether the Hague Convention applies. *Schlunk*, 486 U.S. at 699. Article 1 specifies the Hague Convention's scope. The first sentence states the "Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." *Id*. (quoting Article 1 of The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361). Where it applies, compliance with the Hague Convention is "mandatory." *Id.* at 698–99 (1988). The purpose of the Hague Convention is "to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Id.* at 698. Article 1 also states the Hague Convention does not apply "where the address of the person to be served with the document is not known." Art. 1, 20 U.S.T. at 362.

Courts have interpreted the second sentence of Article 1 consistently. A plaintiff cannot close its eyes to the obvious to avoid the Hague Convention; the plaintiff must make reasonably diligent efforts to learn a defendant's mailing address. *See Advanced Access Content Sys. Licensing Admin., LLC v. Shen*, 2018 WL 4757939, at *4–5 (S.D.N.Y. Sept. 30, 2018); *Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1390 (S.D.N.Y. 2022) ("an address is not known if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so") (citations omitted); *Progressive Se. Ins. Co. v. J & P Transp.*, 2011 WL 2672565, at *3 (N.D. Ind. July 8, 2011) (citing *Opella v. Rullan*, 2011 WL 2600707, at *5 (S.D. Fla. June 29, 2011)); *Compass Bank v. Katz*, 287 F.R.D. 392,

394–95 (S.D. Tex. 2012) (collecting and discussing cases). *See also Hayward Indus., Inc. v. CompuPool Prod.*, 2023 WL 3736216, at *6 (D.N.J. May 31, 2023) ("While Plaintiff need not show that service through ordinary channels would be futile, it is reasonable to require Plaintiff to attempt to comport with the Hague Convention, without prejudice to its right to renew the within application and establish with reliable evidence that service through ordinary means would be difficult or futile." (citation omitted)).

Reasonable diligence requires more than a "mere perusal of defendant's storefront." *Smart Study Co.*, 620 F. Supp. 3d at 1390. A plaintiff must make further efforts, such as investigating likely physical addresses and determining whether they are associated with defendants. *See Kelly Toys Holdings, LLC. v. Top Dep't Store*, No. 22 Civ. 558, 2022 WL 3701216, at *6 (S.D.N.Y. Aug. 26, 2022) (dispatched investigator and local counsel to determine whether physical addresses were associated with defendants); *Zuru (Singapore) Pte., Ltd. v. Individuals Identified on Schedule A Hereto*, No. 22 Civ. 2483, 2022 WL 14872617, at *2 (S.D.N.Y. Oct. 26, 2022) (conducted "further online research, sent mail to the addresses, and conducted in-person visits" to determine whether physical addresses provided by Amazon were accurate).

Here, Plaintiff did not even go so far as to examine the Selected Defendants' storefronts. Rather, Plaintiff looked at "information contained on Defendants' actual e-commerce stores" and "shipping information" and summarily concluded that all defendants' operations "are most likely based in and/or shipping from China or other foreign jurisdictions. (Declaration of S. Ference, ECF 12, ¶ 13.) As noted above, any reasonable amount of diligence would have yielded the Selected Defendants' addresses, each of which is readily accessible via Amazon.com, which requires that each storefront provide a valid physical address. (**Exhibits 4-10** hereto.)

Simply put, this is not a case "where the address of the person to be served with the document is not known." Despite having access to this basic information, Plaintiff declined to conduct the most basic investigation or to make any effort to confirm whether the Selected Defendants' publicly disclosed addresses were correct. In short, Plaintiff has failed to carry its burden to show that the Selected Defendants' addresses are unknown. Consequently, the Hague Service Convention applies in this case.

  **2.**  **Plaintiff Failed to Serve Selected Defendants Properly Under the Hague Service Convention.**

The Supreme Court of the United States has stated that the drafters of the Hague Service Convention intended to prohibit a method of service not mentioned in its text. *Schlunk*, 486 U.S. at 699 (holding that the Convention "pre-empts inconsistent methods of service …[wherever] it applies."); *Water Splash*, 137 S. Ct. at 1507 (reaffirming this holding).

The Hague Convention permits service only by the following means: via a central authority (Articles 2-7), diplomatic and consular agents (Articles 8-9), mail or through a judicial official of the State of destination if the destination State does not object (Article 10), methods allowed by other applicable international agreement (Article 11), and other means as allowed by the internal laws of the destination State (Article 19). *See Water Splash*, 137 S. Ct. at 1508 (reviewing permitted service methods). "The legal sufficiency of a formal delivery of documents must be measured against some standard. The Convention does not prescribe a standard, so we almost necessarily must refer to the internal law of the forum state." *Schlunk*, 486 U.S. at 700.

"Compliance with the Hague Service Convention is mandatory when serving a defendant who resides in a foreign country that is a signatory to the convention." *SeaCube Containers LLC v. Compass Containers & Shipping Services Ltda.*, 427 F. Supp. 3d 497, 500 (S.D.N.Y. 2019) (citation omitted). Because China is a signatory to the Hague Convention, "that international

agreement is the exclusive means through which service can be effectuated when serving a [Chinese] defendant." *Id*.; *see also, RSM Prod. Corp. v. Fridman*, 06 CIV. 11512 (DLC), 2007 WL 1515068, at *1 (S.D.N.Y. May 24, 2007) ("Service on a foreign defendant pursuant to the Hague Convention …is mandatory when serving a defendant who resides in a foreign country that is a signatory to the convention.") (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299-300 (2d Cir. 2005)).

