**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| AFG MEDIA LTD, | Civil Action No. 2:23-cv-1840 |
| Plaintiff, | Hon. William S. Stickman IV |
| v. | |
| POPTREND-OFFICIAL, ET AL., | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW
<u>IN SUPPORT OF MOTION TO DISMISS</u>**

Qianwu Yang (admitted *pro hac vice*)
SHM LAW FIRM
3000 El Camino Real, Building 4, Suite 200
Palo Alto, California 94306
Tel.: +86 139 2521 2009
yang@shm.law

Audrey K. Kwak (Pa. I.D. No. 200527)
Mark A. Mazza (Pa. I.D. No. 325858)
DENTONS COHEN & GRIGSBY, P.C.
625 Liberty Avenue, 5th Floor
Pittsburgh, PA 15222-3152
Ph: (412) 297-4900 / Fax: (412) 209-1975
audrey.kwak@dentons.com
mark.mazza@dentons.com

Timothy C. Bickham (admitted *pro hac vice*)
DENTONS US LLP
1900 K Street NW
Washington, DC 20006
Ph: (202) 408-6390
timothy.bickham@dentons.com

*Counsel for Moving Defendants*

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 3

     A.   Relevant Facts ........................................................................................ 3

     B.   Procedural History .................................................................................. 5

III. ARGUMENT ...................................................................................................... 6

     A.   The Hague Convention Applies to Moving Defendants ......................... 6

     B.   The Purpose of the Hague Convention: Establishing Certain Means to
          Serve Process on Foreign Nationals and Preempting Inconsistent Methods
          of Service ...............................................................................................11

     C.   Service via Email and/or Website Publication on Litigants in China Was
          Improper as Prohibited by the Hague Convention................................. 12

     D.   Permission of Service via Email and/or Website Publication Makes
          Articles 11 & 19 of Hague Convention Largely Superfluous............................... 16

     E.   Permission of Service via Email and/or Website Publication Would
          Effectively Make the Hague Convention Obsolete ............................... 16

     F.   China, the Receiving Country, Objects to Electronic Service ............................. 17

IV.  CONCLUSION.................................................................................................. 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Access Content Sys. Licensing Admin., LLC v. Shen*,
  2018 WL 4757939 (S.D.N.Y. Sept. 30, 2018) ........................................................................ 7

*Anova Applied Elecs., Inc. v. Hong King Grp., Ltd*.,
  334 F.R.D. 465 (D. Mass. 2020) .................................................................................... 14, 16

*Burda Media, Inc. v. Viertel*,
  417 F.3d 292 (2d Cir. 2005) ............................................................................................... 13

*Compass Bank v. Katz*,
  287 F.R.D. 392 (S.D. Tex. 2012) .......................................................................................... 7

*CRS Recovery, Inc. v. Laxton*,
  No. C 06-7093 CW, 2008 WL 11383537 (N.D. Cal. Jan. 8, 2008) ....................................... 14

*Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co*.,
  480 F. Supp. 3d 977 (N.D. Cal. 2020) ............................................................................ 14, 18

*Habas Sinai Ve Tibbi Gazlar Istihsal A.S. v. Int'l Tech. & Knowledge Co.*,
  2019 WL 7049504 (W.D. Pa. Dec. 23, 2019) ....................................................................... 14

*Hayward Indus., Inc. v. CompuPool Prod.*,
  2023 WL 3736216 (D.N.J. May 31, 2023) ............................................................................. 7

*In re Bozel S.A.*,
  2017 WL 3175606 ................................................................................................................ 10

*Joint Stock Co. Channel OneRussia Worldwide v. Infomir LLC*, 2018 WL 4681616
  (S.D.N.Y. Sept. 11, 2018), *report and recommendation adopted sub nom.*
  *ChannelOne Russia Worldwide v. Infomir LLC*, 2018 WL 4666069 (S.D.N.Y. Sept.
  28, 2018) ............................................................................................................................. 10

*Kelly Toys Holdings, LLC. v. Top Dep't Store*,
  No. 22 Civ. 558, 2022 WL 3701216 (S.D.N.Y. Aug. 26, 2022) .............................................. 8

*Leone v. Towanda Borough*,
  No. CIV.A. 3:12-0429, 2012 WL 1123958 (M.D. Pa. Apr. 4, 2012) ........................................ 6

*Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on
  Sch*edule "A",
  391 F. Supp. 3d 816 (N.D. Ill. 2019) .................................................................................... 14

*Murphy Brothers, Inc. v. Michetti Pipe Stringing*,
  526 U.S. 344 (1999)............................................................................................................. 3

*NOCO Co. v. Liu Chang*,
  No. 1:18-CV-2561, 2019 WL 2135665 (N.D. Ohio May 16, 2019)....................................... 18

*Opella v. Rullan*,
  2011 WL 2600707 (S.D. Fla. June 29, 2011)........................................................................ 7

*Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*,
  494 F. Supp. 3d 404 (N.D. Tex. 2020) ................................................................................ 14

*Progressive Se. Ins. Co. v. J & P Transp.*,
  2011 WL 2672565 (N.D. Ind. July 8, 2011) ........................................................................... 7

*Rice v. Electrolux Home Products, Inc.*,
  No. 4:15-CV-00371, 2018 WL 4964076 (M.D. Pa. Oct. 15, 2018)....................................... 14

