IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AFG MEDIA LTD,

            *Plaintiff*,

v.

POPTREND-OFFICIAL, *et al*,

            *Defendants*.

Civil Action No. 2:23-cv-1840

Hon. William S. Stickman IV

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff, AFG Media Ltd ("AFG") asks the Court to enter a preliminary injunction enjoining Defendants[1] from their unauthorized use of AFG's copyrighted inflatable alien costume. (ECF No. 4). AFG asserts that by "promoting, selling, offering for sale and distributing knock-offs," Defendants are infringing on AFG's copyright. (ECF No. 6, p. 13). For the reasons explained below, the Court holds that AFG met its burden in demonstrating that it is entitled to preliminary injunctive relief.

**I.    STANDARD OF REVIEW**

The grant or denial of a preliminary injunction is within the sound discretion of a district court. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 178–79 (3d Cir. 2017) ("District courts have the freedom to fashion preliminary equitable relief so long as they do so by 'exercising their sound discretion.'" (citation omitted)). The primary purpose of preliminary injunctive relief is

---

[1] Remaining defendants in this case are Poptrend-Official; Camlinbo; Cubovie; Decalare; Easy-Fit; Goiden; Hacosoon Flagship Store; Hacosoon Shop; KOOY OFFICIAL STORE; Linkingus; MH ZONE, -SeeNew-; Stegosaurus; TGP US; Unilove; Xinruida-US; YEAHBEER store; Shenzhen Mojin Technology Co., LTD; DODYSNAS; Kilkwhell; Nightwill.; Suminiy.US (collectively, "Defendants").

"maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994). The "status quo" refers to "the last, peaceable, noncontested status of the parties." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). Rather, such relief "should be granted only in limited circumstances." *Kos Pharms.*, 369 F.3d at 708 (citation omitted). A moving party "must establish entitlement to relief by clear evidence." *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018). Specifically, the movant must demonstrate:

> (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.

*Kos Pharms.*, 369 F.3d at 708; *see also Winter*, 555 U.S. at 20. The first two factors are "the most critical," and the moving party bears the burden of making the requisite showings. *Reilly*, 858 F.3d at 176, 179 (citations omitted). Once those "gateway factors" are met, a court should "consider[ ] the remaining two factors" and then "determine[ ] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179.

In reaching its decision on a request for injunctive relief, a district court sits as both the trier of fact and the arbiter of legal disputes. A court must, therefore, make "findings of fact and conclusions of law upon the granting or refusing of a preliminary injunction." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1178 (3d Cir. 1990) (citing Fed. R. Civ. P. 52(a)(2)). This "mandatory" requirement of Federal Rule of Civil Procedure Rule 52(a)(2) must be met "even when there has been no evidentiary hearing on the motion." *Id.* Nevertheless, at the preliminary injunction stage, "procedures [ ] are less formal and evidence [ ] is less complete than

in a trial on the merits." *Kos Pharms.*, 369 F.3d at 718; *see also AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) ("[T]he grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing [that] is the responsibility of the district judge." (citations omitted)). Accordingly, a court "may rely on affidavits and hearsay materials which would not be admissible evidence." *Kos Pharms.*, 369 F.3d at 718 (quoting in parenthetical *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995)). But the weight given to such materials will "vary greatly depending on the facts and circumstances of a given case." *Id.* at 719. A court is also tasked with assessing the credibility of witness testimony and may base the decision to grant or deny a preliminary injunction on credibility determinations. *See, e.g.*, *Hudson Glob. Res. Holdings, Inc. v. Hill*, 2007 WL 1545678, at *8 (W.D. Pa. May 25, 2007).

## II. Procedural and Factual Background

On October 24, 2023, AFG filed a complaint ("Complaint") and an *ex parte* motion for (1) a temporary restraining order; (2) an order restraining assets and merchant storefronts; (3) an order to show cause why a preliminary injunction should not issue; and (4) an order authorizing expedited discovery. (ECF Nos. 2, 4). On the same day, the Court held a telephonic motion hearing pertaining to the *ex parte* temporary restraining order ("TRO"). (ECF No. 19). The Court granted the TRO and scheduled a videoconference injunction hearing for November 6, 2023. (ECF Nos. 20, 22). AFG then filed a motion for preliminary injunction on October 31, 2023. (ECF No. 28). On November 3, 2023, AFG filed another *ex parte* motion seeking to extend the TRO, continue the show cause hearing, and modify the schedule. (ECF No. 29).