The alternative service purportedly effected on the Selected Defendants was based on an order obtained by Plaintiff's inaccurate representations of the law and facts, including Plaintiff's assertion that "third party merchants on Internet marketplaces, like Defendants, have been known to use aliases, false addresses and other incomplete identification information to shield their true identities and there are, in fact, no physical addresses whatsoever associated with the majority of Defendants' User Accounts" (*See* Plaintiff's *Ex Parte* Motion for Order Authorizing Alternative Service, ECF 11 at p. 9.) However, the Selected Defendants' addresses are each publicly available, contrary to Plaintiff's Alternative Service Motion. Plaintiff's declaration fails to identify any meaningful investigation as to the Selected Defendants' addresses, or any effort to perform service of process on the Selected Defendants pursuant to the Hague Convention.

Moreover, China has objected to email service, and accordingly, in numerous decisions involving similar facts, courts have consistently held that China's Article 10(a) objection precludes email service. *Smart Study Co.*, 620 F. Supp. 3d 1382 (concluding that "service via email on litigants located in China is not permitted by the Hague Convention" and that plaintiff must serve the defendants via the Chinese central authority, the only method authorized by the Hague Convention); *see also Habas Sinai Ve Tibbi Gazlar Istihsal A.S. v. Int'l Tech. & Knowledge Co.*, 2019 WL 7049504 at *4 (W.D. Pa. Dec. 23, 2019) ("[t]he argument that a

country that has objected to service by 'postal channels' in Article 10 has implicitly indicated that it would accept service by e-mail relies on a questionable reading of the Hague Service Convention that elevates form over substance."); *Rice v. Electrolux Home Products, Inc.*, No. 4:15-CV-00371, 2018 WL 4964076 (M.D. Pa. Oct. 15, 2018) (denying request to serve by email on defendants located in China, finding "no sound justification for [the court] to find that Plaintiffs here should avoid the Hague Convention procedures"); *Safavieh Intl, LLC v. Chengdu Junsen Fengrui Tech. Co.-Tao Shen*, No. 23 CIV. 3960 (CM), 2023 WL 3977505, at *4–5 (S.D.N.Y. June 13, 2023) (same); *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co*., 480 F. Supp. 3d 977, 978 (N.D. Cal. 2020) (concluding that service by email was not proper); *Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 417 (N.D. Tex. 2020) (same); *Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 391 F. Supp. 3d 816, 825 (N.D. Ill. 2019) (same); *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd*., 334 F.R.D. 465, 472 (D. Mass. 2020) ("To permit service by e-mail would bypass the means of service set forth in the Convention."); *CRS Recovery, Inc. v. Laxton*, No. C 06-7093 CW, 2008 WL 11383537, at *2 (N.D. Cal. Jan. 8, 2008) ("An order allowing email service on a defendant located in China would contravene the treaty, and is not permitted under Rule 4(f)(3).").

Further, as the *Smart Study* court noted:

Recent guidance posted by Supreme People's Court of China leaves little doubt that China's objection to service by mail would encapsulate service by email. Article 11 of the Minutes of the National Symposium on Foreign-related Commercial and Maritime Trial Work provides guidance for Chinese courts serving litigants outside of China. Those minutes state:

In the event that the country where the person to be served is located is a member state of the Hague Service Convention and objects to the service by mail under the Convention, ***it shall be presumed that the country does***

> *not allow electronic service, and the people's court shall not adopt electronic service.*
>
> July 1 Letter. That Chinese authorities opine that an objection to service by postal channels includes an implicit objection to service by email provides significant support for the view that China's objection to service by postal channels would preclude service by email under the Hague Convention.

620 F. Supp. 3d at 1394–95 (emphasis added).

Lastly, if service by email or by mere publication on the website of a plaintiff's legal counsel is permissible under the Hague Convention, then the Hague Convention could effectively become obsolete. This is because (like Plaintiff here) no one would even attempt the methods of service specified by the Hague Convention when these much simpler and cheaper alternative methods—which do not provide the same guarantees of notice to defendants as even state rules regarding service of process—are available. Such an interpretation of this vital international treaty cannot be incorrect.

For the above stated reasons, the Selected Defendants have not been served with process in compliance with the Hague Service Convention as prescribed by the Federal Rules of Civil Procedure.

## III.    PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION AS TO SELECTED DEFENDANTS.

Even if the Selected Defendants had been adequately served with process and this Court had personal jurisdiction over them, Plaintiff has unequivocally failed to establish entitlement to injunctive relief.

### A.    Legal Standard

Injunctive relief for copyright infringement is authorized by 17 U.S.C. § 502(a), which provides that the court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."

> A preliminary injunction is an extraordinary remedy that should be granted only if:
> (1) the plaintiff is likely to succeed on the merits;
> (2) denial will result in irreparable harm to the plaintiff;
> (3) granting the injunction will not result in irreparable harm to the defendant; and
> (4) granting the injunction is in the public interest.

*Nutrasweet Company v. Vit–Mar Enterprises*, 176 F.3d 151, 153 (3d Cir.1999); *Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, 864 F. Supp. 2d 316, 324–25 (E.D. Pa. 2012).