*Rio Properties, Inc. v. Rio Intern. Interlink*,
  284 F.3d 1007 (9th Cir. 2002)............................................................................................... 9

*RSM Prod. Corp. v. Fridman*, 06 CIV. 11512 (DLC),
  2007 WL 1515068 (S.D.N.Y. May 24, 2007) ...................................................................... 13

*Safavieh Intl, LLC v. Chengdu Junsen Fengrui Tech. Co.-Tao Shen*,
  No. 23 CIV. 3960 (CM), 2023 WL 3977505 (S.D.N.Y. June 13, 2023) ................................ 14

*SeaCube Containers LLC v. Compass Containers & Shipping Services Ltda.*,
  427 F. Supp. 3d 497 (S.D.N.Y. 2019) .................................................................................. 13

*Smart Study Co. v. Acuteye-U.S*,
  620 F. Supp. 3d 1382 (S.D.N.Y. 2022) ........................................................................ passim

*Sulzer Mixpac AG v. Medenstar Indus. Co., Ltd.*,
  312 F.R.D. 329 (S.D.N.Y. 2015) ......................................................................................... 11

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  486 U.S. 694 (1988)..................................................................................................3, 7, 11, 12

*Water Splash, Inc. v. Menon*,
  137 S. Ct. 1504 (2017)........................................................................................... 2, 3, 12, 16

*Zuru (Singapore) Pte., Ltd. v. Individuals Identified on Schedule A Hereto*,
  No. 22 Civ. 2483, 2022 WL 14872617 (S.D.N.Y. Oct. 26, 2022) ......................................... 8

**Rules**

Fed. R. Civ. P. 65(a) ........................................................................................................ 6

Federal Rule of Civil Procedure 4(f) ..............................................................10, 11, 14

**Other Authorities**

Article 11 of the Minutes of the National Symposium on Foreign-related Commercial
     and Maritime Trial Work........................................................................................... 14

Article 267 of the Civil Procedure Law of the People's Republic of China (2021) ..................... 18

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or
     Commercial Matters .................................................................................................. 1

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

Moving Defendants Poptrend-Official (Defendant No. 1 on Schedule A to Complaint ("Schedule A"); Decalare (Schedule A, Defendant No. 5); Easy-Fit (Schedule A, Defendant No. 6); Hacosoon Flagship Store (Schedule A, Defendant No. 8); Hacosoon Shop (Schedule A, Defendant No. 9); Stegosaurus (Schedule A, Defendant No. 17); and YEAHBEER store (Schedule A, Defendant No. 21) (collectively, "Moving Defendants" ), by and through their undersigned counsel, appear specifically for the limited purpose of moving the Court to dismiss all claims against Moving Defendants asserted by Plaintiff AFG Media, Ltd. ("Plaintiff").

## I.      INTRODUCTION

Similar to the outdated cases cited by Plaintiff, where plaintiffs, like Plaintiff in this case, managed or attempted to achieve coerced and oftentimes unjust settlements (or simply default judgments) with wholly unopposed motions for alternative service, this Court did not have the benefit of briefing that took an alternative position to Plaintiff's prior to deciding Plaintiff's  Ex Parte Motion for an Order Authorizing Alternative Service ("Ex Parte Motion") (ECF 11). *See Smart Study Co. v. Acuteye-U.S.,* 620 F. Supp. 3d 1382, 1396 (S.D.N.Y. 2022) ("And, as is the case here, the motion for alternative service in Sulzer was wholly unopposed, such that the court did not have the benefit of briefing that took an alternative position to that advanced by the plaintiff in that case. *See Mixpac AG v. Medenstar Indus. Co.,* Case No. 1:15-cv-1668, Dkt. Nos. 5-9 (S.D.N.Y.).")

The alternative service purportedly effected on the Moving Defendants was based on an order obtained by Plaintiff's inaccurate representations of the law and facts. If service by email or mere publication on the website of a plaintiff's legal counsel is permissible under the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or

Commercial Matters ("Hague Convention"), then the Hague Convention would effectively be annulled. This is because, like Plaintiff here, no one would even attempt the methods of service specified by the Hague Convention when these much simpler and cheaper alternative methods—which do not provide the same guarantees of notice to defendants as even state rules regarding service of process—are available. Such an interpretation of this vital international treaty cannot be correct.

Plaintiff contends in its Ex Parte Motion that: "Courts in the Southern District of New York are also very experienced in handling cases against merchants on Internet marketplaces and have consistently permitted alternate electronic service." (ECF 11). It is true that courts in the Southern District of New York are very experienced in handling cases regarding alternative service. However, courts in the Southern District of New York have changed their view regarding alternative service on defendants located in China since 2022, as seen in *Smart Study Co.,* 620 F. Supp. 3d 1382, 1396. (For example, "the Court determines that service by email on individuals or entities located in China is not permitted under the [Convention] or the Federal Rules of Civil Procedure.")

Moreover, as the *Smart Study* court points out, many courts across America hold this same view. "In this Court's view, like that of courts in the Northern District of California, the District of Massachusetts, and the Northern District of Illinois (among others), *Water Splash* and *Schlunk* clarify that the Convention is meant to set forth simple and certain methods of service that can be used to serve foreign litigants. To infer that the Convention's silence as to a particular method equates to an implied permission to use virtually *any* method of service not proscribed by the Convention contravenes that purpose. *See Smart Study Co.,* 620 F. Supp. 3d 1382, 1396; *see also Water Splash, Inc. v. Menon,* 137 S. Ct. 1504 (2017) ("To that end, the

Hague Service Convention specifies certain approved methods of service and "pre-empts inconsistent methods of service" wherever it applies"); *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 706 (1988) ("The Convention provides simple and certain means by which to serve process on a foreign national.")