The Court, finding that good cause existed for AFG's requests, granted its motion and presided over the rescheduled preliminary injunction hearing on December 7, 2023 (the

"Hearing"). (ECF Nos. 30, 77). At the Hearing, counsel for Defendants Poptrend-Official, Decalare, Easy-Fit, Hacosoon Flagship Store, Hacosoon Shop, Stegosaurus, YEAHBEER Store (collectively, "Toloco Defendants"), and Camlinbo argued against the imposition of a preliminary injunction. The parties chose not to expand the evidentiary record by presenting evidence or witnesses. (ECF No. 90, pp. 5, 15–16, 25–26). After the Hearing, however, Toloco Defendants sought leave, which the Court granted, to file additional declarations. (ECF Nos. 79, 80).

AFG, a United Kingdom private limited company, designs and sells costumes worldwide under the registered trademark MORPH®. (ECF No. 2, ¶¶ 1, 14–15, 26). The costume at issue is "a whimsical alien body, face, and profile with dayglow green coloring, and jet black eyes, nose and mouth, hosting a human with black top, royal blue pants, and white sneakers with black laces" (the "Alien Costume" or "Costume"). (*Id.* ¶ 4). The Alien Costume "gives the viewer the impression that a person is being carried around by an alien." (*Id.* ¶ 26). AFG asserts that it has a registered United States copyright protecting the 2-D sculptural aspect of the Costume. (*Id.* ¶ 8); (ECF No. 2-6). The Certificate of Registration ("Certificate") issued by the United States Copyright Office details that the Alien Costume was completed in 2016 and first published on August 2, 2017. (ECF No. 2-6, p. 1). The Copyright Office granted certification to AFG on September 16, 2020. (*Id.*).

Defendants are individuals and/or business entities engaged in e-commerce that "target their business activities toward consumers throughout the United States" through online marketplaces such as Amazon, eBay, Joybuy, Temu, Wish, Walmart, and AliExpress. (ECF No. 2, ¶ 18). Toloco Defendants "are independently owned Chinese entities that operate seven Amazon.com storefronts," and each storefront is located in China. (ECF No. 58, p. 12).

Camlinbo "is an Amazon stores [sic] operated by a Chinese individual Lin Hui Lv." (ECF No. 62, p. 2). AFG alleges that Defendants are engaging in activities that infringe on its copyright, specifically "promoting, selling, offering for sale and distributing goods bearing and/or using confusingly similar imitations of the [Alien Costume], or substantially similar copies of [the Alien Costume], while marketing Infringing Products in a willful attempt to pass off their knock-off products as genuine versions of [the Costume]." (ECF No. 2, ¶ 33).

In Toloco Defendants' submitted declarations, each seller's legal representative states when their Alien Costumes were first offered for sale on their respective Amazon storefronts.[2] (ECF No. 58-1, pp. 3–4); (ECF No. 58-2, p. 3); (ECF No. 58-4, p. 4); (ECF No. 58-5, p. 4); (ECF No. 58-6, p. 3); (ECF No. 58-7, pp. 3–4). The first available dates vary from the earliest being March 15, 2019, to October 2, 2023, as the latest. (ECF No. 58-6, p. 3); (ECF No. 58-7, p. 4). Each of the Toloco Defendants claim that they independently created their Costume in 2018 after referring to "various designs," notably two inflatable costumes seen in YouTube videos. (ECF No. 58-1, pp. 8–10); (ECF No. 58-2, pp. 7–9); (ECF No. 58-3, pp. 7–9); (ECF No. 58-4, p. 6); (ECF No. 58-5, pp. 7–8); (ECF No. 58-6, p. 6); (ECF No. 58-7, p. 7). Additionally, Toloco Defendants cite Easy-Fit's introduction of inflatable costumes featuring foot fins as another source of their independent inspiration. (ECF No. 58, p. 26).