A plaintiff's failure to establish any of these four elements in its favor renders a preliminary injunction inappropriate. *Nutrasweet Co.*, 176 F.3d at 153; *see also Mallet and Company Inc. v. Lacayo*, 16 F.4th 364 (3d Cir. 2021) (citation omitted). Because the grant of injunctive relief is an extraordinary remedy, it "should be granted only in limited circumstances." *Instant Air Freight Co. v. C.F. Air Freight*, 882 F.2d 797, 800 (3d Cir. 1989). As set forth below, those circumstances simply do not exist here.

### B.   Plaintiff Has Not Established a Likelihood of Success on the Merits.

To establish a likelihood of success, a plaintiff must show that "there is 'a reasonable chance, or probability, of winning.'" *In re Revel AC*, 802 F.3d 558, 568 (3d Cir. 2015). This requires the plaintiff to "demonstrate that it can win on the merits," which involves a showing that its chances of establishing each of the elements of the claim are "significantly better than negligible." *Id.* To establish copyright infringement, Plaintiff must demonstrate (1) ownership of a valid copyright; and (2) that the infringer's unauthorized copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc*., 499 U.S. 340, 361 (1991); *Grant Heilman Photography, Inc.*, 864 F. Supp. 2d at 325.

For two principal reasons, Plaintiff has not demonstrated a likelihood of success on its copyright infringement claim.

### 1.    Plaintiff's Copyright Is Invalid

Plaintiff's claim fails first because Plaintiff's Design is not eligible for copyright

protection due to utilitarian concerns. A feature incorporated into the design of a useful article is

not eligible for copyright protection unless the feature: (1) can be perceived as a two- or three-

dimensional work of art separate from the useful article, **and** (2) would qualify as a protectable

pictorial, graphic, or sculptural work, either on its own or fixed in some other tangible medium

of expression, if it were imagined separately from the useful article into which it is incorporated.

*Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1345 (Fed. Cir. 2020); *see also Esquire,*

*Inc. v. Ringer*, 591 F.2d 796, 804 (D.C. Cir. 1978) (Copyright Register's interpretation of

regulation attempting to define boundaries between copyrightable works of art and

noncopyrightable industrial designs to bar copyright registration of overall shape or

configuration of utilitarian article no matter how aesthetically pleasing was reasonable; "if

overall shape or configuration can qualify as a 'work of art,' 'the whole realm of consumer

products garments, toasters, refrigerators, furniture, bathtubs, automobiles, etc. and industrial

products designed to have aesthetic appeal subway cars, computers, photocopying machines,

typewriters, adding machines, etc. must also qualify as works of art.'"); *Norris Indus., Inc. v.*

*Int'l Tel. & Tel. Corp.*, 696 F.2d 918 (11th Cir. 1983) (holding that a wire-spoked automobile

wheel cover was a "useful article" within the meaning of copyright law, and thus not eligible to

be copyrighted; "…the efficiency of a utilitarian article is irrelevant for copyright protection").

Here, Plaintiff's Design is not eligible for copyright protection because it is a useful

article with no separable copyrightable features. Its intrinsic use and overall value is nothing

more than an article of clothing. In other words, the pictorial or sculptural features of Plaintiff's

Design[7] cannot be identified separately from, and cannot exist independently of, the utilitarian aspects of the design itself, which serves primarily as an article of clothing to cover the costume wearer's torso, legs, feet, and hands. The aesthetic elements of Plaintiff's Design are not conceptually separable from the significant measure and influence of the utilitarian concerns addressed in the design, which are to protect the consumer from the weather elements, maintain privacy, and provide mobility.

Second, Plaintiff's design lacks novelty. Even before May 2017—the date Plaintiff claims as the date of its Design's creation—inflatable costumes in a similar shape (hugging a person), were already in the public domain. Plaintiff's Design is a simple combination of images from the following two YouTube videos, both of which predate the alleged completion time of the asserted copyright: (1) an "Alien Halloween Inflatable by Morbid" on YouTube on November 7, 2013 (available at https://www.youtube.com/watch?v=6TWt-PBJAVw); and (2) a hugging-shaped grim reaper inflatable costume with blue pants on Amazon on October 3, 2016 (viewable at https://www.youtube.com/watch?v=p0mkHdHA73c). (*See* Liu Decl. ¶ 24; Wang Decl. ¶ 24; Zhou Decl. ¶ 22; Zeng Decl. ¶ 23; Zhang Decl. ¶ 31; Zhong Decl. ¶ 28; Jin Decl. ¶ 22.) Accordingly, this shape should not be protected by copyright, as Plaintiff is merely imitating other products and is not the creator of this shape.

Likewise, Plaintiff's Design should not be protected by copyright, because, prior to Plaintiff's claim that it designed the Inflatable Alien Costume in May 2017, there were many similar alien forms that had appeared in the public eye. Green is a recognized alien color, and the

---

[7] It is worth noting that the head of the alien in Plaintiff's Design is rounder than the image in the "Alien Halloween Inflatable by Morbid" (discussed *infra*), a design change that appears to be dictated by function. (Liu Decl.¶ 26; Wang Decl. ¶ 26; Zhou Decl. ¶ 26; Zeng Decl. ¶ 24; Zhang Decl. ¶ 32; Zhong Decl. ¶ 29; Jin Decl. ¶ 23.)

color should not be protectable by copyright. In addition, the head features of aliens are commonly recognized as two large eyes, two small nostrils, and a small mouth. Plaintiff's Design overall does not have originality, and only adopts the basic form of an alien recognized by the general public, and therefore should not be protected by copyright.[8]