Service of process is not a mere technicality but rather a fundamental prerequisite for any legal proceeding. *See Murphy Brothers, Inc. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999) ("Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."). The Court may not ignore the text of Rule 4(f), the Hague Convention, and Chinese law, which do not allow email service or service via publication on a website, in order to make service more efficient for Plaintiff. Nor may the Court ignore the implications of the Supreme Court's decisions in *Water Splash* and *Schlunk*. Instead, the Court is bound by "those precedential and textual strictures… the systemic comity interests embodied in the Service Convention shouldn't be sacrificed in the name of "concrete case management concerns." *See Smart Study Co.,* 620 F. Supp. 3d 1382, 1402.

## II.    BACKGROUND

### A.    Relevant Facts

Plaintiff possesses Copyright Registration No. VA 2-261-150, with an effective date of registration of September 16, 2020.  (Ex. 3B to Complaint.)  The title of Plaintiff's work is "Carried by Alien 'Pick me Up' Inflatable Costume."

The Moving Defendants are independently owned Chinese entities that operate seven Amazon.com storefronts. Each storefront is located in China, with addresses available on the Amazon storefront interface, as follows:

- **Poptrend-Official**: Room 1002, 10th Floor, Zhongxing Building, Xingxing Community, Xinqiao Street, Baoan District, Shenzhen, Guangdong 518105 China (available at

https://www.amazon.com/sp?ie=UTF8&seller=A33BMWTKYKIOJL&asin=B09SCVB94X
&ref_=dp_merchant_link&isAmazonFulfilled=1)

- **Decalare**: 1025(E), No. 5 Golf Avenue, Guangpei Community, Guanlan Street, Longhua
  District, Shenzhen, Guangdong 518000 China (available at
  https://www.amazon.com/sp?ie=UTF8&seller=A14XN8BPYZV8OO&asin=B0893FJFJR&r
  ef_=dp_merchant_link&isAmazonFulfilled=1)

- **Easy-Fit**: 5603A, 56th Floor, SEG Plaza, Huaqiang North Road, Huaqiang North Street,
  Futian District, Shenzhen 518000 China (available at
  https://www.amazon.com/sp?ie=UTF8&seller=A3FYKOHW6MEN36&isAmazonFulfilled=
  1&asin=B083L8RNJR&ref_=olp_merch_name_4)

- **Hacosoon Flagship Store**: 1st Floor, 13 Cao Lang Street, Zhenxingwei, Tangxia Town,
  Dongguan, Guangdong 523720 China (available at
  https://www.amazon.com/sp?ie=UTF8&seller=A2E7OGP441SC0M&asin=B07T4VV9SC&
  ref_=dp_merchant_link&isAmazonFulfilled=1)

- **Hacosoon Shop**: Room 301, No. 3, Qingfeng 1st Road, 2nd Lane, Baiyun district,
  Guangzhou, Guangdong 510430 China (available at
  https://www.amazon.com/sp?ie=UTF8&seller=A27GOAX4KXJA22&asin=B0CBLXSPWQ
  &ref_=dp_merchant_link&isAmazonFulfilled=1)

- **Stegosaurus**: 501, Unit 8, Building 2, Xingxing Commercial Street, Shangde Road,
  Xingxing Community, Xinqiao Street, Baoan District, Shenzhen, Guangdong 518125 China
  (available at https://www.amazon.com/sp?ie=UTF8&seller=A6KRJRJHT6G0R&asin=
  B0C2Z5CRCN&ref_=dp_merchant_link&isAmazonFulfilled=1)

- **YEAHBEER store**: No. 9, Shangliutun, Zhongzhou Village, Zhangmu Town, Qintang
  District, Guigang, Yulin City, Guangxi, 53700 China (available at
  https://www.amazon.com/sp?ie=UTF8&seller=A2YOU85DCOCIGS&asin=B0CK7YC57X
  &ref_=dp_merchant_link&isAmazonFulfilled=1)

Apart from the allegedly infringing costume at issue, each storefront sells a number of

other products, including, for example, massage guns and inflatable home decorations, none of

which are implicated by this litigation. (*See* Liu Decl. ¶¶ 2, 21; Wang Decl. ¶¶ 2, 20; Zhou Decl.

¶¶ 2, 21; Zeng Decl. ¶¶ 2, 20; Zhang Decl. ¶¶ 2, 27; Zhong Decl. ¶¶ 2, 21; Jin Decl. ¶¶ 2, 6.[1]) In

---

[1] Unless otherwise noted, Declaration and Exhibit references herein refer to the Declarations and Exhibits
filed in connection with the Moving Defendants' Opposition to Plaintiff's Preliminary Injunction Motion
(ECF 58).

total, the seven storefronts sell 408 discrete ASINs.[2] Each storefront sells only one or two (a child and adult version of the allegedly infringing costume) items that are implicated by Plaintiff's claims in this litigation. (*See* Liu Decl. ¶ 4, 10; Wang Decl. ¶¶ 3, 9; Zhou Decl. ¶ 4; Zeng Decl. ¶ 4; Zhang Decl. ¶ 4; Zhong Decl. ¶ 4; Jin Decl. ¶ 4.) However, the sum total of Moving Defendants' funds earned by its Amazon sales (upwards of $1.67 million) has been frozen and is inaccessible to the Moving Defendants. These restraints are threatening the survival of the Moving Defendants' businesses and their ability to pay employees, vendors, and suppliers. (*See* Liu Decl. ¶¶ 17-23; Wang Decl. ¶¶ 20-23; Zhou Decl. ¶¶ 17-21; Zeng Decl. ¶¶ 19-22; Zhang Decl. ¶¶ 19-30; Zhong Decl. ¶¶ 19-27; Jin Decl. ¶¶ 17-21.)