Beginning on October 16, 2023, AFG's counsel investigated Defendants' allegedly infringing activity by purchasing the Costume from their Amazon and Walmart storefronts. (ECF Nos. 13, 13-1, 13-2, 13-3, 13-4, 13-5, 13-6, 13-7, 13-8, 13-9). AFG submits that the majority of these Alien Costumes had a first available date between September and October

---

[2] Neither Stegosaurus nor Camlinbo provide a first available date for the Alien Costumes sold on their respective Amazon storefronts. (*See generally* ECF Nos. 58-3, 62-1).

2023.[3]  (ECF No. 74-2, pp. 3, 5, 7, 9, 11).  A week after the first investigative purchases, AFG filed the Complaint and first *ex parte* motion.  (ECF Nos. 2, 4).

### III. ANALYSIS

**A.  AFG has sufficiently demonstrated that it is likely to succeed on the merits of its underlying claim for copyright infringement.**

In order to obtain the requested preliminary injunctive relief, AFG must demonstrate that "it can win on the merits."  *Reilly*, 858 F.3d at 179.  At this preliminary stage, AFG need not make "a more-likely-than-not showing of success on the merits."  (*Id.* at 179, n.3).  Instead, it must "show a *likelihood* of success on the merits (that is, a reasonable chance, or probability, of winning)."  *Singer Mgmt. Consultants v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (*en banc*) (emphasis in original).  This "requires a showing significantly better than negligible but not necessarily more likely than not."  *Reilly*, 858 F.3d at 179.  To establish copyright infringement, AFG must demonstrate (1) ownership of a valid copyright and (2) that Defendants copied protected material.  *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 290 (3d Cir. 1991) (citations omitted).

    1. <u>Ownership of a Valid Copyright</u>

"[A] certificate of registration made before or within five years after the first publication of the work shall constitute prima facie evidence of the validity of the copyright."  17 U.S.C. § 410(c); *see also Ford Motor Co.*, 930 F.2d at 290–91 ("Certificates of registration issued by the U.S. Copyright Office constitute *prima facie* evidence of the validity and ownership of that material.").  A plaintiff's possession of a valid copyright registration certificate "creates a rebuttal presumption that the work is copyrightable and that [the plaintiff] has a valid interest."

---

[3] There are two exceptions to this assertion.  Camlinbo's and Poptrend-Official's Alien Costumes were first available on June 8, 2022, and April 28, 2021, respectively.  (ECF No. 74-2, p. 13, 15).

*F.A. Davis Co. v. Wolters Kluwer Health, Inc.*, 413 F. Supp. 2d 507, 510 (E.D. Pa. 2005) (citations omitted).  On a motion for preliminary injunction, a court must "determine whether a copyright registration has been successfully rebutted."  *Midway Mfg. Co. v. Bandai-Am., Inc.*, 546 F. Supp. 125, 139–40 (D.N.J. 1982) (citation omitted).

Here, AFG attached its Certificate for the Alien Costume to the Complaint.  (ECF No. 2-6).  The Certificate states that AFG's first publication of the Costume was on August 2, 2017.  (*Id.* at 1).  On July 29, 2021, the Copyright Office granted AFG registration of the Alien Costume with an effective date of September 16, 2020.  (*Id.*).  Since registration occurred within five years of the Costume's first publication, the Certificate is prima facie evidence of the validity of AFG's copyright in the Alien Costume.  Therefore, the Court must determine whether Defendants have successfully rebutted this presumption.

Toloco Defendants argue that AFG's copyright is invalid because (1) AFG's Costume "is a useful article with no separable copyrightable features" and (2) AFG's design lacks novelty and/or originality.  (ECF No. 58, pp. 24–26).  To further its novelty argument, Toloco Defendants point to the combination of images from two YouTube videos that allegedly demonstrate that AFG merely imitated other products in its design.[4]  (*Id.*).  AFG responds to Toloco Defendants' first argument stating that various sculptural features of the Costume "may be viewed separately from the notion that the item may be worn as a costume" and thus the work is not "merely utilitarian."  (ECF No. 74, p. 15).  AFG rebuts Toloco Defendants' second argument by asserting that "novelty" is not a requirement to obtaining a copyright registration; rather, the work must be original.  (*Id.* at 16).  AFG points out that the Copyright Office engaged

---

[4] The first video depicts an inflatable alien Halloween decoration, and the second video shows an inflatable costume of a "hugging-shaped grim reaper inflatable costume with blue pants." (*Id.* at 25).

in this originality analysis prior to issuing AFG its registration, and thus the Certificate should still be entitled to the presumption of validity. (*Id.*).