## 2. Even if Valid, Selected Defendants Did Not Copy Plaintiff's Copyrighted Design

Moreover, as a factual matter, Plaintiff cannot satisfy the second element of its copyright claim: actual copying of original features by the Selected Defendants. This is because, as of 2018, the Selected Defendants had already independently developed their alien costume design, wholly separate and apart from Plaintiff's Design. Specifically, the Selected Defendants' design took inspiration from videos first posted in 2013 (featuring an inflatable alien) and 2016 (featuring a hugging-shaped grim reaper inflatable costume) on YouTube. In fact, as of 2016, Easy-Fit had already introduced inflatable costumes featuring foot fins. (*See* Liu Decl. ¶ 25; Wang Decl. ¶ 25; Zhou Decl. ¶ 23.)  The other Selected Defendants similarly developed their own designs independently. (*See* Liu Decl.¶¶ 24-26; Wang Decl. ¶¶ 24-26; Zhou Decl. ¶¶ 22-24; Zeng Decl. ¶¶ 23-24; Zhang Decl. ¶¶ 31-32; Zhong Decl. ¶¶ 28-29; Jin Decl. ¶¶ 22-23.) Accordingly, there can be no infringement.[9] *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018) ("If the defendant truly created his work independently, then no infringement has

---

[8] *E.g.*, *Google LLC v. Oracle Am., Inc*., 141 S. Ct. 1183, 1196 (2021) ("a definitional provision sets forth three basic conditions for obtaining a copyright. There must be a 'wor[k] of authorship,' that work must be 'original,' and the work must be 'fixed in any tangible medium of expression.'").

[9] Plaintiff's false claim that the Selected Defendants are selling their products "at a bargain basement price" and/or are attempting to create a "false association" with Plaintiff's products is baseless. (Brief in Support of Motion at 11.) As noted above, the Selected Defendants' products actually cost ***more*** than Plaintiff's products. Moreover, Easy-fit conspicuously displays its brand, "TOLOCO," on its product page on Amazon.com, along with product rating and total reviews, which is essential information for an ordinary Amazon consumer's choice. Therefore, an ordinary Amazon consumer should be well aware of the source of its products. (Liu Decl. ¶ 5.)

occurred, irrespective of similarity."); *Digital Dream Labs, LLC. v. Living Tech. (Shenzhen) Co.*, 587 F. Supp. 3d 305 (W.D. Pa. 2022) (unauthorized copying element of copyright infringement claim itself comprises two components: (1) actual copying and (2) material appropriation of copyrighted work).

Because the Selected Defendants did not, in fact, copy Plaintiff's Design, Plaintiff cannot establish a likelihood of success on the merits and is not entitled to injunctive relief.

### C.     Plaintiff Has Not and Cannot Show any Risk of Irreparable Harm

A plaintiff seeking preliminary injunctive relief must demonstrate that irreparable injury is likely in the absence of an injunction. *Grant Heilman Photography, Inc.*, 864 F. Supp. 2d at 327. Absent a showing by plaintiffs of the likelihood of irreparable injury, no preliminary injunction may issue, even if the other three requirements are satisfied. *See Nutrasweet*, 176 F.3d at 153.[10]

Importantly, a plaintiff's delay in asserting its claim demonstrates a lack of irreparable harm that will preclude injunctive relief—regardless of whether a plaintiff is likely to succeed on the merits. *See*, *e.g.*, *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2nd Cir. 1985) (lack of due diligence in pursing injunction may, standing alone, preclude the grant of injunctive relief); *Gianni Cereda Fabrics, Inc. v. Bazaar Fabrics, Inc.,* 335 F. Supp. 278, 280 (S.D.N.Y.1971) (seven month delay) ("by sleeping on its rights a plaintiff demonstrates the lack of need for speedy action and cannot complain of the delay involved pending any final relief to which it may be entitled after a trial of all the issues ...") (citation omitted); *Celebration Intern., Inc. v. Chosun Intern., Inc.*, 234 F. Supp. 2d 905 (S.D. Ind. 2002) (denying preliminary injunction to copyright

---

[10] Following the Supreme Court's holding in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), there is no longer any rebuttable presumption of irreparable harm in copyright cases. *TD Bank N.A. v. Hill*, 928 F.3d 259, 279-280 (3d Cir. 2019).

infringement plaintiff, where plaintiff did not proffer good excuse for a 3 year delay in filing suit, "it seems incongruous to now argue that the extraordinary remedy of a preliminary injunction is necessary to prevent irreparable harm").

According to Plaintiff, it first published its design in 2017 and registered its copyright in 2020. However, Decalare, one of the Selected Defendants has been selling the allegedly infringing product since **March 15, 2019**—before the date of Plaintiff's registration. (Zhong Decl. ¶ 10.) Had Plaintiff policed its rights with any diligence, Plaintiff should have known of the alleged infringement far sooner than **three years after** obtaining its registration. Much like the Plaintiff in *Celebration*, it is "incongruous" for Plaintiff—after sitting on its rights for three years—to suddenly argue that the extraordinary remedy of a preliminary injunction is necessary to prevent irreparable harm.