## B.    Procedural History

On October 24, 2023, Plaintiff filed its Complaint against thirty-six entities that operate online storefronts (listed on an attached Schedule A), including on Amazon.com. (Complaint, ECF 2.) Plaintiff alleges broadly that all defendants have infringed Plaintiff's copyright in its MORPH brand Alien Costume. That same date, Plaintiff filed a Motion for Temporary Restraining Order ("TRO"), Order Restraining Assets and Merchant Storefronts, Order to Show Cause Why a Preliminary Injunction Should Not Issue; and Order Authorizing Expedited Discovery (ECF 4); (3) Motion for an Order Authorizing Alternative Service ("Alternative Service Motion") (ECF 11). Notably, Plaintiff did not attempt service of any sort prior to its request to circumvent the Hague Convention applicable to Moving Defendants.

That same day, this Court granted Plaintiff's request for a TRO, thereby enjoining all defendants, including Moving Defendants from, among other things, distributing, marketing,

---

[2] Amazon Standard Identification Number (ASIN) is a ten-digit alphanumeric code that identifies products on Amazon. The ASINs are broken out by storefront as follows: (1) Stegosaurus: 186 ASINs; (2) Poptrend Official: 102 ASINs; (3) YEAHBEER Store: 37 ASINs; (4) easy-fit: 36 ASINs; (5) Decalare: 22 ASINs; (6) Hacosoon Flagship: 15 ASINs; and (7) Hacosoon Shop: 10 ASINs.

advertising, offering for sale, or sale of any products allegedly using Plaintiff's Work, and simultaneously freezing and restraining "all funds" associated with any of the accounts of the defendants listed on the Schedule A submitted with the Complaint. (ECF 20.) The Court also ordered defendants to show cause why a preliminary injunction pursuant to Fed. R. Civ. P. 65(a) should not issue. (*Id.* p. 11.[3])

That same day, the Court also granted Plaintiff's Alternative Service Motion. (ECF 21.) The Order granting Plaintiff's request to serve by alternative means was broader than the relief requested by Plaintiff, allowing Plaintiff to serve via email *or* website publication (rather than email *and* website publication). The Moving Defendants did not receive constructive or actual notice of this litigation from either method of service. (Liu Decl. ¶ 7; Wang Decl. ¶ 6; Zhou Decl. ¶ 7; Zeng Decl. ¶ 7; Zhang Decl. ¶ 7; Zhong Decl. ¶ 7; Jin Decl. ¶ 7.) Instead, Moving Defendants learned of this litigation by notification of their accounts being frozen from Amazon.com, on which Moving Defendants list all of their products (including dozens of products that are not implicated by this litigation). (*See* **Exhibits 18-31**.) A hearing on Plaintiff's Motion was held on December 7, 2023. (ECF 30.)

## III.   ARGUMENT

### A.   The Hague Convention Applies to Moving Defendants

The Hague Convention applies because the Plaintiff can make reasonable efforts to find the Moving Defendants' physical addresses.

---

[3] In addition, Plaintiff's Motion for Expedited Discovery was granted. However, for the same reasons articulated herein regarding insufficient service of process, the Moving Defendants believe that they have not been properly served with Plaintiff's discovery requests. The Moving Defendants also submit that Plaintiff has not established good cause for the requested discovery, that the discovery requested is far broader and more invasive than is warranted at this time, and that the response time of 14 days is not reasonable. *See, e.g.*, *Leone v. Towanda Borough*, No. CIV.A. 3:12-0429, 2012 WL 1123958, at *2 (M.D. Pa. Apr. 4, 2012) (the party seeking expedited discovery must show "good" cause for its motion, such that the request is "reasonable" in light of the circumstances).

Courts look to Article 1 to determine whether the Hague Convention applies. *Schlunk*, 486 U.S. at 699. Article 1 specifies the Hague Convention's scope. The first sentence states the "Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." *Id*. (quoting Article 1 of The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361). Where it applies, compliance with the Hague Convention is "mandatory." *Id.* at 698–99 (1988). The purpose of the Hague Convention is "to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Id.* at 698. Article 1 also states the Hague Convention does not apply "where the address of the person to be served with the document is not known." Art. 1, 20 U.S.T. at 362.