Camlinbo asserts that AFG cannot have a valid copyright in a costume because a costume is not a sculpture. (ECF No. 62, pp. 4–5). AFG highlights that the United States Court of Appeals for the Third Circuit affirmed a district court's issuance of a preliminary injunction in a copyright infringement suit over a full-body banana costume in *Silvertop Assocs. Inc. v. Kangaroo Mfg. Inc.*, 931 F.3d 215 (3d Cir. 2019). (ECF No. 74, pp. 16–17). Because of this precedential decision, AFG argues that the artistic features of the costume, when viewed separately from the intrinsic utilitarian function, are copyrightable. (*Id.* at 17).

### a. *Useful Article*

A "useful article" is one that has "an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." *Silvertop Assocs. Inc. v. Kangaroo Mfg. Inc.*, 931 F.3d 215, 219 (3d Cir. 2019) (citations omitted). Such articles may only receive copyright protection when they "incorporate[] pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." *Id.* (quotation omitted). A court must engage in a separability analysis to determine whether a useful article contains copyrightable features. *Id.* The separability analysis requires a court to ask two questions: (1) "can the artistic feature of the useful article's design 'be perceived as a two- or three-dimensional work of art separate from the useful article[?]" and (2) "would the feature 'qualify as a protectable pictorial, graphic, or sculptural work either on its own or in some other medium if imagined separately from the useful article[?]" *Id.* at 219–20 (quoting *Star Athletica, L.L.C. v. Varsity Brands, Inc.,* 580 U.S. 405, 424 (2017)).

The first question is answered by looking at the useful article to see if "some two- or three-dimensional element that appears to have pictorial, graphic, or sculptural qualities" can be spotted. *Id.* at 220 (quotation omitted). A court engaging in this first step of the analysis must consider whether a "specific combination of elements" gives a sculpture "its unique look." *Id.* (quotation omitted). These combined features may include "texture, color, size, and shape," and the features' individual inability to receive copyright protection is not dispositive. *Id.* (quotation omitted). The second requirement necessitates that the separately identified features must exist as their own pictorial, graphic, or sculptural work apart from the useful article. *Id.* Overall, this "two-part inquiry effectively turns on whether the separately imagined features are still intrinsically useful." *Id.*

Here, the Court recognizes that the Costume has such qualities, where the combined artistic features of the Alien Costume are separable and capable of independent existence as a copyrightable work, specifically a sculpture. The copyrightable aspect of the Costume is not that the sculptural features in combination depict a large alien holding up a man.[5] Rather, it is the combination of the color, shape, and size of the alien in conjunction with the combination of the color, shape, and size of the man being held that would be subject to copyright protection. *See Silvertop Assocs. Inc.*, 931 F.3d at 220–21. AFG explicitly chose for the alien to appear as a large bright green being with a rounded head, prominent oval-shaped eyes, and small additional facial features that display a neutral expression. The Costume was designed for this exact alien to hold up a smaller appearing man in front of it, with the man wearing a black long-sleeve shirt, blue pants, and white tennis shoes with black lines on them. It is this specific combination of

---

[5] AFG highlights that there are other inflatable alien costumes being sold on Amazon that, while similar in concept, are substantially different from AFG's and Defendants' products. (ECF No. 74, pp. 8–10).

artistic features that give the sculpture its unique look and these features are capable of independent existence as a sculpture apart from the costume as a useful article.

### b. *Originality*

One way for a defendant to rebut the presumed validity of a plaintiff's copyright registration is to show that the work lacks originality. *See Midway Mfg. Co.*, 546 F. Supp. at 140. "Original, as the term is used in copyright, means only that the work was independently created by the author … and that it possesses at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991) (citation omitted). "[T]he requisite level of creativity is extremely low," where "even a slight amount will suffice." *Id.* Originality does not require novelty; an original work may be one that "closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Id.* at 345–46.

Here, even if AFG was influenced by the images in the two YouTube videos as Toloco Defendants contend, the Costume is not a copy of these images. Instead, the videos merely inform where AFG's design ideas may have originated from, but there is no direct copying of either of these works, and thus the costume was independently created and possesses the requisite minimal creativity. The Court finds that AFG's Alien Costume is original and still is entitled to the presumptive validity of its issued copyright.