Further, while Plaintiff claims that it may suffer a "loss of goodwill and loss of control of its reputation" (Brief in Support of Motion at 34) because Selected Defendants are selling "substandard imitations" (*id.* at 35) "at a bargain basement price" (*id.* at 11) and/or that customers have written online reviews to complain about the quality of the Selected Defendants' products, these unsupported assertions are easily refuted by the facts that (1) the Selected Defendants' products have a **higher** customer satisfaction rating on Amazon.com and (2) the Selected Defendants sell their products at a **higher** price point than Plaintiff's product. (*See* Liu Decl. ¶¶ 12-14; Wang Decl. ¶ 14; Zhou Decl. ¶¶ 13-14; Zeng Decl. ¶¶ 9-13; Zhang Decl. ¶¶ 13-16; Zhong Decl. ¶¶ 13-16; Jin Decl. ¶¶ 11-13.) At best, Plaintiff has alleged harm that can be compensated by money damages, which precludes a finding of irreparable harm. *See Frank's GMC Truck Center, Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 n.3 (3d Cir. 1988). Because

Plaintiff cannot establish the likelihood of irreparable injury, Plaintiff's request for the extraordinary remedy of a preliminary injunction must be denied.

**D.     The Balance of Harms Tilts Heavily Against Injunctive Relief and in Favor of the Selected Defendants.**

The balance of harm favors the Selected Defendants, not Plaintiff. First, the product at issue is a Halloween costume, and sales of the product peak in October. Accordingly, lost sales, if any, are likely to be minimal. With respect to alleged loss of goodwill and/or reputation, as noted above, there is no such concern with respect to the Selected Defendants' products, which are both more popular and more highly reviewed than Plaintiff's product. (*See* Liu Decl. ¶¶ 12-14, 22; Wang Decl. ¶¶ 12, 14; Zhou Decl. ¶¶ 13-14; Zeng Decl. ¶¶ 9-13; Zhang Decl. ¶¶ 13-16; Zhong Decl. ¶¶ 13-16; Jin Decl. ¶¶ 11-13.)

By contrast, the injunctive relief sought (and the TRO currently in place) threatens far greater harm to the Selected Defendants. On this point, the Selected Defendants have suffered and are continuing to suffer irreparable harm due to the freezing of their Amazon accounts. The survival of the Selected Defendants—companies that have been in operation for seven years, with employees, suppliers, and facilities to maintain—are threatened if the TRO is converted to longer lasting injunctive relief.

By way of example, since Plaintiff froze the funds in the Easy-Fit Amazon store, Easy-fit's performance has plummeted. Notably, Easy-Fit sells a total of 36 ASINs/products, including massage guns and other products. Of these, only two are implicated by this litigation (child and adult versions of the Inflatable Alien Costume), and these products comprise merely █████% of Easy-Fit's sales. (Liu Decl. ¶ 21.) However, the ***entirety*** of Easy-Fit's funds have been frozen, and Plaintiff seeks to maintain this freeze for the duration of the litigation in its Motion for Preliminary Injunction.

This freeze threatens the survival of Easy-Fit as a going concern. Easy-Fit's sales from October 27 to November 23, 2021 were $███████ By contrast, October 27 to November 23, 2023 were "$███████████ decrease in sales." (Liu Decl. ¶ 17.) This loss of revenue is becoming increasingly serious and threatens the Company's ability to pay employees and suppliers, as well as to pay utilities and rent for its operations. (*Id.* ¶¶ 18-21.[11])

Furthermore, the most important holiday shopping season in the United States is from the end of October to the end of December, including Thanksgiving, Christmas, and New Year's Day.[12] During the holiday shopping season, Easy-Fit's—as well as those of every other of the Selected Defendants—sales growth rate is often much faster greater than its sales growth rate at other times of the year. (*See* Liu Decl. ¶ 18; Wang Decl. ¶ 17; Zhou Decl. ¶ 15; Zeng Decl. ¶ 18; Zhang Decl. ¶ 21; Zhong Decl. ¶¶ 18; Jin Decl. ¶ 17.) If Easy-fit and the other Selected Defendants cannot lift the funds freeze during this holiday shopping season, they will be unable to make sales during Black Friday, Cyber Monday, and Christmas. (*Id.*) Further, the Selected Defendants will be required to pay increased storage fees to Amazon because their products cannot be sold while the TRO and any subsequent injunction is in place. (*Id.*) It is highly likely that if the funds in these storefront remain frozen, the Selected Defendants will be forced to lay off employees to temporarily maintain operations. (*Id.*)

In addition, due to the freeze on their storefronts, the Selected Defendants are unable to conduct ordinary business operations. This will lead to a significant decline in their consumer

---

[11] These facts apply equally to each of the other Selected Defendants. (Wang Decl. ¶¶ 20-23; Zhou Decl. ¶¶ 17-21; Zeng Decl. ¶¶ 19-22; Zhang Decl. ¶¶ 19-30; Zhong Decl. ¶¶ 19-27; Jin Decl. ¶¶ 17-21.)

[12] One of Easy-Fit's most popular products is ███████████████ which sees its sales peak in November and December. Due to its popularity last year, Easy-fit stocked up on a large inventory of ███████████ this year, and owes its suppliers over $█████ The Company will incur enormous losses if its funds remain frozen and it is unable to sell its inventory during the holiday season. (Liu Decl. ¶¶ 21-23.)

search visibility, which is a critical factor in obtaining "Amazon Choice: Overall Pick" or "Best Seller," which will, in turn, directly affect their Amazon rankings. If these rankings drop significantly, it will have long-term, irreparable negative consequences for each storefront's future operations. (*See*, *e.g.*, Liu Decl. ¶ 22.)