Courts have interpreted the second sentence of Article 1 consistently. A plaintiff cannot close its eyes to the obvious to avoid the Hague Convention; the plaintiff must make reasonably diligent efforts to learn a defendant's mailing address. *See Advanced Access Content Sys. Licensing Admin., LLC v. Shen*, 2018 WL 4757939, at *4–5 (S.D.N.Y. Sept. 30, 2018); *Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1390 (S.D.N.Y. 2022) ("an address is not known if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so") (citations omitted); *Progressive Se. Ins. Co. v. J & P Transp.*, 2011 WL 2672565, at *3 (N.D. Ind. July 8, 2011) (citing *Opella v. Rullan*, 2011 WL 2600707, at *5 (S.D. Fla. June 29, 2011)); *Compass Bank v. Katz*, 287 F.R.D. 392, 394–95 (S.D. Tex. 2012) (collecting and discussing cases). *See also Hayward Indus., Inc. v. CompuPool Prod.*, 2023 WL 3736216, at *6 (D.N.J. May 31, 2023) ("While Plaintiff need not show that service through ordinary channels would be futile, it is reasonable to require Plaintiff

to attempt to comport with the Hague Convention, without prejudice to its right to renew the within application and establish with reliable evidence that service through ordinary means would be difficult or futile." (citation omitted)).

Reasonable diligence requires more than a "mere perusal of defendant's storefront." *Smart Study Co*., 620 F. Supp. 3d at 1390. A plaintiff must make further efforts, such as investigating likely physical addresses and determining whether they are associated with defendants. *See Kelly Toys Holdings, LLC. v. Top Dep't Store*, No. 22 Civ. 558, 2022 WL 3701216, at *6 (S.D.N.Y. Aug. 26, 2022) (dispatched investigator and local counsel to determine whether physical addresses were associated with defendants); *Zuru (Singapore) Pte., Ltd. v. Individuals Identified on Schedule A Hereto*, No. 22 Civ. 2483, 2022 WL 14872617, at *2 (S.D.N.Y. Oct. 26, 2022) (conducted "further online research, sent mail to the addresses, and conducted in-person visits" to determine whether physical addresses provided by Amazon were accurate).

Here, Plaintiff did not even go so far as to examine the Moving Defendants' storefronts. Rather, Plaintiff looked at "information contained on Defendants' actual e-commerce stores" and "shipping information" and summarily concluded that all defendants' operations "are most likely based in and/or shipping from China or other foreign jurisdictions. (Declaration of S. Ference, ECF 12, ¶ 13.) As noted above, any reasonable amount of diligence would have yielded the Moving Defendants' addresses, each of which is readily accessible via Amazon.com, which requires that each storefront provide a valid physical address. (**Exhibits 4-10** to Opposition.)

Simply put, this is not a case "where the address of the person to be served with the document is not known." Despite having access to this basic information, Plaintiff declined to conduct the most basic investigation or to make any effort to confirm whether the Moving

Defendants' publicly disclosed addresses were correct. In short, Plaintiff has failed to carry its burden to show that the Moving Defendants' addresses are unknown. Consequently, the Hague Service Convention applies in this case.

Furthermore, most of the cases heavily relied upon by the Plaintiff in its Ex Parte Motion are not applicable to this case because the Hague Convention ultimately did not apply in those cases. In those cases, the defendants were either not located in a signatory country or could not be located despite the plaintiffs' reasonable efforts. *See*, *e.g.*, *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007 (9th Cir. 2002) ("Thus thwarted in its attempt to serve RII in the United States, RIO investigated the possibility of serving RII in Costa Rica…The parties agree, however, the Hague Convention does not apply in this case because Costa Rica is not a signatory.")

In particular, the Plaintiff's representation regarding *Smart Study* in relation to the application of the Hague Convention and preliminary injunction is, at best, inaccurate.[4] The argument falls short for several key reasons, as follows:

First, the *Smart Study* court did enter a preliminary injunction, but that was because, among other things, no defendants appeared to challenge the improper service during the show cause hearing, and the court was not aware of it. *See Smart Study Co.,* 620 F. Supp. 3d 1382, 1401-02 ("Indeed, Plaintiff's counsel's firm has filed approximately forty such requests in this district in 2022 alone, the majority of which appear to be wholly unopposed. …Thus, courts are

---

[4] In Plaintiff's Reply to the Opposition by Toloco Defendants [ECF No. 58] and Defendant Camlinbo [ECF No. 62] regarding the Motion for Preliminary Injunction (the 'Reply') (ECF 74), it states: "Indeed, in *Smart Study Co., Ltd. v. Acuteye-Us*, 620 F.Supp.3d 1381 (S.D.N.Y. 2022) – the case relied upon by the Toloco Defendants – the court entered a preliminary injunction that has been in place since August 3, 2021 [SDNY 21-cv-5860 EFC No. 16], the court has now entered a default judgment with a permanent injunction against 49 of the 51 defendants referenced in the case [SDNY 21-cv-5860 EFC No. 134], and is considering how to proceed against the two remaining defendants."

unlikely to be alerted to authority that casts doubt on the propriety of their request for email service. In this case, it was not until YLILLY's reply brief shed light on the issue that the Court had any notice that email service might not be permissible on defendants located in China."

Second, the *Smart Study* court has now entered a default judgment with a permanent injunction against 49 of the 51 defaulting defendants referenced in the case. However, this decision was made because the court determined that the Hague Convention does not apply to those 49 defendants, after finding that the plaintiff exercised reasonable diligence in attempting to discover the defaulting defendants' physical addresses for service of process and was unsuccessful in doing so. *See Smart Study Co. v. Acuteye-U.S.,* 1:21-cv-5860-GHW (S.D.N.Y. July 18, 2023) (**Exhibit 1** to Motion) and Smart Study's response to the court's order to show cause as to why the case should not be dismissed (**Exhibit 2** to Motion, at p.1).