Accordingly, Defendants' arguments as to why AFG does not have a valid copyright in the Costume fail. AFG has demonstrated the first prong of the copyright infringement analysis—ownership of a valid copyright—and the Court must next consider whether Defendants engaged in unauthorized copying of AFG's protected work.

2. <u>Unauthorized Copying of Protected Material</u>

Toloco Defendants argue that they did not copy AFG's costume because they "independently developed their alien costume design, wholly separate and apart from" AFG's design in 2018. (ECF No. 58, p. 26). They point to the two YouTube videos previously discussed as well as one defendant's, Easy-Fit's, introduction of inflatable costumes featuring foot fins as the inspiration for their independent design. (*Id.*). Camlinbo does not explain how it created its Costume design. (*See generally* ECF No. 62).

Since direct evidence of copying is rarely available, it may be inferentially proven by demonstrating that someone who had access to a copyrighted work used material substantially similar to the work in a manner that interferes with a copyright owner's rights afforded under 17 U.S.C. § 106. *Ford Motor Co.*, 930 F.2d at 291 (citations omitted). "Substantially similar" is broken down to an extrinsic test and an intrinsic test. *Id.* The extrinsic test considers "whether there is sufficient similarity between the two works in question to conclude that the alleged infringer used the copyrighted work in making his own." *Id.* (quoting *Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.*, 797 F.2d 1222, 1232 (3d Cir. 1986)). The intrinsic test, on the other hand, looks at whether "the copying was an unlawful appropriation of the copyrighted work" viewed from the perspective of a lay person. *Id.* (citations omitted).

AFG's Costume was first published on its website on August 2, 2017. (ECF No. 74-3, p. 2); (ECF No. 2-6, p. 1). During the same year, AFG listed the Alien Costume for sale on Amazon, the Costume was publicized on television in the United Kingdom, and a YouTube video was posted where various people wore the Costume. (ECF No. 74-3, p. 2). This demonstrates that there were available avenues for Defendants to access the copyrighted work before their alleged independent creation of the design in 2018.

In addition to access, Defendants' design is also "substantially similar" to AFG's Costume. Looking at AFG's Alien Costume and Defendants' Alien Costumes side-by-side, they are nearly identical. All of the costumes include a large bright green alien with a rounded head, prominent eyes, and a neutral facial expression holding a small man up in front of it who is wearing a black long-sleeve shirt, blue pants, and white tennis shoes with black lines. There is no question that the two works are, at the very least, "substantially similar."

Finally, through Defendants' "promoting, selling, offering for sale and distributing" of their Costumes, they have interfered with AFG's exclusive rights afforded to it under § 106 to reproduce and distribute its Costume. Therefore, at this stage, AFG has inferentially proven that Defendants copied its protected material in order to design and subsequently promote and sell their Alien Costumes.

By demonstrating that it both has a valid copyright and that Defendants engaged in actual, unauthorized copying of its copyrighted material, the Court finds that AFG is likely to succeed on the merits of its underlying copyright infringement claim, and it has met its burden pertaining to the first prong of the preliminary injunction analysis.

### B. AFG has shown that it will suffer irreparable harm absent the Court granting its requested preliminary injunction.

AFG must next show that "it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly*, 858 F.3d at 179. In other words, AFG must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Acierno*, 40 F.3d at 653. This potential harm must be "immediate"—it is insufficient to warrant preliminary injunctive relief "if the harm will occur only in the indefinite future." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (citation omitted). To obtain injunctive relief in copyright infringement suits, "a moving party must show that it will suffer

irreparable harm that is causally attributable to the challenged infringement." *TD Bank N.A. v. Hill*, 928 F.3d 259, 280 (3d Cir. 2019) (citations omitted).

If a plaintiff delays bringing its request for injunctive relief, a court must consider the length of the alleged delay and surrounding circumstances. *E.E.O.C. v. Great Atl. & Pac. Tea Co.*, 735 F.2d 69, 81 (3d Cir. 1984). An unreasonable delay will negate the presumption of irreparable harm. *FMC Corp. v. Control Sols., Inc.*, 369 F. Supp. 2d 539, 582 (E.D. Pa. 2005). For copyright infringements claims, the plaintiff's duty to file suit "does not arise until the plaintiff learns of the alleged infringement." *Id.* (citing *MacLean Assocs., Inc. v. William M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 780 (3d Cir. 1991)).