## IV.    THE RELIEF SOUGHT BY THE PRELIMINARY INJUNCTION IS OVERBROAD AND NOT TAILORED TO THE HARM ALLEGED SUFFERED BY PLAINTIFF.

Even if Plaintiff were entitled to injunctive relief (which it is not), the sweeping scope of relief sought by Plaintiff—including, among other things, an order restraining the Selected Defendants' assets and Merchant Storefronts—is not justified under the circumstances.

Federal Rule of Civil Procedure 65(d) mandates that "[e]very order granting an injunction" set forth the reasons why an injunction is warranted, "state its terms specifically[,]" and articulate "in reasonable detail" the conduct it enjoins. *Mallet and Company Inc.*, 16 F.4th at 379. While "[t]he degree of particularity required" to satisfy the Rule's specificity provisions will "depend[ ] on the nature of the subject matter[,]" *Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*, 685 F.2d 78, 83 (3d Cir. 1982), those provisions are not mere technicalities.  *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). They are designed to serve two vital functions: first, "to prevent uncertainty and confusion on the part of those faced with injunctive orders, and [thus] to avoid the possible founding of a contempt citation on a decree too vague to be understood"; and second, to ensure that sufficient information is placed on the record so that "an appellate tribunal [will] know precisely what it is reviewing."  *Mallet and Company Inc.*, 16 F. 4th at 378 (citations omitted). Similarly, an injunction cannot be broader than necessary to restrain the unlawful conduct. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 924 & n.67 (1982).

Here, the injunctive relief sought by Plaintiff fails in its overbreadth and insufficient specificity. In this case, an appropriate remedy – if any – might be to restrain the Selected

Defendants' sales of the purportedly infringing product. However, the breadth of Plaintiff's proposed preliminary injunction order is breathtakingly vast, seeking, among other things, to preclude not only the named defendants, but "***all [unidentified and unnamed] persons in active concert or participation with any Defendants***" from conducting ***any*** business whatsoever – not merely the sale or marketing of allegedly infringing products. For example, Plaintiff's proposed order providing that:

> (7) upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to Amazon Services, LLC d/b/a Amazon.com, and Amazon Payments, Inc. d/b/a Amazon Pay (collectively "Amazon"), … and their related companies and affiliates, shall immediately identify and restrain **all funds**, as opposed to ongoing account activity, in or which are hereafter transmitted into the accounts related to the Defendants as identified on Schedule "A" hereto, as well as **all funds** in or which are transmitted into (i) any other accounts of the same customer(s); (ii) **any other accounts which transfer funds into the same financial institution account(s), and/or any of the other accounts subject to this Order; and (iii) any other accounts tied to or used by any of the Seller IDs identified on Schedule "A" hereto**;
>
> …
> (8) upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to the Third Party Service Provider(s) and the Financial Institution(s), shall immediately divert to a holding account for the trust of the Court **all funds** in or which are hereafter transmitted into **all accounts** related to Defendants identified in Schedule "A" hereto, and **associated payment accounts**, and any other accounts for the same customer(s) as well as any other accounts which transfer funds into the same financial institution account(s) as any other accounts subject to this Order;
>
> …
> (10) Upon Plaintiff's request, any Internet marketplace who is provided with notice of this Order, including but not limited to the Third-Party Service Provider(s) and Financial Institution(s), **shall immediately cease fulfillment of and sequester Defendants' inventory assets** corresponding to the Seller IDs identified on Schedule "A" hereto in its inventory, possession, custody, or control, and hold such goods in trust for the Court during pendency of this action;

(ECF 28-1, pp. 2-6 (emphasis added).)

Simply put, the remedy that Plaintiff seeks is overbroad and prohibits not only allegedly unlawful, but *lawful* conduct—namely, sales of products that are not allegedly infringing Plaintiff's Design. This is contrary to Third Circuit precedent, because "it extends the scope of the injunction to reach what appears to be lawful conduct." *Mallet*, 16 F. 4th 390 (noting that the injunction imposing a "production ban" was unduly broad, and vacating injunction for lack of specificity). Indeed, as the *Mallet* court stated, "[i]t would take a truly extraordinary showing – one not made here – to justify an order ejecting a competitor from the marketplace altogether. ***Injunction orders should not restrain competitors from engaging in lawful business activities.***" *Id.* (footnote omitted) (emphasis added). However, ejection of the Selected Defendants from the marketplace altogether is precisely what the TRO and the proposed injunction would accomplish.

As noted above, the Selected Defendants have suffered and are continuing to suffer irreparable harm due to the freezing of their Amazon accounts. The survival of the Selected Defendants is at stake, should an injunction be entered that prolongs the harms caused by the TRO.[13] These extreme, improper, and inequitable measures will serve to destroy Selected Defendants' businesses before the merits of Plaintiff's claims have been adjudicated.

---

[13] It bears noting that Plaintiff's unsupported allegation that Easy-Fit and the other Selected Defendants will "modify e-commerce store data and content, redirect consumer traffic to other seller identification names, change payment accounts, and transfer assets", and/or will "electronically transfer and secret the funds sought to be restrained" is incorrect. The Selected Defendants do not pose a risk of transferring account funds, as each of them has been in operation for 4-10 years, and all of the revenue depends on the Amazon North American market. (*See* Liu Decl. ¶ 23; Wang Decl. ¶ 3; Zhou Decl. ¶ 2; Zeng Decl. ¶ 2; Zhang Decl. ¶ 2; Zhong Decl. ¶ 2; Jin Decl. ¶ 6.) It is impossible and impracticable for the Selected Defendants to cease operations abruptly and recreate its current customer base by creating a new seller account. (*Id.*) Further, as noted herein, for example, Easy-fit's main source of income is ██████████. Easy-Fit would not abandon its major source of income because of the Inflatable Alien Costume, which accounts for a very small portion of sales. (Liu Decl. ¶ 21.) Likewise, the other Selected Defendants have been in operation for 4-9 years, and have equally stable operations that they would not abandon in light of this litigation.