Lastly, the *Smart Study* court has ordered the plaintiff to show cause by December 4, 2023, as to why that action should not be dismissed for failure to serve process in accordance with Federal Rule of Civil Procedure 4(f). *See also Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, 2018 WL 4681616 (S.D.N.Y. Sept. 11, 2018)*, report and recommendation adopted sub nom. *Channel One Russia Worldwide v. Infomir LLC*, 2018 WL 4666069 (S.D.N.Y. Sept. 28, 2018); *In re Bozel S.A.,* 2017 WL 3175606, at *2. *See Smart Study Co. v. Acuteye-U.S.*, 1:21-cv-5860-GHW (S.D.N.Y. November 20, 2023) (**Exhibit 3** to Motion, at p. 3).

In its Order to Show Cause issued on November 30, 2023, the *Smart Study* court reiterates its opinion from its July 21, 2022, Memorandum Opinion and Order that the Hague Convention prohibits service by email on litigants in China. *See Smart Study Co,* 1:21-cv-5860-GHW (**Exhibit 3** to Motion at pp. 2-3) ("And as the Court explained during the October 25,

2023, hearing, given that the addresses of these two defendants are known, the Hague Convention applies to them. See [Hague Convention], art. 1; see also Dkt. No. 127 (explaining the Court's reasoning). Thus, serving these two defendants via email was improper under Rule 4(f).")

### B. The Purpose of the Hague Convention: Establishing Certain Means to Serve Process on Foreign Nationals and Preempting Inconsistent Methods of Service

The purpose of the Hague Convention is to specify certain approved methods of service and to preempt inconsistent methods of service, such as service via email and/or publication on the website of a plaintiff's own counsel. *See Smart Study Co.,* 620 F. Supp. 3d 1382, 1393. ("In reaching that conclusion, the Supreme Court reiterated that "the Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Id.* (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988)). In other words, *Water Splash* indicated that the only permissible methods of service were those "specified" in the Convention.)

"Moreover, the effect of a country's objections under Article 10 would be significantly diminished under Sulzer's rationale. If the Convention lays out specific means of service, countries can make specific objections to those means of service—just as a country can object to service by postal channels by objecting to Article 10(a). But if the Convention's silence as to a method of service implicitly authorizes that service, there would be no ready way to object to that method of service. Indeed, there would be nothing affirmative to object to. Simply put, the current force of an objection to a method of service in the Convention would be far less effective." *See Smart Study Co.,* 620 F. Supp. 3d at 1396. It is worth noting that *Sulzer Mixpac AG v. Medenstar Indus. Co., Ltd*., 312 F.R.D. 329 (S.D.N.Y. 2015) -- which supports Moving Defendants' position -- is another authority the Plaintiff relies on for its Ex Parte Motion.

If service via email and/or publication on the website of a plaintiff's own counsel had been known at the time of the Hague Convention and also specified therein, China, where all the Moving Defendants are located, would have filed an objection to it. This is evidenced by the Judicial Interpretation of the Supreme People's Court of China, which will be discussed further in "VI. China, the Receiving Country, Objects to Email Service" of this Memorandum.

Therefore, serving the Moving Defendants via email and/or publication on the website of Plaintiff's counsel clearly contravenes the purpose of the Hague Convention and constitutes a violation of its relevant provisions. This will be discussed in more detail below.

### C.      Service via Email and/or Website Publication on Litigants in China Was Improper as Prohibited by the Hague Convention

The Supreme Court of the United States has stated that the drafters of the Hague Service Convention intended to prohibit a method of service not mentioned in its text. *Schlunk*, 486 U.S. at 699 (holding that the Convention "pre-empts inconsistent methods of service …[wherever] it applies."); *Water Splash*, 137 S. Ct. at 1507 (reaffirming this holding).

The Hague Convention permits service only by the following means: via a central authority (Articles 2-7), diplomatic and consular agents (Articles 8-9), mail or through a judicial official of the State of destination if the destination State does not object (Article 10), methods allowed by other applicable international agreement (Article 11), and other means as allowed by the internal laws of the destination State (Article 19). *See Water Splash*, 137 S. Ct. at 1508 (reviewing permitted service methods). "The legal sufficiency of a formal delivery of documents must be measured against some standard. The Convention does not prescribe a standard, so we almost necessarily must refer to the internal law of the forum state." *Schlunk*, 486 U.S. at 700.

"Compliance with the Hague Service Convention is mandatory when serving a defendant who resides in a foreign country that is a signatory to the convention." *SeaCube Containers LLC*

*v. Compass Containers & Shipping Services Ltda*., 427 F. Supp. 3d 497, 500 (S.D.N.Y. 2019) (citation omitted). Because China is a signatory to the Hague Convention, "that international agreement is the exclusive means through which service can be effectuated when serving a [Chinese] defendant." *Id*.; *see also, RSM Prod. Corp. v. Fridman*, 06 CIV. 11512 (DLC), 2007 WL 1515068, at *1 (S.D.N.Y. May 24, 2007) ("Service on a foreign defendant pursuant to the Hague Convention …is mandatory when serving a defendant who resides in a foreign country that is a signatory to the convention.") (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299-300 (2d Cir. 2005)).