Toloco Defendants argue that AFG delayed in asserting its claim of copyright infringement, and accordingly cannot demonstrate irreparable harm. (ECF No. 59, p. 27). To highlight this delay, Toloco Defendants point to their sales of the Costume first dating back to March 2019, over a year before AFG obtained its copyright registration and two years after AFG first published its design. (*Id.* at 28). AFG replies that it did not delay because it acted in response to learning of Defendants' Alien Costume Amazon listings that had first available dates of September and October 2023. (ECF No. 74, p. 18).

Camlinbo asserts that AFG has not met its burden in showing irreparable harm because if AFG were to prevail on its claim, it would "be adequately remedied by the actual and statutory damages provided by the Copyright Act." (ECF No. 62, p. 6). Additionally, Camlinbo contends that AFG can only demonstrate irreparable harm if there will be "continuing infringement." (*Id.*). Since Camlinbo has agreed not to sell the Alien Costume pending this litigation, it argues that there is no threat of continuing infringement, which it asserts is required for AFG to obtain a preliminary injunction. (*Id.*). AFG responds that Defendants' continued sale of the Costume

would further damage AFG's business and intellectual property with harm taking "the form of unquantifiable lost sales, loss of goodwill and loss of control of its reputation with authorized licensees, retailers and consumers" as well as potential exposure to legal liability for injury. (ECF No. 6, p. 46).

As to Toloco Defendants' arguments of delay, the Court finds that AFG timely filed this lawsuit. The record demonstrates that AFG did not receive actual knowledge of Defendants' allegedly infringing conduct until AFG's counsel began its investigation of Defendants' products by buying the Costume from Defendants' online storefronts. *See MacLean Assocs., Inc.*, 952 F.2d at 780. The first investigative purchases occurred on October 16, 2023. (ECF No. 13-1, pp. 7, 15, 22, 29); (ECF No. 13-2, pp. 4, 11, 18, 25); (ECF No. 13-3, pp. 5, 12, 19); (ECF No. 13-4, pp. 12, 19, 26, 33); (ECF No. 13-5, pp. 6, 20, 27); (ECF No. 13-6, pp. 5, 12). AFG filed suit eight days later on October 24, 2023. (ECF Nos. 2, 4). At this stage in the proceedings, the Court will not discredit what AFG sets forth as the date it attained actual knowledge.

Additionally, as for Camlinbo's arguments, AFG has met its burden by showing that it will not receive an adequate remedy at law. As the Court discussed previously, AFG's Costume and Defendants' Costumes are, at the very least, substantially similar. Such similarity causes market confusion, leading customers to potentially associate their interaction with a product to the wrong manufacturer of that product. Thus, the harm that AFG would be subjected to absent the entering of a preliminary injunction goes beyond just lost profits. The risk of irreparable harm to AFG's reputation, value, and goodwill cannot be adequately remedied at law.

### C. The balance of equities weighs in favor of granting AFG's requested injunctive relief.

The third factor requires consideration of whether, and to what extent, Defendants will suffer irreparable harm from the grant of a preliminary injunction. *See Kos Pharms.*, 369 F.3d at

727.  The Court must then "balance the hardships" likely to be suffered by AFG (if an injunction is denied) and by Defendants (if an injunction is granted), *id.* (citation omitted), and determine whether the "equities tip[] in [AFG's] favor," *Winter*, 555 U.S. at 20.  "[T]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in [its] favor." *Kos Pharms.*, 369 F.3d at 729 (citation omitted).

Defendants assert that the injunctive relief sought threatens greater harm to them than AFG.  Toloco Defendants specifically emphasize that the ongoing freeze of their Amazon accounts is causing their businesses to suffer irreparable harm.  (ECF No. 58, p. 29).  Because of this freeze, Toloco Defendants stress the looming threat of these storefronts' survival.  (*Id.*). Camlinbo contends that since AFG does not have a valid copyright in the Alien Costume, Camlinbo "will be excluded from the market and will lose a significant portion of its revenue that is not relevant to this case."  (ECF No. 62, p. 7).  AFG presents the balance of equities with the continued harm "to its business, the value, goodwill and reputation built up in and associated with the [Alien Costume]" on the one hand, and Defendants losing their "ability to continue to offer their Infringing Products for sale, or, in other words, the loss of the benefit of being allowed to continue to unfairly profit from their illegal and infringing activities" on the other hand.  (ECF No. 6, p. 47).