## V.  THE AMOUNT OF PLAINTIFF'S BOND SHOULD BE INCREASED TO AT LEAST $20 MILLION TO ACCOUNT FOR THE HARM SUFFERED BY THE SELECTED DEFENDANTS.

Finally, the $5,000 bond posted by Plaintiff in connection with this matter is plainly inadequate to support the potential losses of the Selected Defendants. As noted above, the Selected Defendants have had the entirety of their assets on Amazon frozen, in an amount upwards of $████████ (*See* Liu Decl.¶ 6; Wang Decl. ¶ 5; Zhou Decl. ¶ 6; Zeng Decl. at ¶ 6; Zhang Decl. ¶ 6; Zhong Decl. ¶ 6; Jin Decl. ¶ 2.[14]) This threatens the survival of the Selected Defendants as going concerns, as well as the wellbeing of their employees, and the Selected Defendants' vendors and suppliers.

Before a preliminary injunction can issue, the moving party must provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Rule 65(c)'s bond requirement balances the competing interests of the adverse parties: preliminarily enjoining a defendant's conduct prevents a plaintiff from incurring further irreparable harm, while the bond ensures at least some protection for the defendant in the event its conduct was wrongfully enjoined. *Mallet*, 16 F.4th at 390-391. The injunction bond serves as a deterrent to "rash applications for interlocutory orders; the bond premium and the chance of liability on it causes plaintiff to think carefully beforehand." A bond in an injunction proceeding should be sufficient to remediate any potential harm that an enjoined party may incur. *See* Fed. R. Civ. P. 65(c) ("bond must be posted "in such sum as the court deems proper, for the payment of such cots and damages as may be incurred or suffered by any party who is found to have been wrongfully

---

[14] The amounts frozen are subject to modification due to factors like returns and exchanges of products. The statistics set forth herein are based on combined data collected from the Selected Defendants as of November 21, 2023.

enjoined."); *Instant Air Freight Co.*, 882 F.2d at 804-805 ("the injunction bond provides a fund to use to compensate incorrectly enjoined defendants"; notably, not deciding whether remand on the district court's decision not to impose a bond was necessary "since we have independently found that the irreparable harm necessary for the grant of the injunction was lacking.").

As a practical matter, "the consequences of wrongfully enjoining a defendant could be dire if a district court were to significantly underestimate the economic impact of an injunction it issues." *Mallet*, 16 F.4th at 391. While that risk is offset to a degree by the high burden placed on the moving party to establish that an injunction is warranted, "the risk remains, especially if the scope of the injunction is far-reaching." *Id.* Thus, courts engage in a case-specific analysis that accounts for the factual circumstances of the parties, the nature of the case and competing harms, and the scope and potential impact of the injunction, and they should place on the record their reasons for setting a bond amount, so as to provide a meaningful basis for appellate review. *Id.*

In this case, the $5,000 bond imposed in connection with the TRO clearly will not suffice to compensate Selected Defendants if it is ultimately shown that the Selected Defendants were wrongfully enjoined.

Because of the threatened losses imposed by the lack of sales available, the Selected Defendants respectfully request that the Court require Plaintiff to post a bond in an amount of at least $███████ which represents the sum total of the sales the Selected Defendants are projected to lose (based on a review of last year's sales). (*See* Liu Decl. ¶ 21; Wang Decl. ¶ 19; Zhou Decl. ¶ 17; Zeng Decl. ¶ 17; Zhang Decl. ¶ 24; Zhong Decl. ¶ 19; Jin Decl. ¶ 16.)

27

**VI.    THE TEMPORARY RESTRAINING ORDER AND ORDER RESTRAINING ASSETS AND MERCHANT STOREFRONTS SHOULD BE VACATED AND PLAINTIFF'S BOND SHOULD BE FORFEITED.**

For all of the reasons set forth herein, Plaintiff is not entitled to injunctive relief. Equally, Plaintiff is not entitled to the protection of the TRO as against the Selected Defendants herein— most significantly, due to the lack of immediate and irreparable harm suffered by Plaintiff, as evidenced by Plaintiff's years of delay in filing suit. *See, e.g., Lydo Enters. v. City of Las Vegas,* 745 F.2d 1211, 1213 (9th Cir. 1984) (holding that a delay in seeking a injunctive relief is a factor to be considered in weighing the propriety of relief); *Dahl v. Swift Distrib., Inc.*, 2010 WL 1458957, at *4 (C.D. Cal. April 1, 2010) (finding that an 18-day delay in filing a TRO application "implie[d] a lack of urgency and irreparable harm".