The alternative service purportedly effected on the Moving Defendants was based on an order obtained by Plaintiff's inaccurate representations of the law and facts, including Plaintiff's assertion that "third party merchants on Internet marketplaces, like Defendants, have been known to use aliases, false addresses and other incomplete identification information to shield their true identities and there are, in fact, no physical addresses whatsoever associated with the majority of Defendants' User Accounts" (*See* Plaintiff's *Ex Parte* Motion for Order Authorizing Alternative Service, ECF 11 at p. 9.) However, the Moving Defendants' addresses are each publicly available, contrary to Plaintiff's Alternative Moving Motion. Plaintiff's declaration fails to identify any meaningful investigation as to the Moving Defendants' addresses, or any effort to perform service of process on the Moving Defendants pursuant to the Hague Convention.

Moreover, China has objected to email service, and accordingly, in numerous decisions involving similar facts, courts have consistently held that China's Article 10(a) objection precludes email service. *Smart Study Co.*, 620 F. Supp. 3d 1382 (concluding that "service via email on litigants located in China is not permitted by the Hague Convention" and that plaintiff must serve the defendants via the Chinese central authority, the only method authorized by the

Hague Convention); *see also Habas Sinai Ve Tibbi Gazlar Istihsal A.S. v. Int'l Tech. & Knowledge Co.*, 2019 WL 7049504 at *4 (W.D. Pa. Dec. 23, 2019) ("[t]he argument that a country that has objected to service by 'postal channels' in Article 10 has implicitly indicated that it would accept service by e-mail relies on a questionable reading of the Hague Service Convention that elevates form over substance."); *Rice v. Electrolux Home Products, Inc.*, No. 4:15-CV-00371, 2018 WL 4964076 (M.D. Pa. Oct. 15, 2018) (denying request to serve by email on defendants located in China, finding "no sound justification for [the court] to find that Plaintiffs here should avoid the Hague Convention procedures"); *Safavieh Intl, LLC v. Chengdu Junsen Fengrui Tech. Co.-Tao Shen*, No. 23 CIV. 3960 (CM), 2023 WL 3977505, at *4–5 (S.D.N.Y. June 13, 2023) (same); *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co*., 480 F. Supp. 3d 977, 978 (N.D. Cal. 2020) (concluding that service by email was not proper); *Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 417 (N.D. Tex. 2020) (same); *Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 391 F. Supp. 3d 816, 825 (N.D. Ill. 2019) (same); *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd*., 334 F.R.D. 465, 472 (D. Mass. 2020) ("To permit service by e-mail would bypass the means of service set forth in the Convention."); *CRS Recovery, Inc. v. Laxton*, No. C 06-7093 CW, 2008 WL 11383537, at *2 (N.D. Cal. Jan. 8, 2008) ("An order allowing email service on a defendant located in China would contravene the treaty, and is not permitted under Rule 4(f)(3).").

Further, as the *Smart Study* court noted:

Recent guidance posted by Supreme People's Court of China leaves little doubt that China's objection to service by mail would encapsulate service by email. Article 11 of the Minutes of the National Symposium on Foreign-related Commercial and Maritime Trial Work provides guidance for Chinese courts serving litigants outside of China. Those minutes state:

> In the event that the country where the person to be served is located is a member state of the Hague Service Convention and objects to the service by mail under the Convention, ***it shall be presumed that the country does not allow electronic service, and the people's court shall not adopt electronic service***.
>
> July 1 Letter. That Chinese authorities opine that an objection to service by postal channels includes an implicit objection to service by email provides significant support for the view that China's objection to service by postal channels would preclude service by email under the Hague Convention.

620 F. Supp. 3d at 1394–95 (emphasis added).

Lastly, if service by email or by mere publication on the website of a plaintiff's legal counsel is permissible under the Hague Convention, then the Hague Convention could effectively become obsolete. This is because (like Plaintiff here) no one would even attempt the methods of service specified by the Hague Convention when these much simpler and cheaper alternative methods—which do not provide the same guarantees of notice to defendants as even state rules regarding service of process—are available. Such an interpretation of this vital international treaty cannot be incorrect.

Furthermore, it is worth noting that all cases from the District Court for the Southern District of New York authorizing email service, as cited by the Plaintiff in its Ex Parte Motion, which were largely unopposed, occurred before the *Smart Study* decision. For example, in the Ex Parte Motion, multiple 2018 cases are cited, wherein the plaintiff in each of the cases pursued trademark infringement claims against large groups of foreign defendants. The plaintiff in each of these cases initiated ex parte proceedings, resulting in default judgments, primarily due to settlements or defaults by the foreign defendants.[5]

---

[5] *Intenze Products, Inc. v. 1586, et al.*, No. 18-cv-4611-RWS (S.D.N.Y. May 24, 2018); *Allstar Marketing Group, LLC v. 158, et al.*, No. 18-cv-4101-GHW, Dkt. 22 (S.D.N.Y. May 17, 2018); *William Mark Corporation v. 1&cc, et al.,* No. 18-cv-3889-RA, Dkt. 18 (S.D.N.Y. May 2, 2018); *WOW Virtual Reality, Inc. v. Bienbest, et al.*, No. 18-cv-3305-VEC, Dkt. 9 (S.D.N.Y. April 16, 2018); *Ideavillage Products Corp. v. abc789456, et al.,* No. 18-cv-2962-NRB, Dkt. 11 (S.D.N.Y. April 11, 2018); *Ideavillage Products*

### D.     Permission of Service via Email and/or Website Publication Makes Articles 11 & 19 of Hague Convention Largely Superfluous

"Article 11 provides that any two states can agree to methods of service not otherwise specified in the Convention; and Article 19 clarifies that the Convention does not preempt any internal laws of its signatories that permit service from abroad via methods not otherwise allowed by the Convention." *See Water Splash*, 137 S. Ct. 1504, 1508; *see also* the Convention, online at https://www.hcch.net/en/instruments/conventions/full-text/?cid=17.