The Court finds that the balance of hardships weighs in favor of AFG.  AFG, as the holder of a valid United States copyright, is afforded certain rights and protections upon registration.  These protections grant the copyright owner the *exclusive* rights to reproduce and distribute their work for sale.  17 U.S.C. § 106 (emphasis added).  A company establishes itself in the marketplace—through its reputation, value, and goodwill—on the assumption that it is in sole control of its intellectual property.  Thus, a copyright owner loses this control when an

alleged infringer enters the marketplace and seeks to reap the benefits of the owner's work for its own gain.

Conversely, the harm that Defendants face will be losing the revenue stream created by selling these Costumes, which as Defendants have highlighted, is only one of several products they sell through their storefronts. None of the Defendants demonstrate that they will be irreparably harmed by enjoining them from selling the Alien Costume. The Court, however, agrees that the harm that Defendants would suffer due to the continuation of the TRO as it is currently in place is broader than what would be necessary to ensure that Defendants cease their allegedly infringing activities. Therefore, the Court will narrow the injunctive relief from Defendants' entire storefronts to only the Costumes. All funds related to Defendants' sales of the Alien Costume must be deposited either to the local Court Registry or to Defendants' counsels' IOLTA accounts.

### D. The public has an interest in enjoining Defendants' allegedly infringing activities.

The fourth factor asks whether "an injunction is in the public interest." *Winter*, 555 U.S. at 20. "In exercising their sound discretion, courts of equity should pay particular regard [to] the public consequences in employing the extraordinary remedy of injunction." *Id.* at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Nevertheless, "[w]eighing the public interest in preliminary relief is often fairly routine." *Kos Pharms.*, 369 F.3d at 730. "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *AT&T*, 42 F.3d at 1427 n.8.

The public has an interest in the protection of intellectual property, as first recognized by the framers of the Constitution. *See* U.S. Const. art. I, § 8, cl. 8 ("The Congress shall have

Power … To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.") As discussed above, copyright law was enacted with the intention to give owners exclusive rights in their works. To not allow AFG to enforce the protections it was granted upon its registration of a valid United States copyright would go against the public's interest and run afoul of the central purpose of copyright law. Therefore, the final factor also weighs in favor of granting AFG's requested injunctive relief.[6]

---

[6] The parties addressed the amount of assets frozen as a result of the Court's TRO, raising concern that the amount frozen was disproportionate to amounts earned by Defendants relating to their sales of the allegedly infringing Costumes. The Court believes that these concerns are well-founded. While the Court has the authority to restrain assets that have a close nexus with its exercise of equitable powers, *see Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), it cannot do so solely for the purpose of preserving assets upon which a plaintiff may execute in the future if it should prevail. Rather, the close nexus has to be intertwined with the specific exercise of equitable jurisdiction undertaken with respect to the claims at issue in the case. *See id.* The Court holds that the blanket asset freeze currently in place goes further than permitted and beyond the close nexus required. Therefore, the Court holds that all funds allegedly arising from the sale of the allegedly infringing Costumes shall be frozen—but no more. The record strongly suggests that the amounts frozen significantly exceed permissible amounts relating to the Alien Costumes but are insufficient at this point to allow the Court to state with reasonable precision the amounts that so relate. Accordingly, the Court will order the parties to meet and confer to address whether they can reach a stipulated amount to be frozen. The frozen assets can be paid into either the local Court Registry or held in Defendants' counsel IOLTA accounts pending the conclusion of this litigation. To the extent the parties are unable within fourteen days to reach a stipulation as to the amount to be frozen, the Court will schedule an evidentiary hearing.

## IV. CONCLUSION

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. In this case, after balancing all four factors, the Court finds that AFG has met its burden of demonstrating that it is entitled to the extraordinary relief of an injunction. AFG's motion will be granted by Order of Court to follow.

BY THE COURT:

s/ William S. Stickman IV
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

December 29, 2023
Date