Moreover, Plaintiff is required to—but cannot—demonstrate a "likelihood of dissipation of the claimed assets, or other inability to recover money damages, if relief is not granted" (*Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009)) because the Selected Defendants, as top Amazon sellers with overall rankings much higher than the Plaintiff, cannot afford to flout the jurisdiction of the United States. The Selected Defendants have been operating for ████ ██████████████████ % of their revenue, around $███████ annually, dependent on the Amazon's United States site. It is unthinkable that the Selected Defendants would dissolve and/or dissipate their assets, or that the Selected Defendants would be unable to pay damages to Plaintiff, which is a smaller and lower-ranked competitor on Amazon. (*See, e.g.*, Liu Decl. ¶ 23.)

Accordingly, the Selected Defendants respectfully request that the Court vacate the TRO and Order Restraining Assets and Merchant Storefronts immediately as applied to Selected Defendants, and require Plaintiff to forfeit the patently inadequate bond to compensate the Selected Defendants for the harm they have suffered while in place.

## CONCLUSION

For all the foregoing reasons, Selected Defendants Poptrend-Official, Decalare, Easy-Fit, Hacosoon Flagship Store, Hacosoon Shop, Stegosaurus, and YEAHBEER store respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction in its entirety, immediately dissolve the temporary restraining order, and require Plaintiff to forfeit the $5,000 bond posted.

Respectfully submitted,

DENTONS COHEN & GRIGSBY P.C.

By: */s/ Audrey K. Kwak*
Audrey K. Kwak (Pa. I.D. No. 200527)
Mark A. Mazza (Pa. I.D. No. 325858)
audrey.kwak@dentons.com
mark.mazza@dentons.com

625 Liberty Avenue, 5th Floor
Pittsburgh, PA 15222-3152
Ph: (412) 297-4900 / Fax: (412) 209-1975

Qianwu Yang (admitted *pro hac vice*)
SHM LAW FIRM
3000 El Camino Real, Building 4, Suite 200
Palo Alto, California 94306
Tel.: +86 139 2521 2009
yang@shm.law

*Counsel for Selected Defendants*

Dated:  November 24, 2023

4722487 v1

## LISTING OF EXHIBITS

| Document | Description |
|---|---|
| Declaration 1 | Declaration of Liu Ping (easy-fit) |
| Declaration 2 | Declaration of Weiwei Wang (Poptrend-Official) |
| Declaration 3 | Declaration of Qingbin Zhou (Stegosaurus) |
| Declaration 4 | Declaration of Zeng Fengyong (Hacosoon Shop) |
| Declaration 5 | Declaration of Zhang Hongzhu (Hacosoon Flagship Store) |
| Declaration 6 | Declaration of Lei Zhong (Decalare) |
| Declaration 7 | Declaration of Jin Benfang (YEAHBEER) |
| Exhibit 1 | Poptrend-Official Ratings |
| Exhibit 2 | Date Decalare Inflatable Alien Costume First Available (Adult) |
| Exhibit 3 | Date Decalare Inflatable Alien Costume First Available (Child) |
| Exhibit 4 | Poptrend-Official - Amazon Storefront Page |
| Exhibit 5 | Decalare - Amazon Storefront Page |
| Exhibit 6 | Easy-fit - Amazon Storefront Page |
| Exhibit 7 | Hacosoon Flagship Store - Amazon Storefront Page |
| Exhibit 8 | Hacosoon Store - Amazon Storefront Page |
| Exhibit 9 | Stegosaurus - Amazon Storefront Page |
| Exhibit 10 | YEAHBEER store - Amazon Storefront Page |
| Exhibit 11 | 2022 Sales Data - Hacosoon Flagship Store |
| Exhibit 12 | 2022 Sales Data - Decalare |
| Exhibit 13 | 2022 Sales Data - Hacosoon Shop (Registered name Vkezi) |
| Exhibit 14 | 2022 Sales Data - YEAHBEER store |
| Exhibit 15 | 2022 Sales Data - Stegosaurus |
| Exhibit 16 | 2022 Sales Data - Poptrend-Official |
| Exhibit 17 | 2022 Sales Data - easy-fit - registered by Jianyuan |
| Exhibit 18 | Easy fit - Amazon Notice |
| Exhibit 19 | Poptrend-Official - Amazon Notice |
| Exhibit 20 | Stegosaurus - Amazon Notice |
| Exhibit 21 | Hacosoon Shop - Amazon Notice |
| Exhibit 22 | Decalare - Amazon Notice |
| Exhibit 23 | Hacosoon Flagship Store - Amazon Notice |
| Exhibit 24 | YEAHBEER Store - Amazon Notice |
| Exhibit 25 | Decalare - AFG Counsel Email Notice |
| Exhibit 26 | Hacosoon Flagship Store - AFG Counsel Email Notice |
| Exhibit 27 | Hacosoon Shop - AFG Counsel Email Notice |
| Exhibit 28 | Stegosaurus - AFG Counsel Email Notice |
| Exhibit 29 | Poptrend-Official - AFG Counsel Email Notice |
| Exhibit 30 | YEAHBEER Store - AFG Counsel Email Notice |

**LISTING OF EXHIBITS**
**(continued)**

| Document | Description |
|---|---|
| Exhibit 31 | Easy-fit - AFG Counsel Email Notice |
| Exhibit 32 | Easy-fit -AFG Counsel Email Notice |
| Exhibit 33 | 2018-11-23 AFG Customer Review |
| Exhibit 34 | 2016-10-11 Customer Review |
| Exhibit 35 | 2016-11-01 Customer Review |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Opposition to Plaintiff's Motion for Preliminary Injunction was electronically filed on November 24, 2023, with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to all counsel of record.



*/s/ Audrey K. Kwak*