"What both these articles have in common is that they leave countries free to consent, either unilaterally or together, to means of service that are not specifically authorized by the Convention."  See *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.,* 334 F.R.D. 465, 472 (D. Mass. 2020). "In other words, Articles 11 and 19 provide ready tools to permit countries to expressly permit service by email. And those articles would be largely superfluous if litigants could serve a party in another country merely by selecting a method that is not expressly listed in the Hague Convention—there would be no need for articles that permit countries to agree to other methods of service, or to legislate to affirmatively authorize other methods of services." *See Smart Study Co.*, 620 F. Supp. 3d 1382, 1394.

### E.     Permission of Service via Email and/or Website Publication Would Effectively Make the Hague Convention Obsolete

As stated herein and in the Moving Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction (ECF 58 at pp. 11-14), service via email or website publication when the Hague Convention applies would render the treaty obsolete. This is because (like Plaintiff here) no one would even attempt the methods of service specified by the Hague Convention when

---

*Corp. v. Aarhus, et al*., No. 18-cv-2739- JGK, Dkt. 22 (S.D.N.Y. March 28, 2018); *Ideavillage Products Corp. v. Dongguan Shipai Loofah Sponge Commodity Factory, et al*., No. 18-cv-901- PGG, Dkt. 20 (S.D.N.Y. Feb. 1, 2018).

16

these much simpler and cheaper alternative methods—which do not provide the same guarantees of notice to defendants as even state rules regarding service of process—are available. Such an interpretation of this vital international treaty cannot be correct.

**F.    China, the Receiving Country, Objects to Electronic Service**

Chinese law does not permit electronic service, such as service by email or mere publication on the website of a plaintiff's legal counsel, in the context of this case. Article 11 of the Minutes of the National Symposium on Foreign-related Commercial and Maritime Trial,[6] which was issued by the Supreme People's Court of China on January 24, 2022, provides guidance for Chinese courts serving litigants outside of China.

Those minutes state:

> In the event that the country where the person to be served is located is a member state of the Hague Service Convention and ***objects to the service by mail*** under the Hague Convention, ***it shall be presumed that the country does not allow electronic service***, and the people's court shall not adopt electronic service.

*See also Smart Study Co.,* 620 F. Supp. 3d 1382, 1395.

Thus, in the view of the Supreme People's Court of China, a country objecting to service by mail under the Hague Convention is also considered to be objecting to electronic service, such as service by email or mere publication on the website of a plaintiff's legal counsel.

Moreover, Article 267 of the Civil Procedure Law of the People's Republic of China (2021) states:

> If there are different provisions in the international treaties concluded or acceded to by the People's Republic of China and this law, ***the provisions of the international treaties shall apply, except for the clauses reserved by the People's Republic of China***.

---

[6] "As amici explain, these meeting minutes are not formal law in China. Nonetheless, "the Supreme People's Court uses meeting minutes such as these to distribute its views to lower courts to guide court actions, and lower courts are expected to follow the guidance set forth in meeting minutes."" *See Smart Study Co. v. Acuteye-U.S.*, 620 F. Supp. 3d 1382, 1395 n.8 (S.D.N.Y. 2022)

Accordingly, China does not allow electronic service in the context of this case even though China may allow such service in other contexts. Therefore, permitting Plaintiff to serve Moving Defendants by electronic means violates the "systemic comity interests" embodied in the Hague Convention. See *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 987 (N.D. Cal. 2020) holding that "the systemic comity interests embodied in the Service Convention" shouldn't be sacrificed in the name of "concrete case management concerns." *See also NOCO Co. v. Liu Chang,* No. 1:18-CV-2561, 2019 WL 2135665 (N.D. Ohio May 16, 2019) ("[T]he Court's hands are tied. Plaintiff NOCO must serve Defendant Chang through China's Ministry of Justice.").)

## IV.    CONCLUSION

For the foregoing reasons, Moving Defendants request the Court to dismiss the entire complaint against them with prejudice.

Respectfully submitted,

SHM LAW FIRM

By: *s/ Qianwu Yang*
Qianwu Yang (admitted *pro hac vice*)
3000 El Camino Real, Building 4, Suite 200
Palo Alto, California 94306
Tel.: +86 139 2521 2009
yang@shm.law

Audrey K. Kwak (Pa. I.D. No. 200527)
Mark A. Mazza (Pa. I.D. No. 325858)
DENTONS COHEN & GRIGSBY, P.C.
625 Liberty Avenue, 5th Floor
Pittsburgh, PA 15222-3152
Ph: (412) 297-4900 / Fax: (412) 209-1975
audrey.kwak@dentons.com
mark.mazza@dentons.com

Timothy C. Bickham (admitted *pro hac vice*)
DENTONS US LLP
1900 K Street NW
Washington, DC 20006
Ph: (202) 408-6390
timothy.bickham@dentons.com

Dated: December 8, 2023                    *Counsel for Moving Defendants*
4737870.v1

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing Defendants' Memorandum in Support of Motion to Dismiss was electronically filed on December 8, 2023, with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to all counsel of record.

 *s/ Qianwu Yang*